1
2
3
4
5
6
7

8                          **UNITED STATES DISTRICT COURT**

9                          **EASTERN DISTRICT OF CALIFORNIA**

10

11

12  BECKY GREER, TIMOTHY C. BUDNIK,        **Case No. 1:15-cv-01066-EPG**
    ROSARIO SAENZ, and IAN CARTY,
13  individually and as class representatives,   **ORDER RE: DEFENDANT PACIFIC**
                                                 **GAS AND ELECTRIC COMPANY'S**
14              Plaintiffs,                       **MOTION TO DISMISS**

15      v.

16  PACIFIC GAS AND ELECTRIC COMPANY,    (ECF No. 13)
17  and DOES 1 through 10, inclusive,

18              Defendants.

19
    **I.      INTRODUCTION**
20
            Defendant Pacific Gas and Electric ("Defendant" or the "PG&E") has moved to dismiss
21
    Plaintiffs' First Amended Complaint, which alleges that certain PG&E service representatives
22
    were not paid the wage due to them because PG&E failed to adjust their pay scale to reflect their
23
    "directly related clerical job experience" as set out in the relevant collective bargaining
24
    agreement. Defendant moves to dismiss on the grounds that: (1) Plaintiffs failed to adequately
25
    allege that the union representing them breached its duty of fair representation and, absent this
26
    allegation, Plaintiff should be bound by the results of the Union grievance process; (2) Plaintiffs'
27
    complaint is time barred because it was filed more than six months after Plaintiffs had actual
28

                                              1

1   knowledge that they were being underpaid; and (3) Plaintiffs' claims are preempted by 29 U.S.C.

2   § 185(a), or § 301 of the Labor Management Relations Act.

3         While the Court agrees that certain of Plaintiffs' claims are preempted and should be

4   dismissed, the claim for breach of contract and certain other claims should proceed. Plaintiffs

5   have sufficiently alleged facts indicating that the Union breached its duty of fair representation,

6   including by participating in a process that cherry-picked certain resumes and inadequately

7   investigated prior work experience, and by refusing to continue the grievance process to later

8   stages including a hearing. Such an allegation need not be in a separate cause of action, and the

9   Court finds that the factual allegations are sufficient to raise this issue.

10         In any event, Defendants are incorrect that such an allegation is needed in order to

11   proceed with Plaintiffs' breach of contract claim. Whether a grievance process is meant to be

12   final, precluding any judicial oversight, is based on terms of the collective bargaining agreement

13   itself. Here, where the grievance process was cut-off after only the initial stages, no hearing was

14   held, Plaintiffs were not given any specific reason why their individual grievances were denied,

15   and the agreement states that decisions at this stage are "without prejudice to the position of either

16   party," the Court cannot find at the pleading stage that the result of this grievance process was

17   intended to bind all Plaintiffs without appeal to the Courts.

18         Plaintiffs' claims are also not barred by the statute of limitations because Plaintiffs filed

19   the case within six months of learning that the Union was halting the grievance process and no

20   longer pursuing additional pay for Plaintiffs. Defendants are incorrect in their assertion that the

21   six month statute of limitations for challenging results of a collective bargaining agreement

22   process began to run upon learning that Plaintiffs were not paid what they believed to be owed.

23   Plaintiffs were required to exhaust their remedies under the Collective Bargaining Agreement

24   first. Here, PG&E continued to work with the Union and adjust pay for certain employees through

25   May 2015 and Plaintiffs filed within six months of the conclusion of the grievance process.

26         Finally, some, but not all, of Plaintiffs' claims are preempted by § 301. While the precise

27   boundaries of § 301 preemption are not clearly drawn, the Ninth Circuit has routinely found state

28   claims that are "substantially dependent" on a collective bargaining agreement preempted. Thus,

1    Plaintiffs' claims are preempted to extent they rest on rights conferred by the collective

2    bargaining agreement or require significant interpretation of the collective bargaining agreement

3    for their resolution. That said, the primary claim for breach of the collective bargaining agreement

4    is properly before this Court.

5    **II.     BACKGROUND**

6           This is a case involving unpaid wages and the breach of a collective bargaining

7    agreement. Plaintiffs worked for PG&E as Customer Service Representatives in PG&E's

8    Customer Contact Centers in Fresno, San Jose, and Sacramento. At the time they applied for their

9    jobs, PG&E was advertising Customer Service Representative I positions as receiving pay at the

10   rate of $23.88 per hour. When making job offers to Plaintiffs, however, PG&E informed them

11   that the starting rate of pay would be only $18.36 per hour. PG&E informed Plaintiffs that

12   because of Plaintiffs' previous call center experience, however, they could qualify for higher rates

13   of pay. Plaintiffs accepted the offers.

14          As Customer Service Representatives, Plaintiffs' wage rates were governed, in part, by a

15   collective bargaining agreement between PG&E and the International Brotherhood of Electrical

16   Workers (the "CBA"). Under the terms of the CBA, Customer Service Representatives received

17   different wage rates depending on the amount of "directly related clerical job experience" they

18   possessed as measured in six month intervals. For example, a representative who possessed

19   between six to twelve months of "directly related clerical job experience" would be paid "at the

20   6-month rate of the applicable clerical classification," while employees with between twelve to

21   eighteen months of "directly related clerical job experience" would be paid at the "one-year rate

22   of the applicable clerical classification." (First Amended Complaint (the "FAC") ¶ 39, ECF No.

23   12.) Plaintiffs contend that, based on the amount of directly related clerical job experience they

24   possessed, they should have been paid at the $23.88 per hour rate, rather than the $18.36 per hour

25   rate.

26          In November 2013, in response to a grievance related to the definition of "directly related

27   clerical job experience," the Review Committee of the International Brotherhood of Electrical

28

3

Workers (the "Union") issued a letter clarifying the application of the pay scale system.[1] In particular, the letter explained that PG&E had been erroneously applying the system by defining "directly related clerical job experience" as only experience that had been obtained working as a Customer Service Representative at PG&E within the past twelve months. Instead, the Review Committee found, PG&E should have considered, for instance, customer service experience in call centers with other large companies.

PG&E and the Union then began a joint review process to determine whether any existing employees would need to be reclassified based on the new understanding of the CBA's pay scale. PG&E and the Union began this process by determining how much money PG&E was willing to spend and "pre-selecting" which employees would receive that money under the new classification scheme. The joint review process did not include interviews with affected employees or, according to Plaintiffs, a thorough review of applicant records. Rather, Plaintiffs assert, the joint review only reviewed certain resumes based on key words and assessed eligibility for reclassification without any other investigation. In December 2014, PG&E issued settlement payouts for back pay to 30 Customer Service Representatives. Notably, this was the first time that Plaintiffs were notified of the review process.

After complaints from Plaintiffs and other employees, PG&E conducted a second round of resume reviews in April 2015. Based on the second round of reviews, PG&E made 100 additional settlement payouts for back pay in May 2015. PG&E then informed Plaintiffs that "the decisions made by the union and company are final" and that no additional payouts would be awarded. *Id.* at ¶ 56. Plaintiffs allege that they have no further avenues for redress under the CBA, despite the fact that they should have been reclassified and paid based on the new definition of "directly related clerical job experience."

