UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BECKY GREER, TIMOTHY C. BUDNIK, ROSARIO SAENZ, IAN CARTY, HALEY MARKWITH, and MARIA GARCIA PESINA, individually and as class representatives,<br><br>Plaintiffs,<br><br>v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY, DOES 1 through 10, inclusive, and IBEW LOCAL 1245,<br><br>Defendants. | Case No. 1:15-cv-01066-EPG<br><br>**ORDER RE: MOTION TO STRIKE DEPOSITION ERRATA SHEETS**<br><br>(ECF No. 148) |

On April 28, 2017, Plaintiffs filed a Motion to Strike Deposition Transcript Changes and Errata Sheets. (ECF No. 144.) The Court ordered the Motion to be briefed on a modified briefing schedule and both Defendants filed opposition briefs. (ECF Nos. 158, 160.) Plaintiffs filed a reply on May 17, 2017. (ECF No. 164.) Pursuant to Local Rule 230(g), the Court determined that the Motion was suitable for decision without oral argument.

1

Plaintiffs' Motion asks the Court to strike errata sheets including a number of changes to deposition testimony for nine witnesses.[1] In particular, Plaintiffs object to errata sheets submitted following the depositions of: Defendant Pacific Gas and Electric's ("PG&E") witnesses Chris Diamond, Jesica Ishibashi, and Robert Joga; and Defendant IBEW Local 1245 ("IBEW") witnesses Arlene Edwards, Ed Dwyer, Ken Ball, Jennifer Gray, Graciela Nuñez Clark, and Jennifer Marston. After the depositions of each of these witnesses, Defendants submitted errata sheets changing many of the answers the witnesses had offered in deposition. Plaintiffs contend that these changes substantially altered the testimony at issue and were made for strategic litigation reasons, rather than to correct transcription errors or for other valid purposes.

The Court has reviewed the briefing and the proposed changes and agrees with Plaintiffs. Defendants' proposed "errata" to their depositions are not proper corrections falling within Rule 30(e). Rather, they are attempts to substantively alter deposition testimony on critical issues of fact in order to improve Defendants' position in upcoming motions for summary judgment and class certification. Plaintiffs' Motion will thus be GRANTED.

**I.   BACKGROUND**

This case is currently proceeding on the Third Amended Complaint (the "TAC"). (ECF No. 105.) The TAC alleges that Plaintiffs worked for Defendant PG&E in Customer Service Representative I ("SR I") positions at PG&E's Customer Contact Centers in California. SR I employees at contact centers provide customer service assistance by phone. PG&E also maintains a number of local offices throughout the state, in which employees provide customer service assistance in person.

As SR I employees, Plaintiffs' wage rates were governed, in part, by a collective bargaining agreement between PG&E and the International Brotherhood of Electrical Workers (the "CBA"). Under the terms of the CBA, Customer Service Representatives received different wage rates depending on the amount of "directly related clerical job experience" they possessed.

---

[1] At different points in the briefing and in court, Plaintiffs variously assert that Defendants have made 174, 273, or 274 inappropriate changes. In any case, Plaintiffs attach a list of the challenged corrections as Exhibit A to the Declaration of Patrick D. Toole (ECF No. 148-2).

In November 2013, in response to a grievance related to the definition of "directly related clerical job experience," the Review Committee of the International Brotherhood of Electrical Workers issued a letter clarifying the application of the pay scale system. In particular, the letter explained that PG&E had been erroneously applying the system by defining "directly related clerical job experience" as only experience that had been obtained working as a Customer Service Representative at PG&E. Instead, the Review Committee found, PG&E should have considered customer service experience in call centers comparable to the work performed for PG&E.

PG&E and IBEW began a joint review process to determine whether any existing employees would need to be reclassified based on the new understanding of the CBA's pay scale. Although the review process had at least two iterations and resulted in a settlement agreement that paid backpay to several other employees, Plaintiffs were not re-classified at the higher rate of pay. Plaintiffs filed suit on July 10, 2015, alleging that they should have been re-classified.