On July 10, 2015, Plaintiffs filed a Complaint on behalf of themselves and a putative class of similarly situated employees. On August 28, 2015, Plaintiffs filed the FAC alleging eleven causes of action:

---

[1] The FAC labels the letter "PRC 21052," for the "Pre-Review Committee Number 21052 Customer Care—Contract Center Operations—Various Locations" letter.

- First Cause of Action (Breach of Contract);

- Second Cause of Action (Breach of Covenant of Good Faith and Fair Dealing);

- Third Cause of Action (Declaratory Relief);

- Fourth Cause of Action (Failure to Pay Wages in Violation of California Labor Code § 204);

- Fifth Cause of Action (Failure and Refusal to Pay Agreed Wages in violation of California Labor Code §§ 201 *et seq.*);

- Sixth Cause of Action (Violation of California Labor Code § 216);

- Seventh Cause of Action (Failure to Pay Wages in Violation of California Labor Code §§ 201, 202, and 203)[2];

- Eighth Cause of Action (Knowing and Intentional Failure to Comply with Itemized Employee Wage Statement Provisions in Violation of California Labor Code §§ 226(a), 1174, and 1175);

- Ninth Cause of Action (Promissory Fraud in Violation of California Civil Code § 1572(4);

- Tenth Cause of Action (Promissory Estoppel);

- Eleventh Cause of Action (Violation of California Business and Professions Code § 17200 *et seq.*).

Defendant has now moved to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(6), claiming that:  (1) the results of the grievance process should be binding because Plaintiffs have not sufficiently alleged that the Union breached its duty of fair representation; (2) Plaintiffs failed to meet the applicable statute of limitations in bringing their claims; and (3) all of Plaintiffs' claims are pre-empted by the federal Labor Management Relations Act.

On November 19, 2015, the Court heard oral argument on the Motion. Both parties appeared through counsel. After the hearing, both parties submitted supplemental briefing on the issue of federal preemption of Plaintiffs' claims. After reviewing the briefing and for the reasons set forth below and on the record at the hearing, the Court determines that the Motion to Dismiss will be GRANTED IN PART and DENIED IN PART.

\\

---

[2] Although the Fifth and Seventh Causes of Action both reference Labor Code §§ 201, 202, and 203, the Fifth appears to address the general right of employees to receive wages for work they engaged in while the Seventh focuses more narrowly on the issue of wages due at termination of employment.

5

III.     **DISCUSSION**

   **A.  Request for Judicial Notice**

In Defendant's supplemental brief, Defendant requests that the Court take judicial notice of a portion of PG&E's Industrial Relations Guide, a document that Defendant claims is an "interpretive aid" to the CBA.[3] "As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). The Court may, however, "consider material which is properly submitted [or attached] as part of the complaint." *In re Immune Response Sec. Litig.*, 375 F.Supp.2d 983, 995 (S.D. Cal. 2005). "If the documents are not physically attached to the complaint, they may be considered if the documents' authenticity is not contested and the plaintiff's complaint necessarily relies on them." *Lee*, 250 F.3d at 688. This method of introducing documentary evidence into a motion to dismiss must be construed narrowly, however, "[i]t is not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment." *Immune Response*, 375 F.Supp.2d at 995, *quoting Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998).

Alternatively, a court may take judicial notice of facts "not subject to reasonable dispute" because they are "generally known within the trial court's jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Thus, a fact may be judicially noticed where the fact is "one that only an unreasonable person would insist on disputing." *Walker v. Woodford*, 454 F.Supp.2d 1007, 1022 (S.D. Cal. 2006), *citing United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994). The Court may not "take judicial notice of any matter that is in dispute." *Id.*, *citing Lee*, 250 F.3d at 689-90.

The Industrial Relations Guide does not fall within the first category of allowed documents—it is not referenced in the FAC, nor does the FAC rely on its existence. It is also unclear who created this document, when it was created, whether Plaintiffs saw it during contractual negotiations, or whether it constitutes a joint memorandum or side agreement between

---

[3] The Court notes that PG&E makes this submission in support of an argument that is not related to the preemption of Plaintiffs' claims by § 301, despite clear instructions at the hearing that the supplemental briefing was only to address the issue of preemption.

the Union and PG&E. The Court, therefore, cannot consider this document on a motion to dismiss unless it is properly subject to judicial notice. *Cooper v. Pickett*, 137 F.3d 616, 623 (9th Cir. 1997) (despite fact that complaint referred to conference calls, absence of reference to transcripts of those calls precluded consideration of the transcripts on motion to dismiss).

Defendant appears to request that the Court take judicial notice of this document as a means to discern the parties' intent in interpreting the CBA. (Request for Judicial Notice 2:25-3:4, ECF No. 28-2.) The intent of the parties (if, in fact, that is what this document represents) is not an appropriate fact for judicial notice. First, the parties' intent and the interpretation of the CBA (particularly with respect to the finality provisions of the CBA) is a matter in dispute between the parties. (Motion to Dismiss 3:26-28, ECF No. 13; Opposition to Motion to Dismiss 8:15-19, ECF No. 17.) Second, the fact of the parties' intent cannot be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." As explained above, there are any number of questions about this document, which inform its utility in contractual interpretation. While the Court may take judicial notice of the fact that this document exists or that PG&E possesses this document, Defendant demands too much in asking the Court to use this document to judicially notice the intent of the parties in the CBA. *Cal. ex rel. Lockyer v. Mirant Corp.*, 266 F.Supp.2d 1046, 1053 (N.D. Cal. 2003) ("Judicial notice of these documents is appropriate as they are a part of the public record. In taking judicial notice of these documents, the court does not adopt their factual findings or holdings; it simply acknowledges their existence and contents").

To the extent that Defendant requests judicial notice of the Industrial Relations Guide as a means of construing the CBA, the request is DENIED.

### B.  Legal Standards for a Rule 12(b)(6) Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and

1    plausibility of entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must

2    "accept all factual allegations in the complaint as true and construe the pleadings in the light most

3    favorable to the nonmoving party." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d

4    895, 899-900 (9th Cir. 2007). Legally conclusory statements, when unsupported by actual factual

5    allegations, need not be accepted. *Ashcroft*, 556 U.S. at 678-79. A motion to dismiss based on the

6    running of a statute of limitations cannot be granted "unless it appears beyond doubt that the

7    plaintiff can prove no set of facts that would establish the timeliness of the claim." *Supermail*

8    *Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995).

9    **C.  Judicial Review is Not Precluded by the Plain Language of the CBA**

10    Defendant's motion to dismiss first argues that the case should be dismissed because

11    Plaintiffs failed to allege that the Union breached its duty of fair representation. Defendant claims

12    "[a]bsent this necessary element, Plaintiffs' claims under Section 301 must be dismissed because

13    the FAC fails to state a claim for which relief can be granted." (Motion to Dismiss 1:14-15, ECF

14    No. 13.). This is an incorrect statement of the law because it glosses over the underlying question

15    of whether the grievance procedure used here was intended to be final without judicial review.

16    Defendant relies on *DelCostello v. International Brotherhood of Teamsters et al.*, 462

17    U.S. 151 (1983), but the Court in that case rested its decision on the fact that Plaintiff was

18    challenging the results of a grievance process that resulted in an individual hearing, which,

19    "[u]nder the collective bargaining agreement . . . [was] final and binding on all parties." *Id.* at 155

20    and 164 ("Subject to very limited judicial review, [the plaintiff] will be bound by the result

21    according to the finality provisions of the agreement"); *see also Dickeson v. DAW Forest Prods.*

22    *Co.*, 827 F.2d 627, 629 (9th Cir. 1987) ("If an employee pursues a grievance procedure under a

23    collective bargaining agreement that the parties intended to be final, and receives an adverse

24    determination, he may not challenge that determination under section 301 unless he shows that

25    the union breached its duty of fair representation or that the procedure was otherwise infected").