Over the course of the litigation, Plaintiffs have taken the depositions of a number of PG&E and IBEW witnesses. After each deposition, the parties submitted errata sheets containing "corrections" that purported to amend the testimony that had been provided at each deposition. Among the corrections, for example, Defendants asked that changes be made as follows:[2]

| |
|---|
| **PG&E WITNESS ROBERT JOGA** |
| Q. And, in particular, 21052 is a classification-wide implication?[3] <br> A. Yes. I'd say it was both, actually—**for all contact center SRIs.** <br> (Deposition Transcript of Robert Joga 89:22-24, ECF No. 156-1 at pg. 346.) |
| Q. Understood. So 21052, in your understanding, would affect both the systemwide and classification-wide implication under 9.3A3? <br> A. Yes**, for contact center SRIs.** <br> (*Id.* at 90:7-10.) |
| **IBEW WITNESS KEN BALL** |
| Q. Looking at Exhibit 18, Mr. Ball, can you tell me who the grievant is or grievants are? <br> A. IBEW Local 1245 in the classification of CSR, PTs, FTs – all effected – full-time, part-time – all effected**, in the four call centers noted on the grievance.** <br> (Deposition Transcript of Ken Ball 45:1-5, ECF No. 156-3 at pg. 378.) |

---

[2] Changes submitted by Defendants are in **bold** typeface and deletions are in ~~strikethrough~~ typeface. The list is not all inclusive.

[3] Grievance 21052 dealt with the application of "directly related clerical job experience" under the CBA.

| | |
|---|---|
| 1 | Q. And that's what you understand is when it says "all effected" in that classification, that means that the grievance applies to all the persons employed within the classification? |
| 2 | A. Yes**, in the call centers noted.** |
| 3 | (*Id.* at 52:18-22.) |
| 4 | **IBEW WITNESS ED DWYER** |
| 5 | Q. At the time you reviewed the grievances in August of – or approximately of August of 2012, did you have any discussion with anyone as to whether or not it should include local office? |
| 6 | A. No, never had that discussion **that I can recall**. |
| | Q. With anyone at any time? |
| 7 | A. No, **not that I recall**. |
| 8 | (Deposition Transcript of Ed Dwyer 152:18-24, ECF No. 156-3 at pg. 1458.) |
| 9 | **IBEW WITNESS ARLENE EDWARDS** |
| 10 | Q. And was there a discussion about whether or not there should be – that you should file a business manager grievance? |
| 11 | Mr. Pacheco: Objection. Vague and ambiguous. |
| 12 | The witness: There was discussion, but we decided not to because PG&E was going to reopen up the grievance. |
| 13 | Q. I'm not sure I understand. |
| 14 | A. We thought – when PG&E was going to reopen this grievance for – for ~~the~~ **another review of** resumes, we thought that **maybe** local offices ~~were going to~~ **could** be included in there as well. When I say "we," I mean me and Debbie, but we did not know that that didn't apply. |
| 15 | (Deposition Transcript of Arlene Edwards 154:17-155:5, ECF No. 156-4 at pg. 503.) |
| 16 | Q. And do you think 21052 – when you say "clarified," did it sort of – did it narrow or contract the scope of experience? |
| 17 | A. It narrowed it somewhat, **but it expanded it beyond how PG&E wanted to interpret it, and** it was pretty specific about what qualified and what didn't. |
| 18 | |
| 19 | (*Id.* at 221:14-18.) |
| | **IBEW WITNESS JENNIFER GRAY** |
| 20 | Q. We're going to do that in a little bit. I just wanted to find out if you could tell me – was there a writing that you received? In other words, was there a document of any kind that told you what to look for? |
| 21 | |
| 22 | A. No. |
| | Q. It was all verbal? |
| 23 | A. Just the PRC decision**, and discussions with Ed Dwyer or Jenny Marston perhaps.** |
| 24 | (Deposition Transcript of Jennifer Gray 117:21-118:3, ECF No. 156-5 at pg. 740-41.) |
| 25 | **PG&E WITNESS CHRIS DIAMOND** |
| 26 | Q. Can you describe the documents that you reviewed? |
| 27 | A. They ~~were documents~~ **included emails marked "PRIVILEGED AND CONFIDENTIAL ATTY CLIENT COMMUNICATION"** that reflected **my attorney's opinion** ~~the notes~~ from the – some of the previous depositions, ~~like a synopsis,~~ like an assessment of a deposition, highlights, kind of thing. I'm not sure if 21052 was in what he provided me, but I know I had a |
| 28 | |