26    In contrast, where the collective bargaining agreement does not provide for a binding grievance

27    process, plaintiffs can file suit without alleging a breach of a union's duty of fair representation.

28    *See, e.g.*, *Lerwill v. Inflight Motion Pictures*, 582 F.2d 507, 511 (9th Cir. 1978) ("The collective

1   bargaining agreement in question did not provide for specific grievance procedures, and therefore

2   there was nothing to exhaust before recourse could be had to the courts"). Thus, a gating issue to

3   decide whether Plaintiffs may seek relief in this Court is whether the grievance process was

4   meant to be final without judicial oversight.

5         Here, the CBA provides for a five-step grievance process, concluding in an arbitration.

6   However, the grievance process in this case only went through the first two steps of the process,

7   namely "Shop Stewards," and "Local Investigating Committee." Plaintiffs allege that the Union

8   and Defendant refused to proceed further to the remaining steps of the process, *i.e.*, Fact Finding

9   Committee, Review Committee, and Arbitration. Moreover, Plaintiffs did not receive any

10   individual explanation why their particular job experience did not qualify as "directly related

11   clerical job experience." Instead, Plaintiffs received notification that no additional settlement

12   payouts would be awarded as of May 2015. Plaintiffs also allege that "Defendant 'cherry-picked'

13   through resumes," and "did not interview any Service Representative I personnel or review

14   previous applicant records to ascertain the correct classification" and then destroyed the

15   remainder of the records. (FAC ¶ 51, ECF No. 12.) Based on these allegations, which the Court

16   must take as true on this motion to dismiss, it appears that Plaintiffs may not have even been

17   considered and individually evaluated on their merits during the grievance process. It is also

18   undisputed that no Plaintiffs were given a hearing. In other words, if there were truly a settlement

19   between PG&E and the Union to only provide some, but not all, eligible service representatives

20   with the wages due under the agreement as some sort of compromise, such a process would not

21   constitute a binding final decision that Plaintiffs were not entitled to higher wages based on their

22   individual experience.

23         The plain language of the CBA falls short of precluding judicial review under these

24   circumstances. Collective bargaining agreements must be interpreted "according to ordinary

25   principles of contract law, at least when those principles are not inconsistent with federal labor

26   policy." *M&G Polymers USA, LLC v. Tackett*, 135 S.Ct. 926, 933 (2015), *citing Textile Workers*

27   *v. Lincoln Mills of Ala.*, 353 U.S. 448, 456-457 (1957). "Where the words of a contract in writing

28   are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly

expressed intent." *Id.*, *citing* 11 R. Lord, Williston on Contracts § 30:6, p. 108 (4th ed. 2012). The Court must "consider the explicit language of a collective bargaining agreement in the context that gave rise to its inclusion and in context of the entire agreement." *Int'l Bhd. of Teamsters, Local 519 v. United Parcel Serv.,* 335 F.3d 497, 506 (6th Cir. 2003). In doing so, the agreement "must be construed so as to render [no term] nugatory and [to] avoid illusory promises." *Id.*, *quoting UAW v. Yard-Man, Inc.*, 716 F.2d 1476, 1479 (6th Cir. 1983).

The CBA reads, in relevant part:

> The resolution of a timely grievance at any of the steps provided herein shall be final and binding on the Company, Union and the grievant. A resolution at any step below Step *Four*, while final and binding, is without prejudice to the position of either party, unless mutually agreed otherwise. (Amended 1-1-09)

(FAC Exh. A § 9.4, ECF No. 12-1.)

The grievance procedures in this case ended below step four of the CBA's step system. (Motion to Dismiss 3:22-28, ECF No. 13; Opposition to Motion to Dismiss 7:22-8:3, ECF No. 17.) Under the terms of the CBA, the resolution reached by PG&E and the Union was thus "final and binding" but "without prejudice to the position of either party." The parties dispute what the phrase "without prejudice to the position of either party" means.[4] Defendant's interpretation— that the conclusion of a grievance at any step of the grievance process disposes of the grievance with prejudice to any future remedies—acknowledges only the first sentence in the excerpted portion. The plain language of the second sentence, however, expressly carves out a category of grievances (*i.e.*, those resolved below step four) that is less "final and binding" than resolution at other steps (hence the "without prejudice" language). The Court thus finds it difficult to conclude at this point that the express language of the CBA precludes any or all judicial participation after the resolution of the grievance process. *Assoc. Gen. Contractors of Ill. v. Ill. Conf. of Teamsters*, 486 F.2d 972, 976 (7th Cir. 1973) (refusing to apply provision in collective bargaining agreement

---

[4] As discussed above, Defendant argued in its supplemental brief that the Court should use a document not referenced in the FAC to glean the phrase's meaning.

1   barring access to the courts because "an agreement to forbid any judicial participation in the

2   resolution of important disputes would have to be written much more clearly than this").[5]

3   **D. Plaintiffs Adequately Pleaded a Breach of the Duty of Fair Representation**

4   Even if the finality provisions of the CBA rendered the grievance proceedings final and

5   binding, however, Plaintiffs are still be able to bring suit in federal court if they allege that the

6   Union breached its duty of fair representation. *DelCostello*, 462 U.S. at 164 ("In *Vaca* and *Hines*,

7   however, we recognized that this rule works an unacceptable injustice when the union

8   representing the employee in the grievance/arbitration procedure acts in such a discriminatory,

9   dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation. In such an

10  instance, an employee may bring suit against both the employer and the union, notwithstanding

11  the outcome or finality of the grievance or arbitration proceeding"). Such allegations need not

12  form a separate cause of action, nor do they necessarily need to be directed towards the union as a

13  separate defendant. *Id.* at 165 ("The employee may, if he chooses, sue one defendant and not the

14  other; but the case he must prove is the same whether he sues one, the other, or both. The suit is

15  thus not a straightforward breach of contract suit under § 301, as was *Hoosier*, but a hybrid §

16  301/fair representation claim").

17  "A union breaches its duty of fair representation only when its conduct toward a member

18  of the collective bargaining unit is 'arbitrary, discriminatory, or in bad faith.'" *Peterson v.*

19  *Kennedy*, 771 F.2d 1244, 1253 (9th Cir. 1985), *quoting Vaca v. Sipes*, 386 U.S. 171, 190 (1967).

20  "In the grievance context, this standard prohibits a union from ignoring a meritorious grievance or

21  processing that grievance perfunctorily." *Galindo v. Stoody*, 793 F.2d 1502, 1513 (9th Cir. 1986),

22  *citing Vaca*, 386 U.S. at 191. "[M]ere negligent conduct by a union does not constitute a breach

23  of the union's duty of fair representation." *Id.* at 1514, *citing Peterson*, 771 F.2d at 1253.