| |
|---|
| copy of it, and then the LIC report from 2011. |
| (Deposition Transcript of Chris Diamond 22:21-23:3, ECF No. 156-3 at pg. 23-24.) |
| **PG&E WITNESS JESICA ISHIBASHI** |
| Q. With – before we get into the substance of the deposition and the topics for which you have been designated, did you do anything to prepare for your deposition today? |
| A. ~~No.~~ **Yes, including meeting with counsel on a number of occasion and reviewing the deposition topics on which I had been designated. I previously said no because I thought I was not supposed to disclose any preparation I undertook with legal counsel.** |
| (Deposition Transcript of Jesica Ishibashi 13:25-14:4, ECF No. 156-1 at pg. 579-80.) |

The deposition changes involve a wide variety of topics, including the scope of the underlying IBEW grievance, the resume review process, interpretations of the CBA, deposition preparation, and the San Bruno gas explosion involving PG&E. There are nine relevant witnesses: PG&E witnesses Chris Diamond, Jesica Ishibashi, and Robert Joga; and IBEW witnesses Arlene Edwards, Ed Dwyer, Ken Ball, Jennifer Gray, Graciela Nuñez Clark, and Jennifer Marston.

**II.    DISCUSSION**

Plaintiffs contend that the changes Defendants submitted on their errata sheets do not comply with Rule 30(e) because: (1) Defendants do not provide adequate reasons for making the changes; and (2) the corrections materially alter or contradict the testimony that the witnesses offered in deposition. Plaintiffs also attach over 100 pages of deposition corrections and meet and confer communications regarding those corrections.

Defendants argue that: (1) the Motion is premature because none of the challenged changes to testimony are yet at issue; (2) the Motion is untimely because Plaintiffs did not object to the corrections at the time they were made; (3) Plaintiffs do not demonstrate with particularity why each and every correction should be stricken (and, in any event, Defendants adequately documented and explained their changes); (4) Defendants were obligated to provide significant corrections for witnesses deposed under Rule 30(b)(6); and, (5) both the original testimony and the corrections form part of the record in this case, so any objections to the changes should simply go to the weight of witness testimony.

As an initial matter, Court will not deny the motion as untimely. The motion does not involve a discovery issue and is thus not precluded by any discovery motion deadline previously imposed on the parties. Moreover, Plaintiffs need not wait for Defendants to utilize the

"corrected" deposition testimony in a summary judgment or class certification motion before challenging the corrections. *Tourgeman v. Collins Fin. Servs., Inc.*, Case No. 08-cv-1392 JLS (NLS), 2010 WL 4817990, at *3 (S.D. Cal. Nov. 22, 2010) ("Courts strike errata sheets in contexts beyond summary judgment.").

### A. Procedural Requirements

Rule 30(e) of the Federal Rules of Civil Procedure provides that:

> On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:
>
> (A) to review the transcript or recording; and
>
> (B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

Plaintiffs contend that Defendants submitted insufficient statements "listing the changes and the reasons for making them" because Defendants offered only short and vague explanations for each change. A failure to include a sufficient statement of reasons for making changes may justify striking an errata sheet. *Bosley v. Velasco*, Case No. 1:14-cv-00049-MJS (PC), 2016 WL 3916986, at *2 n. 3 ("Since Plaintiff failed to include a statement of reasons with the proposed changes to his deposition testimony, and since he may not now attempt to correct the error, the errata must be stricken."); *Tourgeman v. Collins Fin. Servs., Inc.*, Case No. 08-cv-1392 JLS (NLS), 2010 WL 4817990, at *2 (S.D. Cal. Nov. 22, 2010) ("Courts insist on strict compliance with Rule 30(e)'s technical requirements, including the requirement of a statement of reasons."), *citing Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217, 1224-26 (9th Cir. 2005). It is not clear, however, how expansive or descriptive a statement of reasons must be to satisfy Rule 30(e).