24  However, "an act of omission by a union may be so egregious and unfair as to be arbitrary, thus

25  constituting a breach of the duty of fair representation," in some instances. *Id.*, *citing Castelli v.*

26  *Douglas Aircraft Co.*, 752 F.2d 1480, 1482 (9th Cir. 1985). Arbitrary conduct has also been

27  _____

[5] Future efforts in discovery may shed light on the finality provisions of the CBA that is not present at this point in
the litigation. Defendant retains, of course, the option of seeking summary judgment on similar grounds later on,
should evidence exist that favors their interpretation of the CBA.

28

found where, for example, a union "simply ignores a meritorious claim or gives it only perfunctory handling, if it fails to conduct even a minimal investigation of a grievance, or if its actions evince 'reckless disregard' for the rights of the employee." *Thompson v. Permanente Med. Group, Inc.*, No. C-12-1301 EMC, 2012 WL 6020014, at *15 (N.D. Cal. Dec. 3, 2012), *citing Peterson*, 771 F.2d at 1254.

The FAC alleges that PG&E and the Union entered into a "'joint Company and Union review process to determine those Service Representative I employees entitled to a pay increase pursuant to the Clerical Hiring Rate Guidelines." (FAC ¶ 47, ECF No. 12.) As part of that process, which occurred without Plaintiffs' knowledge for over a year, Defendant employees and "other similarly situated agents" engaged in a resume review process to decide who was entitled to higher rates of pay. (FAC ¶ 48, ECF No. 12.) After two rounds of review, the joint committee found approximately 130 employees who would be reclassified and receive higher rates of pay. (FAC ¶¶ 53, 55, ECF No. 12.) Plaintiffs allege that the 130 employees were selected by Defendant in advance and without performing appropriate due diligence. (FAC ¶ 52, ECF No. 12.) Defendant and the Union then announced that the review process was finished and that no further payouts would be made. (FAC ¶ 56, ECF No. 12.) Both Defendant and the Union then refused requests to file any other grievances regarding wage increases or adjustments. (FAC ¶ 57, ECF No. 12.)

Defendant contends that these allegations are inadequate because they refer only to PG&E's conduct, rather than the Union's, and Plaintiffs have thus failed to allege any breach of the Union's duty of fair representation. But Plaintiffs allege that the review process used to select particular individuals for wage adjustments was a "joint Company and Union review." (FAC ¶ 47, ECF No. 12.) Similarly, the letter announcing the initial wage adjustments stated that resumes "were reviewed and considered jointly, between Company and Union." (FAC ¶ 49, ECF No. 12.) The decisions made in the review process were allegedly made by both the Company and the Union. (FAC ¶ 56 ("the decisions made by the union and company are final"), ECF No. 12.) Moreover, the FAC alleges that "both IBEW and Defendant has refused Plaintiffs and Proposed

1  Class members' attempts to file timely, additional grievances regarding wage increases and lack

2  of retroactive settlement payouts." (FAC ¶ 57, ECF No. 12.)

3  　　　As alleged, the Union either:  (1) sat back, allowed Defendant to "cherry-pick" particular

4  individuals for wage adjustments in the joint review process, and then ratified those decisions; or

5  (2)  actively participated in "cherry-picking" particular individuals for wage adjustments in the

6  joint review process. In the former case, the Union has committed an act of omission in reckless

7  disregard of the rights of its members. In the latter case, the Union has actively engaged in bad

8  faith conduct against its members. Either situation constitutes a breach of the duty of fair

9  representation. Moreover, the Union's refusal to hear any further grievances without

10  justification—and after only a cursory review of employee resumes—qualifies as only

11  perfunctory handling of a potentially meritorious grievance.

12  　　　Based on these allegations in the FAC, Plaintiffs have adequately pleaded a breach of the

13  Union's duty of fair representation and thus state a claim that can be heard in this court even if the

14  grievance procedures were intended to be final and binding without judicial oversight.

15  　　**E.  Plaintiffs' Complaint Was Filed Within the Applicable Statute of Limitations**

16  　　　Defendant next contends that Plaintiffs' original Complaint, which was filed on July 10,

17  2015, should be barred by the statute of limitations because it was filed more than six months

18  after the claim for breach of contract arose. (Defendant's Motion to Dismiss 10:16-22, ECF No.

19  13, *citing DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169-172 (1983) ("We refer to §

20  10(b) of the National Labor Relations Act, which establishes a six-month period for making

21  charges of unfair labor practices to the NLRB").) Specifically, Defendant argues that the claims

22  alleged in the Complaint (and later the FAC) accrued when the Plaintiffs first became aware that

23  they were being paid less than they were originally promised. At the latest, Defendant asserts, the

24  statute of limitations for Plaintiffs' claims began to run on December 15, 2014, the date that

25  Plaintiffs were notified that PG&E had incorrectly interpreted the CBA and would be issuing

26  settlement payments to thirty customer service representatives. The statute of limitations would

27  thus have run on May 15, 2015.

28

In *DelCostello*, the U.S. Supreme Court addressed the appropriate statute of limitations where a plaintiff claimed a violation of a collective bargaining agreement. The Court noted that it had applied the state statute of limitations regarding breaches of contract for a case involving the breach of a collective bargaining agreement in the case of *Auto Workers v. Hoosier Corp.*, 383 U.S. 696 (1966). *DelCostello*, 462 U.S. at 162. The Court explained that the prior decision, however "was a straightforward suit under § 301 of the Labor Management Relations Act . . . for breach of the collective bargaining agreement," and "did not involve any agreement to submit disputes to arbitration." *DelCostello*, 462 U.S. at 162. The Court then construed a claim before it for the breach of a collective bargaining agreement following a binding arbitration as "a hybrid § 301/fair representation claim, amounting to a direct challenge to the 'the private settlement of disputes under [the collective-bargaining agreement].'" *DelCostello*, 462 U.S. at 165.

In other words, the *DelCostello* Court treated the claim before it as a challenge to the grievance procedures as applied *by the union*, as well as to the breach of the collective bargaining agreement *by the company*. Thus, the Court reasoned, it could analogize the hybrid claim to a claim before the NLRB for unfair labor practices, which had a six-month statute of limitations. *Id.* at 169 ("In this case, however, we have available a federal statute of limitations actually designed to accommodate a balance of interests very similar to that at stake here—a statute that is, in fact, an analogy to the present lawsuit more apt than any of the suggested state-law parallels"). Because the claim arose out of the unfair labor practices at issue (*i.e.*, the purportedly inadequate grievance procedures applied by the union), the six month statute of limitations began to run only after the committee in the grievance proceedings issued a decision. *Id.* at 172 ("Depending on when the joint committee's decision is thought to have been rendered, the suit was filed some seven or eight months afterwards").

*DelCostello* thus endorsed two applicable statute of limitations for cases involving an alleged breach of a collective bargaining agreement. Where a case is merely a breach of contract case without a requirement to submit disputes to arbitration, the underlying state statute of limitations applies. Notably, in the *Auto Workers* situation, the statute of limitations begins to run when the cause of action accrues, just as in any breach of contract case. *Auto Workers*, 383 U.S.

at 707-708.  In contrast, where there is an agreement to submit to disputes to arbitration, and Plaintiffs then plead a hybrid case for breach of contract and breach of fair representation, the six month federal statute of limitations applies. In such a *DelCostello* situation, however, the statute of limitations begins to run once the grievance procedure has been exhausted.  *DelCostello*, 462 U.S. at 172 (measuring statute of limitations from "when the joint committee's decision is thought to have been rendered").