A number of errata sheets for PG&E witnesses, including Robert Joga, Jesica Ishibashi, and Chris Diamond, do not provide *any* statement of reasons for the proposed changes. (Declaration of Patrick D. Toole ("Toole Decl."), Exhs. I, J, and K, ECF Nos. 148-1, 2, and 3.) Nor does Defendant PG&E attempt to offer any explanation after the fact. "This alone justifies striking the errata sheet[s]." *Tourgeman*, 2010 WL 4817990 at *2 ("First, as a procedural matter, the errata sheet is not accompanied by a statement of reasons explaining the changes. This alone

justifies striking the errata sheet."), *citing Hambleton*, 397 F.3d at 1224-26; *see also Azco Biotech Inc. v. Qiagen, N.V.*, Case No. 12-cv-2599-BEN (DHB), 2015 WL 350567, at *3 (S.D. Cal. Jan. 23, 2015) ("Adams failed to include a statement of reasons with the proposed changes to his deposition testimony. This failure requires that the errata be stricken."). Rather, the errata sheets that PG&E submitted contain only the "corrected" version of the testimony provided in the depositions. The corrections listed in Exhibit A of the Toole Declaration (ECF No. 148-2) on the errata sheets for witnesses Robert Joga, Jesica Ishibashi, and Chris Diamond will thus be stricken.

IBEW, in contrast, did submit statements of reasons for each of the deposition corrections made for its witnesses (Ken Ball, Graciela Clark, Ed Dwyer, Arlene Edwards, Jennifer Marston, Jennifer Gray). (Toole Decl., Exhs. F, G, H, L, M, N, ECF Nos. 148-2, 3.) For example, the errata sheet to Ken Ball's deposition testimony includes reasons such as "transcription error," "incomplete testimony," "misunderstood question," and "correcting for plural." (*Id.* at Exh. F.) Although these reasons are not exhaustively descriptive, they do appear to provide a short and plain statement to explain each change.

Plaintiffs suggest that such "vague and conclusory" reasons do not satisfy Rule 30(e) and cite to *Brokaw v. Qualcomm, Inc.*, Case No. 01-cv-1172-L(LAB), 2003 U.S. Dist. LEXIS 26519 (S.D. Cal. March 4, 2003) for support. The Court notes, however, that the *Brokaw* deponent listed only two reasons for all of his suggested changes, both of which dealt with the fact that the deponent was on medication at the time he made the statement. *Brokaw* was also decided before the Ninth Circuit Court of Appeals' decision in *Hambleton*, which, as IBEW points out, supports a focus on the *substance* of the corrections made, rather than the *procedure* in submitting those corrections. For example, the court in *Hambleton* wrote that the primary purpose for the statement of reasons requirement is "because the statement permits an assessment concerning whether the alterations have a legitimate purpose." *Hambleton*, 397 F.3d at 1224-1225. Thus, while the Court will consider IBEW's statement of reasons in examining whether the changes have a "legitimate purpose," it will not strike IBEW's errata sheets simply because they failed to meet the procedural requirements of Rule 30(e).

\\\

## B. Substantive Requirements

"In the Ninth Circuit, Rule 30(e) deposition errata are subject to the 'sham rule,' which precludes a party from creating 'an issue of fact by an affidavit contradicting his prior deposition testimony.'" *Karpenski v. Am. Gen. Life Companies, LLC*, 999 F. Supp. 2d 1218, 1224–25 (W.D. Wash. 2014), *quoting Hambleton,* 397 F.3d at 1225 (internal citations omitted). "While the language of FRCP 30(e) permits corrections in 'form or substance,' this permission does not properly include changes offered solely to create a material factual dispute in a tactical attempt to evade an unfavorable summary judgment." *Hambleton,* 397 F.3d at 1225. To determine "whether a deposition errata constitutes a sham, courts consider circumstances including the number of corrections, whether the corrections fundamentally change the prior testimony, the impact of the corrections on the cases (including whether they pertain to dispositive issues), the timing of the submission of corrections, and the witness's qualifications to testify." *Karpenski*, 999 F. Supp. 2d at 1224–25, *citing Lewis v. The CCPOA Benefit Trust Fund et al.,* Case No. C-08-03228-VRW (DMR), 2010 WL 3398521, at *2 (N.D.Cal. Aug. 27, 2010). "Even where a court finds that errata are not shams, the court may still strike portions that constitute contradictory rather than corrective changes." *Id.*, *citing Hambleton,* 397 F.3d at 1226 (holding that "Rule 30(e) is to be used for corrective, and not contradictory, changes").