Against this legal backdrop, Defendant claims that Plaintiffs' suit is time barred because the six-month statute of limitation applies and began running when Plaintiffs learned they were being paid less than provided under the CBA.  In other words, Defendant argues that the six-month rule in *DelCostello* applies, but should begin running with the accrual rule in *Autoworkers* and standard breach of contract claims. In support of Defendant's argument, Defendant cites the case of *Souza v. Pacific Bell Telephone Co., Inc.*, Case No. 1:07-CV-01817 OWW-DLB, 2008 WL 782878, *8 (E.D. Cal. 2008), for the proposition that the "general rule is that § 10(b)'s six-month limitation period starts running when plaintiff was or should have been aware of the acts constituting the alleged violation." (Motion to Dismiss 10:16-22, ECF No. 13.) Defendant then argues that, based on this rule, the six-month period began to run "at the end of their first pay period," when they learned they were being paid less than $23.88.

Defendant's reference to *Souza* is misleading in the extreme. After citing the general rule, the *Souza* court went on to explain:

> Ordinarily, however before an employee may bring a suit against his employer for breach of a collective bargaining agreement, the employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement. *DelCostello,* 462 U.S. at 163. Therefore, "the timeliness of the suit must be measured from the date on which the employee knew or should have known of the union's final action or the date on which the employee knew or should have known of the employer's final action, whichever occurs later." *Proudfoot,* 779 F.2d at 1559 ("By final action we mean the point where the grievance procedure was exhausted or otherwise broke down to the employee's disadvantage .")

*Souza*, 2008 WL 782878, at *8. In other words, *Souza* did not hold that the six-month statute of limitations for the *DelCostello* hybrid claim begins to run once a plaintiff knows of the underlying

1   breach of contract action, as Defendant claims. It held the opposite:  the six month statute of

2   limitations for a *DelCostello* hybrid claim begins to run after exhaustion of the grievance process.

3        Defendant's proposed rule is not just at odds with the case law—it is at odds with the

4   purpose of the collective bargaining process. Generally, before an employee "may bring suit

5   against his employer for breach of a collective bargaining agreement," the employee must

6   "attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining

7   agreement." *DelCostello*, 462 U.S. at 163. Were the law as Defendant supposes, plaintiffs would

8   be caught in a double bind:  If they immediately sued based on a violation of a collective

9   bargaining agreement, the suit would be dismissed because of a failure to exhaust administrative

10   remedies. If they went through the full administrative remedy process, however, they would lose

11   the right to sue entirely based on the statute of limitations. Such a policy would also encourage

12   employers and unions to drag out the grievance process to prevent future litigation, an approach

13   that runs afoul of the stated purposes of federal labor law. *DelCostello*, 462 U.S. at 168 (finding

14   that federal law favors "the relatively rapid final resolution of labor disputes").

15        Thus, assuming that *DelCostello* applies and the appropriate statute of limitations is six

16   months,[6] the statute of limitations did not begin to run until PG&E made its final set of settlement

17   payouts, announced that no additional payouts would be awarded, and refused to process

18   Plaintiffs' further grievances in May 2015. This conclusion is supported by later case law

19   construing *DelCostello*. In *Galindo v. Stoody Co.*, 793 F.2d 1502 (9th Cir. 1986), for instance, a

20   plaintiff was laid off in contravention of a collective bargaining agreement. The plaintiff grieved

21   and took the case to arbitration after the grievance process failed to resolve the issue. After

22   receiving an unfavorable arbitration decision, the plaintiff sued the employer and the union in

23   district court. The *Galindo* court read plaintiff's challenge to the grievance process as accruing

24   when the employee learned of the union's decision:

25

26

[6] The Court notes again that there was no arbitration hearing in this case and the FAC alleges that the grievance process did not address the merits of their individual experience. Moreover, Defendants contend that the cause of action arose when Plaintiffs realized they were underpaid. There is thus an argument that the case presents a breach of contract claim more akin to *Auto Workers v. Hoosier Corp.*, 383 U.S. 696 (1966). But given that application of the *Auto Workers* rule would not change the result, the Court need not resolve that issue.

> The vast majority of duty of fair representation claims arise in the grievance procedure context: the employee claims that a union failed to process a grievance or mishandled its presentation. In determining when the six-month period accrues, the simplest case is one where a union decides not to file a grievance; the cause of action generally accrues when the employee learns or should have learned of the union's decision. Similarly, where a duty of fair representation suit seeks to overturn an unfavorable arbitration award on the ground that the union committed errors in the arbitration proceedings, the claim accrues when the employee learns of the arbitrator's award.

*Galindo*, 793 F.2d at 1509.

The FAC alleges that the first review of Plaintiffs' job classifications occurred as the result of a grievance in November 2013. (FAC ¶ 46, ECF No. 12.) The grievance was filed by the Union and Plaintiffs were not made aware of the grievance—or its outcome—until December 15, 2014. (FAC ¶ 49, ECF No. 12.) At some point following the resolution of this grievance, Plaintiffs (and other similarly situated employees) complained and requested a second review of job classifications for Customer Service Representatives. (FAC ¶ 54, ECF No. 12.) After the payouts were made for the second round of reviews in May 2015, PG&E announced that there would be no further settlement payouts. (FAC ¶ 56, ECF No. 12.) It was not until May 2015 that the Union and PG&E refused Plaintiffs' requests "to file timely, additional grievances regarding wage increases and the lack of retroactive settlement payouts." (FAC ¶ 57, ECF No. 12.) Thus, the statute of limitations for Plaintiffs' claim began to run in (or shortly after) May 2015. Because the Complaint was first filed in July 2015, Plaintiffs' claims are not time barred.

### F.  Preemption Under the Labor Management Relations Act

Under section 301 of the Labor Management Relations Act, "[s]uits for violation of contracts between an employer and a labor organization representing employees . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). In enacting this statute, "Congress charged federal courts with a 'mandate . . . to fashion a body of federal common law to be used to address disputes arising out of labor contracts.'" *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007), *quoting Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985). Because of this mandate, "[t]he preemptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts

1   between and an employer and a labor organization.' Any such suit is purely a creature of federal

2   law, notwithstanding the fact that state law would provide a cause of action in the absence of §

3   301." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 23 (1983).

4          A claim for breach of a collective bargaining agreement thus may be brought in federal

5   court. A claim other than breach of such an agreement is preempted if it is "inextricably

6   intertwined" with the terms of a collective bargaining agreement. *Allis-Chalmers Corp.*, 471 U.S.

7   at 213. However, a claim that seeks to vindicate "nonnegotiable state-law rights . . . independent

8   of any right established by contract" is not pre-empted. *Id.* Thus, "[i]f the plaintiff's claim cannot

9   be resolved without interpreting the applicable CBA . . . it is preempted." *Cramer v. Consol.*

10  *Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001). If, on the other hand, "the claim may be

11  litigated without reference to the rights or duties established in the CBA . . . it is not preempted."