Plaintiffs challenge the substance of both Defendants' errata sheets. Because the Court has already determined that the errata sheets for the identified PG&E witnesses should be stricken for failure to comply with Rule 30(e), as described above, the Court will not discuss in depth the substance of PG&E's corrections. The Court observes, however, that the vast majority of PG&E's corrections run afoul of the legal standard set forth above because they are: (1) large in number; (2) fundamentally change the testimony at issue; and, (3) speak to important issues in this case.

The Court is also unpersuaded by PG&E's argument that it had an obligation to alter witness testimony because two of its witnesses, Robert Joga and Jesica Ishibashi, were Rule 30(b)(6) witnesses. The cases cited by PG&E in support of this proposition do not say that a party must supplement Rule 30(b)(6) testimony by written testimony—they speak only about the duty

to supplement a witness's testimony with documents or other evidence if a witness does not know something about an issue for which they were designated.

Plaintiffs also contend that the IBEW errata sheets should be stricken because the proposed changes are substantive changes that alter witness testimony on key issues. In particular, Plaintiffs point to changes that alter witness testimony about the scope of the alleged class, the scope of the resume review process used by IBEW and PG&E, and the process involved in interpreting "directly related clerical job experience." The Court agrees that the corrections that IBEW submit are inappropriate and should be stricken.

First, the number of corrections requested is extensive, suggesting an improper motive. As noted above, Plaintiffs have identified at least 174 corrections between the two Defendants, a substantial portion of which were made by IBEW. IBEW witness Arlene Edwards has over 100 corrections to her testimony alone.

Second, the proposed changes substantially change the prior testimony. For instance, IBEW witness Arlene Edwards testified in deposition that IBEW originally identified PG&E employees subject to the "directly related clerical job experience" language by looking to all employees hired after January 1, 2011:

> Q. That – it says there the union would identify the affected employees which they feel could be affected by the company interpretation of the language. You see what I am referring to?
> A. Uh-huh.
> Q. How was the union to identify those employees?
> Mr. Pacheco: Objection. Lacks foundation. Calls for speculation. Argumentative. Vague and ambiguous, and overbroad, too. If you can answer that question, go ahead.
> The witness: We basically said all employees hired after 1/1/2011.

(Deposition Transcript of Arlene Edwards 188:13-189:1, ECF No. 156-4 at pg. 536.) IBEW then "corrected" Edwards's testimony to narrow the employees that were identified:

> The witness: We basically said all **SRI** employees hired after 1/1/2011 **into call centers**.

*Id.* This change alters the substance of the testimony because it substantially narrows the type of employees that IBEW considered to be affected by language at issue.[4]

IBEW witness Jennifer Marston gave similar testimony about the scope of the grievance:

> Q. And that's the point, is that – and according to – Mr. Perez just made an objection about vagueness about the service representative position, I want to make sure we're clear. The issue that I was talking about and you were answering is you understood the subject of the grievance was that PG&E was interpreting Exhibit A to require PG&E experience within the last year and 18 months of it to qualify for the higher rate of pay, that was PG&E's position as part of the grievance?
>
> Mr. Monrad: Asked and answered.
>
> Mr. Perez: Objection. Lacks foundation.
>
> The witness: I understood, and again, this was based upon the grievance records that I wasn't part of building, but I understood the issue from Grievance 21052 was the – how to interpret directly related clerical job experience for Service Rep 1s.

(Deposition Transcript of Jennifer Marston 135:19-136:10, ECF No. 156-4 at pg. 136-37.) That testimony was then amended to narrow the types of employees considered in the grievance:

> The witness: I understood, and again, this was based upon the grievance records that I wasn't part of building, but I understood the issue from Grievance 21052 was the – how to interpret directly related clerical job experience for Service Rep 1s **in contact centers**.

*Id*. Similar to the change in Edwards's testimony, this change attempts to limit the number and type of employees that were considered with respect to the disputed language.