12  *Id.* "The plaintiff's claim is the touchstone for this analysis; the need to interpret the CBA must

13  inhere in the nature of the plaintiff's claim. If the claim is plainly based on state law, § 301

14  preemption is not mandated simply because the defendant refers to the CBA in mounting a

15  defense." *Id.*

16         The Ninth Circuit has adopted a two part test to analyze preemption under § 301. First,

17  courts must look to "whether the asserted cause of action involves a right conferred upon an

18  employee by virtue of state law, not by a CBA. If the right exists solely as a result of the CBA,

19  then the claim is preempted, and our analysis ends there." *Burnside*, 491 F.3d at 1059. Second,

20  even if "the right exists independently of the CBA, we must still consider whether it is

21  nevertheless 'substantially dependent on analysis of a collective-bargaining agreement.'" *Id.* "If

22  such dependence exists, then the claim is preempted by section 301; if not, then the claim can

23  proceed under state law." *Id.* at 1059-60. The case law on this subject also makes clear that the

24  line between preemption and non-preemption is frequently "somewhat hazy." *Balcorta v.*

25  *Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000).

26         **1.     First Cause of Action (Breach of Contract)**

27         Plaintiff's First Cause of Action alleges that PG&E paid Plaintiffs wages that were

28  inconsistent with the terms of the CBA (and PRC 21052), despite the fact that Plaintiffs

performed their obligations under the CBA. Plaintiffs also allege, as described above, that the Union breached its duty of fair representation with respect to the CBA (and PRC 21052). Because the FAC describes facts consistent with the breach of a collective bargaining agreement, the Court construes this claim as a breach of a collective bargaining agreement under § 301, rather than as a purely state law breach of contract. The Court thus has subject matter jurisdiction to review this claim and it is not subject to dismissal. It will, however, be treated as a claim controlled by § 301. *Jackson v. S. Cal. Gas Co.*, 881 F.2d 638, 642 (9th Cir. 1989) ("Jackson's fourth cause of action alleges breach of the collective bargaining agreement and quotes at length from section 12.03 of the agreement . . . [t]his claim is therefore one to enforce the collective bargaining agreement and is controlled by section 301"); *Cavanaugh v. S. Cal. Permanente Med. Group, Inc.*, 583 F.Supp.2d 1109, 1128 (C.D. Cal. 2008) ("state breach of contract causes of action can be brought in federal court as Section 301 claims *provided that* [plaintiff] alleges and proves that her union breached its duty of fair representation") (emphasis in original).

In Defendant's Supplemental Brief in Support of Motion to Dismiss (ECF No. 28), Defendant argues that "All of Plaintiff's claims are preempted under Section 301," including Plaintiffs' cause of action for breach of the collective bargaining agreement. In other words, Defendant argues that Section 301 precludes Plaintiffs from ever suing for breach of a collective bargaining agreement. Section 301 says no such thing. Again, § 301, which is embodied in 29 U.S.C. § 185, is a jurisdictional statute saying that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter . . . may be brought in any district court of the United States . . . ." Nothing states that suits for breaches of collective bargaining agreements should be dismissed because of § 301. On the contrary, claims for breaches of collective bargaining agreements *should* be brought in federal court, as was done here.

### 2. Second and Third Causes of Action (Breach of Implied Covenant and Declaratory Relief)

Plaintiffs' Second Cause of Action alleges that Defendant breached the implied covenant of good faith and fair dealing in the CBA. In particular, Plaintiffs allege that Defendant interfered

1    with Plaintiffs' rights to receive the wages specified in the CBA. Every contract contains an

2    implied covenant of good faith and fair dealing to "prevent one contracting party from unfairly

3    frustrating the other party's right to receive the *benefits of the agreement actually made*." *Guz v.*

4    *Bechtel Nat'l, Inc.*, 24 Cal.4th 317, 349 (2000) (emphasis in original). "The covenant thus cannot

5    'be endowed with an existence independent of its contractual underpinnings' . . . It cannot impose

6    substantive duties or limits on the contracting parties beyond those incorporated in the specific

7    terms of their agreement." *Id.* at 349-350.

8         Because Plaintiffs' claim is that Defendant has breached the covenant implied by the

9    CBA, this cause of action is "inextricably intertwined" with the terms of the CBA. The implied

10   covenant of good faith and fair dealing cannot create duties or rights beyond those created by the

11   underlying contract. Thus, a determination of the duties and rights implied by the covenant of

12   good faith and fair dealing necessarily entails an interpretation of the underlying contract and is

13   substantially dependent on that contract. *Harris v. Alumax Mill Prods, Inc.*, 897 F.2d 400, 403

14   (9th Cir. 1990).

15        The Second Cause of Action is preempted. As noted above, however, preemption of a

16   state claim under § 301 merely means that the claim is replaced or supplanted with a § 301 claim.

17   *Id.* ("we conclude that Harris's state law claims are preempted. They are thus converted by

18   operation of law into a section 301 federal cause of action to enforce rights covered by the

19   collective bargaining agreement"). This cause of action is thus merged into and replaced by the

20   First Cause of Action.

21        Similarly, Plaintiffs' Third Cause of Action asks for declaratory relief under California

22   Code of Civil Procedure § 1060. Such a request is indisputably substantially dependent on an

23   interpretation of the terms of the CBA because it asks the Court "for a declaration of rights or

24   duties" under the CBA. Cal. Code Civ. Proc. § 1060. Despite the fact that it is preempted,

25   however, the request does not merely disappear—a request for declaratory relief can be

26   entertained as a federal law claim under § 301 as easily as under California law. *Castaneda v.*

27   *Dura-Vent Corp.*, 648 F.2d 612, 616 (9th Cir. 1981) ("Section 301 is not restricted to suits for

28   damages or specific performance . . . Parties may seek declarations of their rights under collective

bargaining agreements. Here, appellants' complaint appropriately sought declaratory relief

regarding the rights of the parties in relation to the 1977-1981 collective bargaining agreement");

*Allied Oil Workers Union v. Ethyl Corp.*, 341 F.2d 47, 49-50 (5th Cir. 1965) ("Yet it is in a case

such as this that we find Section 301 to have its most salutary effect, namely, the avoidance of

industrial conflict by providing the parties to an honest dispute over the interpretation of their

contract with a peaceful alternative to economic disruption"). Thus, while the Third Cause of

Action is preempted, it still operates as a valid request for relief under § 301 and will be

converted into a request for Declaratory Judgment attached to the First Cause of Action.

### 3.  Fourth, Fifth, Sixth, Seventh, and Eighth Causes of Action (California Labor Code Violations)

The Fourth through Eighth Causes of Action enumerate a variety of California Labor

Code violations. Because "§ 301 does not permit parties to waive, in a collective bargaining

agreement, nonnegotiable state rights," the Court must examine the rights sought to be enforced

by each of the claims. *Balcorta*, 208 F.3d at 1111.

The Fourth Cause of Action rests on California Labor Code § 204, which, among other

things, sets timing requirements for the payment of wages. Cal. Labor Code § 204 ("All wages . .

. earned by any person in any employment are due and payable twice during each calendar month,

on days designated in advance by the employer as the regular paydays"). Plaintiffs do not,

however, contend that Defendant failed to pay *any* wages within the required time frame; rather,

they allege that Defendant failed to pay *the full amount* of wages due within the required time

frame. (FAC ¶ 96 ("Plaintiffs and the Proposed Class were forced to work on a regular and

consistent basis at a wage less than their 'directly related clerical experience' called for as Service

Representative I personnel under the CBA and PRC 21052"), ECF No. 12.)