Third, the topics of the proposed changes are targeted at key issues in this case. In both of the examples cited above, for example, IBEW's edits were aimed at limiting the kinds of

---

[4] IBEW made other changes to Arlene Edwards's deposition testimony along similar lines:

> Q. And did the classification matter whether an SR1 worked in a local office or contact center?
> Mr. Perez: Objection. Vague. Lacks foundation.
> Mr. Pacheco: Objection. Vague as to "matters."
> The witness: It didn't matter at the point – I thought this covered everyone. I don't know.

(Deposition Transcript of Arlene Edwards 148:9-14, ECF No. 156-4 at pg. 496.) IBEW later submitted an errata sheet changing Edwards's answer to provide a more forceful statement in support of its position that local office employees were not included:

> The witness: It didn't matter at the point – I thought this covered everyone **who was being hired in the call centers because that was the only place SRIs were being hired.** I don't know. **I'm having a hard time recalling.**

This change is plainly a change to the substance of Edwards's testimony, rather than a merely cosmetic or typographical one.

employees that were included in the dispute at issue. The scope of the purported class in this litigation is indisputably a key issue. Indeed, the question of whether the litigation should involve SR I employees who are employed in contact centers as opposed to all SR I employees (in contact centers and in local offices) was the topic of its own law and motion dispute and an ensuing order (ECF No. 93). The other topics raised by the corrections, including, for example, the process Defendants used to review Plaintiffs resumes, are also important in this litigation.[5]

Although the Court will not recite verbatim each and every change that Plaintiffs challenge (and, indeed, Plaintiffs themselves do not provide the full context for all the changes they challenge), it is evident that many of the changes submitted by Defendants are targeted at similar topics. (*See* Toole Decl., Exh. A, ECF No. 148-2.) These changes improperly constrict, and, in some cases, contradict the deposition testimony of the witnesses. Consequently, they run afoul of the rule enunciated in *Hambleton* that changes in errata should not be permitted if they are "offered solely to create a material factual dispute in a tactical attempt to evade an unfavorable summary judgment." *Hambleton,* 397 F.3d at 1225. The nature and topics of the changes suggest that Defendants' goal is precisely that--to place the Defendants in a better position when moving for summary judgment or resisting class certification.

If there are legitimate reasons for correcting or clarifying deposition witness testimony, the parties may introduce other testimony or ask witnesses to explain their testimony.[6] But the parties should not feel free to revise whatever testimony they deem inconvenient or unpalatable. The Court will thus grant Plaintiffs' Motion and strike the corrections to witness testimony listed in Exhibit A to the Toole Declaration (ECF No. 148-2).

In sum, Defendants' errata sheets display an attempt to materially alter the witnesses' testimony on critical facts in order to change the record for summary judgment and class

---

[5] The Court notes that the factors of the timing of the corrections and the witness' qualifications are neutral. Unlike in *Hambleton*, Defendants appear to have submitted their errata sheets well in advance of any motion for summary judgment or class certification. On the other hand, they were prepared very likely with those motions in mind.

[6] For this reason, the Court finds Defendants' argument that the corrections should be allowed in the record and judged within the context of the record as a whole unpersuasive. Defendants may solicit clarifying testimony from witnesses on the witness stand (or even in deposition) to clarify damaging testimony. They may not wholly manufacture new testimony on an errata sheet without providing any possibility of response or cross-examination.

certification. The number and substance make clear that these are not good faith clarifications—they are material changes. To allow such changes would eliminate the purpose of deposition testimony, which is to elicit a witness's testimony under oath, in a recorded setting, subject to questioning without coaching from any other person. These errata sheets are not deposition testimony and should not be considered when evaluating such testimony as this case progresses. If the witnesses truly wish to clarify the record, they may always do so by submitting declarations or testimony under oath. But their deposition testimony remains what was said at their depositions.

**III.     CONCLUSION AND ORDER**

Plaintiffs' Motion to Strike Deposition Transcript Changes and Errata Sheets (ECF No. 148) is GRANTED. The deposition corrections listed in Exhibit A to the Toole Declaration (ECF No. 148-2) are STRICKEN.

IT IS SO ORDERED.

Dated:  **June 1, 2017**                                    /s/ Eric P. Groj
                                                                        UNITED STATES MAGISTRATE JUDGE