In other words, absent the alleged breach of contract (*i.e.*, if Plaintiffs were actually only

entitled to the $18.36 per hour they actually received, instead of the $23.88 per hour they believe

they were promised in the CBA), there would be no basis for alleging a violation of Labor Code §

204 because the Labor Code section only provides a right to be paid on time—it does not provide

a right to be paid $23.88 per hour. Thus, the right that Plaintiffs seek to vindicate through this

1    Cause of Action is not the right to receive their wages within the timing parameters set forth by

2    state law—it is the *amount of the wages* that they believe they were entitled to under the CBA

3    within those timing parameters. The claim, as pleaded, rests solely on the CBA, rather than state

4    law, and is therefore preempted. The Court notes, however, that there are few factual allegations

5    in the Fourth Cause of Action, leaving open the possibility that Plaintiffs are, in fact, attempting

6    to allege a failure by Defendant to comply with the requirements set forth in California Labor

7    Code § 204. It is, therefore, appropriate to provide Plaintiffs with an opportunity with leave to

8    amend this cause of action to state a claim for rights arising out of California law, rather than the

9    CBA.

10         The Fifth Cause of Action lists nine Labor Code sections and the Wage Order

11   promulgated by the California Department of Labor Standards Enforcement interpreting the

12   Labor Code. In particular, the FAC contends that these sections "provide that employees have an

13   immediate and vested right to receive agreed wages for work they were engaged, suffered and

14   permitted to perform." (FAC ¶ 100, ECF No. 12.) As with the Fourth Cause of Action, however,

15   the right Plaintiffs are attempting to enforce is not the right to be paid wages *at all*; it is the right

16   to receive the wages they believe *they were promised under the CBA*.

17         Nor does the Court agree with Plaintiffs' contention that this cause of action is merely

18   challenging the "result" of the wages owed, rather than the "method" of calculating those wages,

19   as in *Gregory v. SCIE, LLC*, 317 F.3d 1050 (9th Cir. 2003). In *Gregory*, a collective bargaining

20   agreement provided for the payment of premium pay for overtime hours worked. *Id.* at 1053.

21   Plaintiff claimed that he had not been paid overtime in accordance with the California Labor

22   Code. The *Gregory* court rejected defendant's assertion that the claim should be preempted under

23   § 301, saying that:  "Even assuming the CBA provides premium wage rates for over-time, the

24   question here is the same as that raised by Section 510:  whether when overtime is paid under the

25   CBA it is paid for all overtime hours worked, as required by California law. This is a question of

26   interpretation of state law, not of the CBA, that we leave to the state court." *Id*. In other words,

27   the crux of the *Gregory* plaintiff's complaint was not the amount to be paid on an hourly basis for

28   overtime (*i.e.*, the "method" of calculation); it was whether plaintiff had received any overtime

1   compensation for overtime hours worked. *Id.* ("all that was needed to determine Gregory's claim

2   were the earning reports for each day worked"). Plaintiffs' claim presents precisely the opposite

3   situation: Plaintiffs here are not alleging that they received no compensation at all for hours

4   worked; they are alleging that they did not receive the compensation they were promised under

5   the CBA. The claim thus arises out of and relies on the CBA and is preempted. As with the

6   Fourth Cause of Action, however, the Court will provide Plaintiffs with an opportunity to amend

7   the FAC, if they are alleging a claim that is independent from the CBA.

8       The Sixth and Seventh Causes of Action are closer questions.[7] The Sixth Cause of Action

9   is premised on Labor Code § 216, which prohibits an employer from, among other things,

10  willfully refusing "to pay wages due and payable after demand has been made" and imposes

11  penalties for a failure to pay the wages due. The Seventh Cause of Action is based on Labor Code

12  §§ 201, 202, and 203, which require an employer to pay any wages due at discharge within 72

13  hours and impose waiting time penalties on employers who fail to do so. It is unclear whether

14  Plaintiffs are alleging these causes of action based on a total failure to pay wages in the

15  circumstances required by the statutes (*e.g.*, after demand has been made or at discharge) or based

16  on a failure to pay wages at the rates promised in the CBA. As explained above, the former would

17  allow a claim to survive preemption while the latter would not. *See, e.g., Livadas v. Bradshaw*,

18  512 U.S. 107, 124 (1994) ("The only issue raised by Livadas's claim, whether Safeway 'willfully

19  fail[ed] to pay' her wages promptly upon severance, was a question of state law, entirely

20  independent of any understanding embodied in the collective-bargaining agreement between the

21  union and the employer"); *In re Jercich*, 238 F.3d 1202, 1206 (9th Cir. 2001) ("The California

22  Court of Appeal has held that 'the prompt payment of wages due an employee is a fundamental

23  public policy' in California"), *quoting Gould v. Md. Sound Indus., Inc.*, 31 Cal.App.4th 1137,

24  1147 (1995).

25      While there is a colorable argument that Plaintiffs are alleging these two causes of action

26  based on a total failure to meet statutory requirements, there are also allegations in the FAC that

27
28

---

[7] The Court notes that Defendant declines to address Plaintiffs' Sixth, Seventh, and Eighth Causes of Action in its supplemental briefing and makes only passing reference to these causes of action in the original Motion to Dismiss and reply briefing in support of that Motion.

suggest that these causes of action are merely rehashing the issues raised in the First Cause of Action. Plaintiffs declined, both at the hearing and in the supplemental briefing, to offer any basis for these claims independent of the CBA—*i.e.*, even if the rate of pay that Defendant paid Plaintiffs was correct. The plain text of the FAC also suggests that these claims are discussing the amount owed, rather than the actual fact of payment itself. (FAC ¶ 108 ("Defendant continually shorted Plaintiffs and the Proposed Class and refused to pay them all their wages earned despite demands being made"), ECF No. 12.) The Court must conclude that these claims are offered based on rights created by the CBA, not by state law, and should be preempted. Plaintiffs will be granted leave to amend the FAC to allege facts that demonstrate that these causes of action are offered to vindicate state rights, rather than rights under the CBA, however.

Finally, the Eighth Cause of Action alleges violations of California Labor Code §§ 226(a), 1174, 1175, and the Wage Order interpreting those statutes. In particular, the cause of action alleges that Defendant failed to provide Plaintiffs with complete wage statements by, among other things, failing to "list all applicable hourly rates . . . the inclusive dates for the period worked by Plaintiffs and the Proposed Class alleged herein, and . . . to accurately report the gross and net earnings of the Plaintiffs and Proposed Class." (FAC ¶ 122, ECF No. 12.) Once again, however, it is unclear if the premise of this cause of action is the same as in the other Labor Code claims— that Plaintiffs were entitled to a higher rate of pay as detailed in the CBA (and were thus entitled to have that higher rate of pay reflected on their wage statements). As with the other Labor Code claims, Plaintiffs have not offered allegations sufficient to establish that this claim rests on a basis independent of the CBA. The claim is thus preempted and Plaintiffs will be provided leave to amend.

### 4. Ninth and Tenth Causes of Action (Promissory Fraud and Promissory Estoppel)

The FAC alleges two causes of action for fraudulent conduct by Defendant. In both causes of action, Plaintiffs allege that: (1) Defendant promised Plaintiffs that their resumes would be reviewed and that they would receive settlement payouts (if eligible); (2) Defendant made the promise with the knowledge that they would not be making settlement payouts, except to a small,

predetermined group; (3) Plaintiffs justifiably relied on Defendant's promise by remaining at their jobs and, in some cases, declining to submit further grievances; and (4) Plaintiffs suffered damages as a result.[8] Defendant contends that these two causes of action are preempted because the CBA is referenced at multiple points in the allegations. Plaintiffs argue that similar cases have found fraud claims not preempted, even where the fraud relates to or involves a collective bargaining agreement.

The causes of action, as pleaded, do not depend on the CBA for the rights they seek to vindicate, nor do they require interpretation of the CBA to determine their outcome. Ninth Circuit case law has analyzed fraud causes of action in this context by examining the elements required to demonstrate fraud. In one of these cases, for instance, the respective fraud claim was not preempted where none of the elements in the claim would require interpretation of the collective bargaining agreements. *Beals v. Kiewit Pac. Co.*, 114 F.3d 892, 895 (1997) ("Since none of the terms of the CBA relevant to Beals' negligent misrepresentation claim is subject to conflicting meanings, resolution of that claim will not contravene the policy behind § 301 preemption 'to ensure uniform interpretation of collective-bargaining agreements. Therefore, Beals' negligent misrepresentations claim is not preempted by § 301"); *Operating Eng'rs Pension Trust v. Wilson*, 915 F.2d 535, 538 (9th Cir. 1990) (no preemption where none of the required elements "require interpretation of the collective bargaining agreement").

Under this analysis, even a claim that a party was fraudulently induced to enter into a collective bargaining agreement does not necessarily require interpretation of that collective bargaining agreement, nor does it substantially depend on that agreement. *Wilson*, 915 F.2d at 539 ("[E]ven if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes"), *quoting Lingle*, 486 U.S. at 409-10; *Walton v. UTV of San Francisco, Inc.*, 776 F.Supp. 1399, 1402 (N.D. Cal. 1991).

---

[8] Under California law, a plaintiff alleging fraud must show:  "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Arei II Cases*, 216 Cal.App.4th 1044, 1021-22 (2013).

None of the elements alleged in the FAC rely on the CBA for their existence. Put simply, the demonstration of the fraud claim would not require the Court to "look deeply into the results of two collectively bargained disputes," as Defendant asserts without elaboration. (Defendant's Supplemental Brief in Support of Motion to Dismiss 11:13-14, ECF No. 28.)

The Court is not persuaded by Defendant's argument that interpretation of the CBA is required merely because the FAC mentions the CBA. The mere fact that a state claim may touch upon a collective bargaining agreement does not render it preempted. *Lingle*, 486 U.S. at 413 n. 12 ("not every dispute . . . tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301"), *quoting Allis-Chalmers Corp.*, 471 U.S. at 211. The Ninth and Tenth Causes of Action are not preempted.

### 5. Eleventh Cause of Action (California Business and Professions Code § 17200)

Plaintiffs' Eleventh Cause of Action alleges unfair competition based on the "unfair, deceptive, untrue or misleading advertising" Defendant used in advertising the Service Representative I position on its website. (FAC ¶ 141, ECF No. 12.) "[T]o state a claim under either the UCL or the false advertising law, based on false advertising or promotional practices, 'it is necessary only to show that 'members of the public are likely to be deceived.'" *In re Tobacco II Cases*, 46 Cal.4th 298, 312 (2009), *quoting Kasky v. Nike, Inc.*, 27 Cal.4th 939, 951 (2002). A plaintiff must also "show that the misrepresentation was an immediate cause of the injury-producing conduct." *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 326 (2011), *quoting In re Tobacco II Cases*, 46 Cal.4th at 326. Unlike a general fraud claim, a claim under Business and Professions Code § 17200 need not show actual falsity, knowledge of that falsity, or reasonable reliance by the plaintiff (though *actual* reliance may still be required). *In re Tobacco II Cases*, 46 Cal.4th at 312 ("A [common law] fraudulent deception must be actually false, known to be false by the perpetrator and reasonably relied upon by a victim who incurs damages. None of these elements are required to state a claim for injunctive relief" under the UCL").

Plaintiffs allege that Defendant advertised the positions for which Plaintiffs applied as paying $23.88 per hour, even though the positions only paid $18.36 per hour, subject to potential

enhancement based on the CBA. Plaintiffs further allege that Defendant reneged on the advertised wage when making Plaintiffs offers of employment. The Court sees little reason why this claim would substantially depend on interpretation of the CBA. Rather, the outcome of this claim should depend on the specific advertising that Defendant presented to the general public and the likelihood that that advertising could deceive members of the public (including Plaintiffs). At the very most, the claim might require reference to the CBA to determine rates of pay. But this is not enough to preempt the claim. *Lingle*, 486 U.S. at 413 n. 12. While it is uncertain what damages Plaintiffs may be able to obtain as a result of this claim, it is not preempted and cannot be dismissed at this stage of the litigation. *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 985 (9th Cir. 2015) ("Entitlement to restitution is a separate inquiry from the amount of restitution owed under California's UCL and FAL"); *Espinoza v. Nat'l Beef Cal., L.P.*, No. 08-cv-01902-H (NLS), 2008 WL 6630100, at *4 (S.D. Cal. Dec. 11, 2008) (section 17200 claim not preempted because it was "dependent upon finding a violation of California law").

## IV.    ORDER

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion to Dismiss the First Amended Complaint (ECF No. 13). Accordingly, IT IS HEREBY ORDERED:

1) Defendant's Motion to Dismiss Plaintiffs' First Cause of Action is DENIED;

2) Defendant's Motion to Dismiss Plaintiffs' Second Cause of Action is GRANTED. Plaintiffs' Second Cause of Action is DISMISSED.

3) Defendant's Motion to Dismiss Plaintiffs' Third Cause of Action is GRANTED to the extent the Third Cause of Action requests relief beyond that allowed by 29 U.S.C. § 185;

4) Defendant's Motion to Dismiss Plaintiffs' Fourth Cause of Action is GRANTED. Plaintiffs' Fourth Cause of Action is DISMISSED WITH LEAVE TO AMEND;

5) Defendant's Motion to Dismiss Plaintiffs' Fifth Cause of Action is GRANTED. Plaintiffs' Fifth Cause of Action is DISMISSED WITH LEAVE TO AMEND;

6) Defendant's Motion to Dismiss Plaintiffs' Sixth Cause of Action is GRANTED. Plaintiffs' Sixth Cause of Action is DISMISSED WITH LEAVE TO AMEND;

7) Defendant's Motion to Dismiss Plaintiffs' Seventh Cause of Action is GRANTED. Plaintiffs' Seventh Cause of Action is DISMISSED WITH LEAVE TO AMEND;

8) Defendant's Motion to Dismiss Plaintiffs' Eighth Cause of Action is GRANTED. Plaintiffs' Eighth Cause of Action is DISMISSED WITH LEAVE TO AMEND;

9) Defendant's Motion to Dismiss Plaintiffs' Ninth Cause of Action is DENIED;

10) Defendant's Motion to Dismiss Plaintiffs' Tenth Cause of Action is DENIED; and,

11) Defendant's Motion to Dismiss Plaintiffs' Eleventh Cause of Action is DENIED.

Within 30 days from this Order, Plaintiffs shall either file an amended complaint or state that they plan to proceed with the First Amended Complaint.

IT IS SO ORDERED.

Dated:   **December 28, 2015**                    /s/ *Erica P. Grosjean*

UNITED STATES MAGISTRATE JUDGE