1

2
**WANGER JONES HELSLEY PC**
265 East River Park Circle, Suite 310
3
Fresno, California  93720
Telephone:   (559) 233-4800
Facsimile:    (559) 233-9330

4

5
Patrick D. Toole #190118
Erin T. Huntington #306037
6
Lawrence J.H. Liu #312115

7
**FITZPATRICK, SPINI & SWANSTON**
555 S. Main Street
8
Salinas, California 93901
Telephone:  (831) 755-1311
9
Facsimile:  (831) 755-1319

10
Charles Swanston #181882

11
Attorneys for:        Plaintiffs and Proposed Class Representatives BECKY GREER, TIMOTHY
C. BUDNIK, ROSARIO SAENZ, HALEY MARKWITH,
12
IAN CARTY, and MARIA GARCIA PESINA

13

14
### UNITED STATES DISTRICT COURT

15
### EASTERN DISTRICT OF CALIFORNIA

16
| | |
|---|---|
| BECKY GREER; TIMOTHY C. BUDNIK; ROSARIO SAENZ; HALEY MARKWITH IAN CARTY; and MARIA GARCIA PESINA, individually and as "Class Representatives," | Case No.  1:15-CV-01066-EPG |

17

18
BECKY GREER; TIMOTHY C. BUDNIK; ROSARIO SAENZ; HALEY MARKWITH IAN CARTY; and MARIA GARCIA PESINA, individually and as "Class Representatives,"

Plaintiffs,
19

v.
20

PACIFIC GAS AND ELECTRIC
21
COMPANY; IBEW LOCAL 1245, and
DOES 1 through 10, inclusive,
22

Defendants.
23

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ORDER (1) CONDITIONALLY CERTIFYING THE SETTLEMENT CLASS; (2) PRELIMINARILY APPROVING THE CLASS ACTION SETTLEMENT; (3) APPOINTING PLAINTIFFS AS CLASS REPRESENTATIVES AND THEIR COUNSEL AS CLASS COUNSEL; (4) APPROVING AND DIRECTING THE DISTRIBUTION OF THE CLASS NOTICE PACKET; AND (5) SETTING A HEARING FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT**

24

25

26
Date:        March 23, 2018
Time:        10:00 a.m.
27
Judge:       Hon. Erica P. Grosjean
Courtroom:   10, 6th floor

28

---

## TABLE OF CONTENTS

I.       INTRODUCTION ......................................................................................................1

II.      FACTUAL BACKGROUND ......................................................................................1

III.     PROCEDURAL BACKGROUND..............................................................................2

    A.      Defendant PG&E's Motion to Dismiss ...........................................................3

    B.      Defendant PG&E's Motion for Joinder ...........................................................3

    C.      Plaintiffs' Discovery Motions ...........................................................................3

    D.      Defendants' Motions for Summary Judgment ..................................................4

    E.      Plaintiffs' Motion for Class Certification .........................................................5

    F.      IBEW's Motion to Stay ....................................................................................5

    G.      Court Directed Settlement Conferences............................................................6

IV.      THE PROPOSED SETTLEMENT TERMS ..............................................................6

    1.      Settlement Fund.................................................................................................6

    2.      Class Definition and Class Period.....................................................................7

    3.      Scope of Release and Final Judgment ..............................................................7

    4.      Method of Allocation........................................................................................7

        a.      Payment to the Labor Code Subclass ...................................................7

        b.      Establishment of the Qualifying Group and Non-Qualifying Group
            Subclasses..............................................................................................8

        c.      Settlement Payments to the Qualifying Group Subclass and the Non
            Qualifying Group Subclass....................................................................8

        d.      Identification of Settlement Class Members to Either the Qualifying
            Group Subclass or the Non-Qualifying Group Subclass .........................9

    5.      Claims Procedure ............................................................................................10

    6.      Claims Administration .................................................................................... 10

    7.      Class Notices .................................................................................................. 10

    a.      The First Notice .............................................................................................. 10

    b.      The Second and Final Notice...........................................................................11

    8.      Tax Consequences of Settlement Payments ................................................... 12

    9.      Class Counsel's Attorneys' Fees and Costs....................................................12

    10.     Class Representative Service Payments...........................................................12

V. LEGAL ARGUMENT .....................................................................................................12

    A.      The Court Should Preliminarily Approve This Class Action Settlement Under
        Rule 23(e) of the Federal Rules of Civil Procedure .......................................11

    B.      The Settlement Class Satisfies the Requirements of Federal Rule of Civil
        Procedure, Rule 23 for Conditional Certification ...........................................12

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1.   FRCP 23(a) Requirements for Class Certification Have Been Met ......12
   a.   The Class is Sufficiently Numerous..................................12
   b.   The Commonality Requirement is Satisfied.............................12
   c.   Plaintiffs' Claims are Typical of Those of the
        Putative Class .......................................................13
   d.   Plaintiffs and Their Counsel Will Fairly and Adequately
        Represent the Class ..................................................13
2.   FRCP 23(b)(3) Requirements for Class Certification
     Have Been Met ...........................................................13
C.   The Settlement is Fair, Reasonable and Adequate...............................14
   1.   The Settlement Amount is a Fair Compromise in Light of the
        Litigation Risks and Uncertainties ...............................15
   2.   Plaintiffs Had the Benefit of Extensive Discovery that Permitted
        Plaintiffs' Counsel to Calculate Class Damages and Make Informed
        Decisions Regarding Settlement ...................................18
   3.   The Settlement was the Product of Informed, Non-Collusive, and
        Arms-Length Negotiations Between Experienced Counsel Whom
        Jointly Support the Settlement ...................................19
   4.   The Proposed Notice and Claims Process Are Reasonable ...................20
   5.   Plaintiffs' Counsel Will Submit A Separate Application for the
        Requested Attorneys' Fees and Costs ..............................21
   6.   The Class Representative Service Award Is Reasonable......................22
D.   The Court Should Schedule a Final Approval Hearing.......................................23
VI. CONCLUSION ...............................................................................24

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1

# **TABLE OF AUTHORITIES**

2

## *Cases*

3

*Amchem Prods., Inc. v. Windsor*
    521 U.S. 591, 623 (1997) ......................................................................................14

*Birch v. Office Depot, Inc.*
    Case No. 3:2006-CV-01690-DMS-WMC, Dkt. No. 48, ¶ 13 (S.D. Cal. Sept. 28, 2007) ......22

*Blum v. Stenson*
    465 U.S. 886, 900 n.16 (1984) .........................................................................22

*Carter v. Anderson Merchandisers, LP*
    No. EDCV 07-0025-VAP, 2010 WL 1946784, at *7 (C.D. Cal. 2010)..................................19

*Cook v. Niedert*
    142 F.3d 1004, 1016 (7th Cir. 1998) ...............................................................23

*Eisen v. Carlisle & Jacquelin*
    417 U.S. 156, 174-75 (1974)............................................................................20

*Farrar v. Hobby*
    506 U.S. 103, 111 (1992) ..................................................................................21

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011, 1027 (9th Cir. 1998)..............................................11-13, 15-16, 19

*Ingram v. The Coca-Cola Co.*
    200 F.R.D. 685, 694 (N.D. Ga. 2001 ...............................................................22

*La Asociacion de Trabajadores de Lake Forest v. City of LakeForest*
    624 F.3d 1083, 1089 (9th Cir. 2010)................................................................21

*Lewis v. Starbucks Corp.,*
    No. 2:07-cv-00490-MCE-DAD, 2008 WL 41966902008 WL 4196690.......................18, 20

*McNamara v. Bre-X Minerals Ltd.*
    214 F.R.D. 424, 426 (E.D. Tex. 2002 ...............................................................23

*Mullane v. Cent. Hanover Bank & Trust Co.*
    339 U.S. 306, 314 (1950) ..................................................................................20

*Officers for Justice v. Civil Serv. Comm'n,*
    688 F.2d 615, 625 (9th Cir. 1982).................................................................14, 16

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Phillips Petroleum Co. v. Shutts*
   472 U.S. 797, 811-12 (1985)................................................................................20

*Rippee v. Boston Mkt. Corp.*
   Case No. 3:05-CV-01359-BTM-JMA, Dkt. No. 70, at 7-8 (S.D. Cal. Oct. 10, 2006) ...........22

*Roberts v. Texaco, Inc.*
   979 F. Supp. 185 (S.D.N.Y. 1997)................................................................22, 23

*Romero v. Producers Dairy Foods, Inc.*
   235 F.R.D. 474, 485 (E.D. Cal. 2006)................................................................12

*Satchell v. Fed. Express Corp.*
   No. C 03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. 2007)...............................19

*Silber v. Mabon*
   18 F.3d 1449, 1454 (9th Cir. 1994)................................................................20

*Six (6) Mex. Workers v. Ariz. Citrus Growers*
   904 F.2d 1301, 1311 (9th Cir. 1990)................................................................22

*Staton v. Boeing Co.*
   327 F.3d 938, 977 (9th Cir. 2003)................................................................22

*Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*
   489 U.S. 782, 791-92 (1989)................................................................21

*Van Vranken v. Atl. Richfield Co.*
   901 F. Supp. 294, 300 (N.D. Cal. 1995)................................................................22

*Wal-Mart Stores, Inc. v. Dukes*
   *131 S. Ct. 2541, 2551 (2011)* (1979) 89 Cal.App.3d 434 ................................12, 13

*Wang v. Chinese Daily News, Inc.*
   709 F.3d 829, 834 (9th Cir. 2013)................................................................12

*Williams v. MGM-Pathe Commc'ns Co.*
   129 F.3d 1026, 1027 (9th Cir. 1997)................................................................22

***Federal Codes***
29 U.S.C. § 185(a)................................................................................3
29 U.S.C. § 301 ................................................................................3

**State Codes**
Code Civ. Proc. § 1021.5(a)................................................................................21
Lab. Code §§ 218.5 ................................................................................21
Labor Code 226(e)(1)................................................................................21

1

### *Federal Regulations*

F.R.C.P. 23 ...................................................................................................................11
F.R.C.P. 23(a) .............................................................................................................12
F.R.C.P. 23(a)(1)-(4) ............................................................................................12, 13
F.R.C.P. 23 (b)(3) .................................................................................................12, 13
F.R.C.P. 23 (b)(3)(A)-(D) .........................................................................................14
F.R.C.P 23(e) ..............................................................................................................11
F.R.C.P. 23(e)(2) ........................................................................................................14

2

3

4

5

6

7

### *Secondary Sources*

Manual for Complex Litigation (4th ed. 2004), § 21.61 ...............................................11
4 Newberg on Class Actions (4th ed. 2012) § 11:25........................................ 15, 22-23

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

With this motion, Plaintiffs Becky Greer, Timothy C. Budnik, Rosario Saenz, Haley Markwith, Ian Carty, and Maria Garcia Pesina ("Plaintiffs"), seek preliminary approval of a $6,000,000.00 non-reversionary class action lawsuit settlement against Defendants Pacific Gas and Electric Company ("PG&E") and IBEW Local 1245 ("IBEW") (collectively referred to herein as "Defendants"), alleging that PG&E failed to pay them wages in accordance with the Collective Bargaining Agreement ("CBA"). Plaintiffs bring this class action on behalf of all individuals, numbering approximately 925, employed by PG&E in California Call Centers as Service Representative I's ("SR I") at any time between January 1, 2011 through June 30, 2015. As discussed below, the proposed settlement represents a favorable result for the Settlement Class, and is fair, reasonable, and adequate in all respects.

Plaintiffs' Third Amended Complaint alleges the following class action claims: (1) Breach of Contract against PG&E; (2) Violation of California Labor Code section 216 by PG&E; (3) Violation of California Labor Code sections 226(a), 1174 and 1175 by PG&E; (4) Promissory Fraud by PG&E; (5) Promissory Estoppel by PG&E; (6) Violation of California Business and Professions Code section 17200 *et seq.* by PG&E; and (7) Breach of the Duty of Fair Representation by IBEW.

Following numerous and lengthy settlement conferences with Magistrate Judge McAuliffe, the parties agreed to settle this action. The Joint Stipulation of Settlement and Release ("Settlement Agreement") is attached as Exhibit A to the Declaration of Charles Swanston ("Swanston Decl."), submitted herewith. The proposed Settlement Agreement satisfies all of the criteria for preliminary approval of a settlement and certification of a class under Federal Rule of Civil Procedure 23. Neither PG&E nor IBEW oppose this motion. Accordingly, Plaintiffs respectfully request that the Court grant preliminary approval to the proposed settlement, conditionally certify the proposed Settlement Class, appoint Plaintiffs as Class Representatives, and appoint Plaintiffs' Counsel as Class Counsel, approve the proposed notice plan, and schedule a final approval hearing.

## II.    FACTUAL BACKGROUND

This lawsuit concerns the proper wage classification for those hired by PG&E in the SR I position between January 1, 2011 and June 30, 2015. Plaintiffs allege that PG&E enacted a class-wide policy that disregarded the terms of the CBA resulting in improper wage classification for 974 SR Is "hired" into the SR I classification during the Class Period and violating the CBA in the process. ECF No. 105, ¶¶ 2-4, 6-8,

32, 57, 60, 71, 73, 86, 83, 117-119, 121, 124, and 132-134. The claims in this case arise from the policy enacted by PG&E, misrepresentations made by PG&E about the policy, and acts performed by PG&E and IBEW in the course of revising and enforcing a subsequent compromise policy.

In 2011 PG&E created the SR I classification to assist customers with starting, stopping or transferring service and processing payments. The SR I position is an 'entry-level' classification with significantly lower wage rates than the existing Customer Service Representative classification.  Under the CBA, SR Is were to receive regular wage increases every 18 months.  However, the CBA also required that the wage rate for new employees with "18 or more" months of prior "directly related clerical job experience" at the time they were hired into the SR I position would be placed at the 18-month wage rate instead of the starting wage rate.

Contrary to the requirements of the CBA, PG&E instituted a policy for all new hires whereby they would *only* qualify for higher pay if they had 18 or more months of <u>PG&E</u> experience, and that experience accrued within 12 months of the date of hire (the "Policy"). IBEW challenged this Policy as a violation of the CBA by filing Grievance 21052. This grievance concluded in the issuance of Pre-Review Committee Letter 20152 ("PRC 21052"), which purported to clarify the standard. PRC 20152 provided that only "customer service work in a call center environment where the nature of the work and complexity of the billing, systems, and rules is comparable to that at a PG&E Call Center" would qualify and that "such work experience would need to include identifying and resolving customer inquiries on all phases of customer service (i.e. service billing and credit)."

After PRC 20152 was issued, Defendants undertook to review the prior experience of some SR Is to determine whether they were entitled to higher pay. Specifically, Defendants agreed to review resumes that SR Is submitted as part of their application. During the review, Defendants refused to allow <u>any</u> input from individual SR Is for fear that they would misrepresent their past experience.  After reviewing resumes, Defendants agreed that only 137 SR Is possessed the prior experience required for the higher wage rate and retroactively adjusted their wages in the form of "settlement payouts." After payouts were issued to the 137, IBEW and PG&E prevented SR Is from contesting the results of the process by refusing to file any new grievances on an individual or group basis.  Shortly thereafter, the present lawsuit was filed.

### III. PROCEDURAL BACKGROUND

Plaintiffs filed this action on July 10, 2015 in the United States District Court, Eastern District of California.  The operative complaint is the Third Amended Complaint, which was filed on November 2,

2

2016 ("TAC").  During the course of this action, both Parties have engaged in considerable motion practice, as summarized below.

### A.      Defendant PG&E's Motion to Dismiss

In September 2015, PG&E moved to dismiss the First Amended Complaint on the grounds that: (1) Plaintiffs failed to adequately allege that IBEW breached its duty of fair representation and, absent this allegation, Plaintiffs were bound by the results of the grievance process; (2) Plaintiffs' complaint was time barred because it was filed more than six months after Plaintiffs had actual knowledge that they were being underpaid; and (3) Plaintiffs' claims are preempted by 29 U.S.C. § 185(a), or § 301 of the Labor Management Relations Act.

The Court held that certain of Plaintiffs' claims were preempted and dismissed them without prejudice. ECF No. 31. Specifically, Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing, declaratory relief, and labor code violations were preempted to the extent that they rested on rights conferred by the CBA or require significant interpretation of the CBA for their resolution. However, the primary claims for breach of the CBA, fraud, and unfair business practices were held to be properly before the Court. Following the Court's ruling, Plaintiffs amended their Complaint to re-allege certain labor code claims that were independent of the CBA. ECF No. 33.

### B.      Defendant PG&E's Motion for Joinder

Plaintiffs' original complaint named PG&E as the sole defendant. In May 2016, PG&E made a Rule 19 and 20 motion to join IBEW as a party.  The Court granted the motion determining that "it *may* not be able to accord complete relief to Plaintiffs without [IBEW's] addition," (ECF No. 62, 4:25-26, emphasis in original) and to avoid PG&E being subjected to multiple or inconsistent obligations under the CBA. Plaintiffs then filed the TAC adding a cause of action against IBEW on November 2, 2016.  ECF No. 105.

### C.      Plaintiffs' Discovery Motions

Plaintiffs have also exchanged numerous letters and emails with Defendants attempting to resolve the multitude of discovery disputes that have arisen. The Parties have not always been able to resolve these disputes on their own, and have therefore sought the Court's intervention on several occasions.

On July 18, 2016, the Court granted Plaintiffs permission to file motions to compel regarding their Special Interrogatories and Requests for Production propounded to PG&E, and to take depositions of

PG&E witnesses. To date, PG&E has produced approximately 200,000 pages of documents and IBEW has produced approximately 7,000 pages of documents. Declaration of Patrick D. Toole ("Toole Decl.") ¶ 9.

On July 28, 2016, the Court granted Plaintiffs permission to file motions to compel regarding PG&E's ESI document production and Plaintiffs' subpoena for records from third-party vendor PeopleScout. (Toole Decl. ¶ 10.) On August 30, 2016, Plaintiffs were forced to seek Court intervention regarding PG&E's limitation of discovery responses to call center SR I's, rather than all SR I's as contemplated by the class definition in each iteration of Plaintiffs' complaint. Toole Decl. ¶ 11.

On January 25, 2017, the Court ordered: (1) that PG&E produce a complete and accurate version of the spreadsheet promised in response to Plaintiffs first set of Special Interrogatories propounded over one year earlier; (2) that PG&E produce additional documents and that PG&E witness Jesica Ishibashi be re-deposed because the "the Court [was] troubled with certain of her answers . . . that . . . appear to contradict information produced in subsequent documents;" (3) that PG&E witness Chris Diamond be re-deposed based on his having been provided "deposition summaries that had been created by defense counsel and had been marked as 'privileged';" and (4) leave for Plaintiffs to file a Motion to Compel regarding their subpoena to third-party Mercer, Inc. for production of documents associated with industry trends in customer service compensation. Toole Decl. ¶ 12.

On March 2, 2017, the Court granted Plaintiffs' request to depose PG&E witness Nichole Jordan, and ordered that PG&E produce additional ESI in advance of Ms. Jordan's deposition. (Toole Decl. ¶ 13.)

On June 1, 2017, the Court granted Plaintiffs' Motion to Strike the deposition transcript changes and errata sheets by Defendants' witnesses. Specifically, the Court found that "Defendants' proposed 'errata' to their depositions are … attempts to substantively alter deposition testimony on critical issues of fact." ECF 166, 2:10-14. Toole Decl. ¶ 14.

D.     **Defendants' Motions for Summary Judgment**

On May 12, 2017, Defendants asserted that Plaintiffs' claims were finally resolved between PG&E and IBEW during the grievance process. By Order filed September 12, 2017, the Court granted the motion in part, and denied it in part.

In granting PG&E's motion in part, the Court found that Plaintiffs were precluded from challenging Defendants' 'clarification' of the CBA's criteria for "directly related clerical job experience" that was involved in the resolution of Grievance 21052. The court held that the resolution regarding contractual

interpretation, as reflected in PRC 21052, was a "final and binding" decision under the CBA. However, the Court denied the remainder of Defendants' motions because the individual determinations as to which employees qualified for a higher rate of pay under the CBA, which followed Grievance 21052, were <u>not</u> final and binding. As a result, Plaintiffs were able to proceed on their breach of contract claim against PG&E and their breach of the duty of fair representation claim against IBEW. As to Plaintiffs' remaining causes of action, the Court requested supplemental briefing and has yet to issue a ruling.

### E.   Plaintiffs' Motion for Class Certification

Plaintiffs moved to certify a class consisting of all persons hired into the SR I classification by PG&E, between January 1, 2011, and June 30, 2015, who were subject to the Policy. Defendants challenged Plaintiffs' motion on the grounds that individual issues predominate. Specifically, Defendants argued that each SR Is' entitlement to higher initial wages would have to be individually evaluated according to the clarified definition agreed to by Defendants in PRC 21052.

During the hearing on October 6, 2017, the Court indicated that an individual evaluation of each employee's background may be necessary to determine qualifications for higher initial wages.  However, the Court also indicated that class certification on other issues, including IBEW's breach of the duty of fair representation and Defendants' affirmative defenses challenging the Court's jurisdiction (both of which were adjudicated in Plaintiffs' favor), might be appropriate. The Court also indicated the possibility of proceeding as a coordinated action, wherein all putative class members would be given the opportunity to join the suit as named plaintiffs.

The hearing date set for the motion was October 6, 2017.  During the hearing, the court did not issue a ruling on the motion, but rather directed the parties to participate in a settlement conference.

### F.   IBEW's Motion to Stay

On October 27, 2017, IBEW filed a Motion to Stay requesting that the Court stay the case and allow IBEW and PG&E to re-grieve the issue of individual SR I entitlements to higher initial wages. IBEW proposed that it send each SR I who did <u>not</u> receive a settlement payout a copy of PRC 21052, the Exhibit A, Clerical Hiring Rate Guidelines, and any resume that they submitted with their application for the SR I job, and request that they provide any/all additional information regarding their prior job experience that they would like to have considered for purposes of evaluating whether they had, prior to being hired at a

PG&E Call Center, 18 or more months of "directly related clerical job experience" to the Call Center SR I job, as that phrase is set forth in Exhibit A to the CBA, and clarified by PRC 21052.

The Court deemed IBEW's motion to stay suitable for a decision without oral argument. However, due to the ongoing settlement negotiations the Court has yet to rule on said motion.

### G.     Court Directed Settlement Conferences

On October 6, 2017, Judge Grosjean directed the parties to participate in a settlement conference. The parties briefed and participated in four settlement conferences, in person and telephonically, with Judge McAuliffe on November 9, 2017, December 7, 2017, December 21, 2017 and January 18, 2018. The final settlement conference concluded with Judge McAuliffe making a mediator's proposal with a deadline of January 25, 2018 at 10:00 a.m. which both parties accepted on the final day.

## IV.     THE PROPOSED SETTLEMENT TERMS

The proposed settlement resolves all class claims alleged against PG&E and IBEW.

The Settlement in this case will establish three groups: SR Is who received settlement payments from PG&E prior to this lawsuit, but who have wage statement claims under Labor Code §226; SR Is whose experience does not qualify them for an increased wage rate under PRC 21052; and SR Is whose experience does qualify them for an increased wage rate under PRC 21052.

The Settlement contemplates a process whereby all SR Is have an opportunity to provide information relating to their work history to demonstrate satisfaction of PRC 21052's requirements. All SR Is will be provided a notice of settlement that will include a questionnaire which will prompt them to provide information concerning their work history. Counsel for Plaintiffs will review that information, along with resumes and other information that was submitted with their initial employment application, and place each SR I into the appropriate category. Those who have not met the requirements of PRC 21052 will receive a settlement payout of $250.00. The remaining settlement funds will be distributed pro-rata among the group of SR Is who do meet the requirements of PRC 21052, at this point an anticipated 175 individuals. If that estimate turns out to be correct, then these SR Is will receive an average payment of $19,849.71.

Details concerning the settlement and the process established to place SR Is into the appropriate category is as follows:

1.     **Settlement Fund** – Defendants will deposit $6,000,000.00 ("Maximum Settlement Amount") with proposed Settlement Administrator within 10 calendar days after the Court

grants final approval to the Settlement. *See* Swanston Decl. ¶ 20 & Settlement Agreement ¶ 43. This amount is inclusive of payments to the Class, Plaintiffs' and Class Counsel's attorneys' fees and costs, Plaintiffs proposed Service Payments, and costs of settlement administration. *Id.* The Maximum Settlement Payment is the total amount that Defendants will pay in connection with this Settlement and is non-reversionary.

> 2. **Class Definition and Class Period** – This Settlement Class is defined as "All current and former SR I classification employees who were hired by Defendant PG&E into a Contact Center in California at any time between January 1, 2011 through June 30, 2015, and whose initial wage rate was the starting rate specified in the CBA." The Settlement Class thus does not include any SR Is who, upon hire, started at the 18-month rate. According to the information shared by PG&E to date, there are 925 Settlement Class Members. *See* Swanston Decl. ¶¶ 3, 29, 30.

> 3. **Scope of Release and Final Judgment** – The class release contemplated by the proposed Settlement releases all claims pleaded in the Third Amended Complaint, which alleges 1) Breach of Contract; (2) Violation of California Labor Code section 216; (3) Violation of California Labor Code sections 226(a), 1174 and 1175; (4) Promissory Fraud; (5) Promissory Estoppel; (6) Violation of California Business and Professions Code section 17200 *et seq.* against PG&E; and alleged claims against IBEW Local 1245 for Breach of the Duty of Fair Representation. *Id.* ¶ 24. Upon final approval of the Settlement and Defendants' payment of the maximum settlement payment, the Parties will seek dismissal of the entire case with prejudice and final judgment on all of the class claims.

> 4. **Method of Allocation** – The amount available for distribution to individual Settlement Class Members will equal the Maximum Settlement Amount less Court-approved attorneys' fees and costs, settlement administration costs, and any Court-approved Service Payments (hereafter "Net Settlement Fund"). *Id.* ¶ 16. The Net Settlement Fund, estimated to be approximately $3,661,200, will be distributed as follows:

>> a. **Payment to the Labor Code Subclass.** The Labor Code Subclass shall consist of 137 Settlement Class Members who received retroactive wage adjustments in either December 2014 or May 2015. Each member of the Labor Code Subclass shall be paid $250.00 (Two Hundred Fifty Dollars) from the Net Settlement Fund. The sum paid to each member of the Labor Code Subclass shall constitute penalties and/or interest to resolve Plaintiffs' Labor Code claims against PG&E, and shall not be

---

7

subjected to payroll tax and withholdings; instead, each member of the Labor Code Subclass shall be issued a 1099-MISC accounting for his or her payment for tax purposes.

b.     **Establishment of the Qualifying Group and Non-Qualifying Group Subclasses**.  The remaining Settlement Class Members shall be divided into two groups: (i) the Qualifying Group Subclass and (ii) the Non-Qualifying Group Subclass.  The **Qualifying Group Subclass** shall consist of those Settlement Class Members who are not members of the Labor Code Subclass who demonstrate, in the sole opinion of Class Counsel, that at their time of hire they had acquired at least 18 months of "prior directly related clerical job experience," as defined in PRC 21052.  All other Settlement Class Members shall be members of the Non-Qualifying Group Subclass. Defendants take no position on the propriety of these groupings, which are proposed and will be populated solely by Plaintiffs' determination.

c.     **Settlement Payments to the Qualifying Group Subclass and the Non-Qualifying Group Subclass**.  Members of the Non-Qualifying Group Subclass shall each receive a single payment of $250.00 from the Net Settlement Fund. The remaining balance of the Net Settlement Fund (the "Qualifying Group Fund") shall be divided *pro rata* among the members of the **Qualifying Group Subclass** based on each Qualifying Group Subclass Member's number of SR I Pay Periods not to exceed 54 months of pay periods. The amount to be paid to each member of the Qualifying Group Subclass will be determined by multiplying the amount of the Qualifying Group Fund by a fraction, the numerator of which is the individual number of SR I Pay Periods for that particular Qualifying Group Subclass Member, and the denominator of which is the aggregate total number of SR I Pay Periods worked by all Qualifying Group Subclass Members during the Class Period.

SR I Pay Periods shall be provided by PG&E and calculated from Defendant PG&E's records, with Qualifying Group Subclass Members being given credit for one full SR I Pay Period for all full or partial pay periods actually worked, not to exceed 54 months of pay periods.  If a dispute arises as to the number of SR I Pay Periods, the number of paystubs issued to the Qualifying Group Subclass Member, while working as an SR I during the Class Period, shall control.

The amounts, from the Net Settlement Fund, allocated to Opt-Outs, shall be known as the "Remainder."  25% of the Remainder shall be added to the Qualifying Group Fund, which is to be paid out as specified in Paragraph 21(c) above.  75% of the Remainder shall be known as the "Opt-Out Fund" and

shall be retained by the Settlement Administrator for 150 days after the date of the Court's final approval order.  If any Opt-Out elects, in writing, to change his or her mind and be included in and bound by the Settlement, during this 150-day period, the Settlement Administrator shall promptly issue the previously allocated payment to him or her (provided that sufficient funds remain in the Opt-Out Fund).  If any Opt-Out files a separate action, alleging Released Claims (defined in Paragraph 47(a) below), during the 150-day period after final approval, Defendants may elect to try and resolve the separate action by making a Federal Rule of Civil Procedure 68 offer of judgment and instructing the Settlement Administrator to send that Opt-Out the amount previously allocated to him or her (provided that sufficient funds remain in the Opt-Out Fund).  Within fifteen (15) calendar days after the end of this 150-day period after the date of the final approval order, what is left of the Opt-Out Fund shall be distributed to Qualifying Group Subclass Members, via the same pro rata SR I Pay Period calculations described above in Paragraph 21(d).  In no event shall any amount of the Maximum Settlement Payment, including but not limited to the Opt-Out Fund, revert to Defendants.

After the initial distribution of settlement checks, should there be any uncashed settlement checks forty-five (45) days from the date of the mailing of the checks by the Settlement Administrator, the Settlement Administrator shall use standard skip tracing methods to locate the Class Member and shall send the Claimant a reminder postcard of the deadline to cash the settlement check and shall also follow up with at least one reminder phone call. The cost associated with this reminder process will be included in the Settlement Administrator's fee to be approved by the Court.

d. **Identification of Settlement Class Members to Either the Qualifying Group Subclass or the Non-Qualifying Group Subclass.**  The parties estimate that approximately 788 Settlement Class Members will be placed in either the Qualifying Group or the Non-Qualifying Group. Placement in either group shall be determined by evaluating the work history of each remaining Settlement Class Member, as such history is set forth in (i) the information appearing on their resume submitted for the SR I position; (ii) the information supplied by the member during the application process; and (iii) the information supplied by each member who timely returns a completed Questionnaire.  If, in the sole opinion of Class Counsel, such information demonstrates that it is more likely than not that a Settlement Class Member had acquired at least 18 months of "prior directly related clerical job experience," as defined in PRC 21052, then that Settlement Class Member shall be included in the **Qualifying Group Subclass.**  All

remaining Settlement Class Members who are not Labor Code Subclass Members shall be included in the **Non-Qualifying Group Subclass.** The failure of a Settlement Class Member to timely submit a completed Questionnaire shall not disqualify that Settlement Class Member from inclusion on the Qualifying Group Subclass. Such a failure shall only limit the information reviewed to determine the member's inclusion in the Qualifying Group Subclass to (i) the information appearing on their resume and (ii) the information supplied by the member during the application process.

5.    Claims Procedure – Settlement Class Members who do not Opt-Out will receive their *pro rata* share of the Net Settlement Fund. None of these proceeds will revert back to Defendants. *Id.* ¶ 25. The Settlement checks will be negotiable for 180 days after mailing.

6.    Claims Administration – The Parties have selected Simpluris, Inc. to serve as the Claims Administrator. *Id.* ¶ 19. The Claims Administrator will, among other things, distribute the Settlement Notice, Questionnaires, calculate individual settlement payments, resolve any disputes over the number of Pay Periods received by Settlement Class Members during the applicable period, draw and distribute checks to the Settlement Class Members, administer the Settlement Fund, prepare and file any necessary tax reporting for the Settlement Fund, and report to the Court on the notice/opt out process and distribution of the Net Settlement Fund. *Id.* ¶¶ 19-22. The costs of claims administration are estimated at approximately $29,000.00. Swanston Decl. ¶ 19 & Exhibit A.

7.    Class Notices – There will be two Notices of Settlement that will be mailed to the putative class. The First Notice of Proposed Class Action Settlement ("First Notice") and Second and Final Notice of Proposed Action Settlement ("Second and Final Notice").

a.    **The First Notice -** Within 10 (ten) days after receiving the Settlement Class Member information from Defendant PG&E, the Settlement Administrator will mail, via first-class regular U.S. Mail, to each Settlement Class Member the First Notice of Settlement, which shall include the Class Member Questionnaire ("Questionnaire"). The First Notice shall be in the form attached to the Joint Stipulation for Class Action Settlement as Exhibit A. Settlement Class Members will have until May 10, 2018, to complete their responses to the Questionnaire and return the Questionnaire to the Settlement Administrator. A pre-addressed, postage paid return envelope shall be included in the First Notice for this purpose. No Questionnaire postmarked later than May 10, 2018, will be considered for the purposes of placing a settlement class member in the appropriate Subclass.

**b.**      **The Second and Final Notice** – The Second and Final Notice will notify each Settlement Class Member as to which Settling Subclass he or she belongs to, along with an approximate settlement figure he or she would receive from the settlement.  The Second and Final Notice will also detail include instructions on how the Settlement Class Member may request to be excluded from the settlement.

8.      <u>Tax Consequences of Settlement Payments</u> – Each Settlement Class Member's individual settlement payment will be treated as wages and interest.

9.      <u>Class Counsel's Attorneys' Fees and Costs</u> – The Settlement Agreement provides that Defendants will not oppose Plaintiffs' Counsel's application for attorneys' fees and costs so long as it does not exceed 33.33% of the Maximum Settlement Fund or their requested costs do not exceed $275,000. *Id.* ¶ 17. Plaintiff's Counsel's fee application will be the subject of a separate motion filed prior to the opt-out/objection deadline.

10.      <u>Class Representative Service Payments</u> – Plaintiffs will apply to the Court for Service Payments to Plaintiffs in an amount not to exceed Thirty Five Thousand Dollars ($35,000.00), collectively, in addition to whatever payment, if any, each may be otherwise entitled to from the Net Settlement Fund as a Settlement Class Member.

## V. LEGAL ARGUMENT

### A.      <u>The Court Should Preliminarily Approve This Class Action Settlement Under Rule 23(e) of the Federal Rules of Civil Procedure.</u>

A class action may not be dismissed, compromised or settled without approval of the Court. Proper review and approval of a class action settlement requires three steps: (1) preliminary approval of the proposed settlement after submission of a written motion; (2) dissemination of mailed and/or published notice of the settlement to all class members; and (3) a formal fairness hearing, or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented. Manual for Complex Litigation (4th ed. 2004), § 21.61. The decision to approve or reject a proposed settlement is committed to the sound discretion of the court. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

Federal Rule of Civil Procedure 23 requires that all class action settlements satisfy two primary prerequisites before a court may grant certification for purposes of preliminary approval: (1) that the

settlement class meets the requirements for class certification if it has not yet been certified (Fed. R. Civ. P. 23(a), (b); *Hanlon*, 150 F.3d at 1020); and (2) that the settlement is fair, reasonable, and adequate (Fed. R. Civ. P. 23(e)(2)).

**B.     The Settlement Class Satisfies the Requirements of Federal Rule of Civil Procedure, Rule 23 for Conditional Certification.**

Rule 23(a) sets out four prerequisites for class certification: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Fed. R. Civ. P. 23(a)(1)-(4). Furthermore, Rule 23(b)(3) provides that a class action seeking monetary relief may only be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). All of these requirements are met here.

**1.     FRCP 23(a) Requirements for Class Certification Have Been Met.**

**a.     The Class is Sufficiently Numerous.**

The numerosity prerequisite demands that the class be large enough that joinder of all members would be impracticable. Fed. R. Civ. P. 23(a)(1). While there is no exact numerical cut-off, courts have found numerosity satisfied with classes of at least forty (40) members. *See, e.g., Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 485 (E.D. Cal. 2006). Here, the proposed Settlement Class includes approximately 925 members, and therefore satisfies the numerosity requirement. Swanston Decl. ¶ 29.

**b.     The Commonality Requirement is Satisfied.**

The commonality prerequisite for class certification concerns the existence of questions of law and/or fact *common* to the class and is "construed permissively." *Hanlon*, 150 F.3d at 1019. To satisfy the commonality requirement of Rule 23(a), the plaintiff must assert at least one common contention that is capable of classwide resolution. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). In the wage and hour context, a plaintiff may demonstrate commonality by presenting significant proof that the defendant "operated under a general policy of violating California labor laws." *Wang v. Chinese Daily News, Inc.*, 709 F.3d 829, 834 (9th Cir. 2013) (quoting *Wal-Mart*, 131 S. Ct. at 2553). In the present matter, all of Plaintiffs' claims are based on common policies and/or practices of general application – specifically, wage classification for PG&E employees in the position of SR I from January 1, 2011 through June 30, 2015. Plaintiffs allege that the Policy disregarded the terms of the CBA resulting in improper wage

classification for 925 SR Is.  Swanston Decl. ¶ 30. Accordingly, the validity of Plaintiffs' policy-based claims can be resolved "in one stroke." *Wal-Mart*, 131 S. Ct. at 2551.

       **c.**      **Plaintiffs' Claims are Typical of Those of the Putative Class.**

The typicality prerequisite of Rule 23(a) is met if the named Plaintiffs' claims "are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Here typicality is satisfied because the Plaintiffs' claims are the same as the claims brought by Settlement Class Members – they were all hired into a PG&E call center between January 1, 2011 and June 30, 2015 as SR Isand had at least 18 months of "directly related clerical job experience". *See* Swanston Decl. ¶ 31. Plaintiffs' claims, therefore, are typical of the class.

       **d.**      **Plaintiffs and Their Counsel Will Fairly and Adequately Represent the Class.**

The adequacy prerequisite permits class certification only if the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This means that proposed class representatives and their counsel cannot have conflicts of interest with the class and must vigorously prosecute the action on behalf of the class. *Hanlon*, 150 F.3d at 1020. Neither Plaintiffs nor their Counsel have a conflict with any Settlement Class Member. In fact, the interests of the named Plaintiffs and putative class members are identically aligned, because they have been injured by the Policy. Swanston Decl. ¶ 32. Plaintiffs are committed to vigorously prosecute this case on behalf of the class and have already demonstrated their ability to advocate for the interests of the class by initiating this lawsuit, undertaking discovery on behalf of the putative class, and diligently monitoring the progress of the case. Greer Decl. Decl. ¶¶ 5-8; Markwith Decl. ¶¶ 5-8; Budnik Decl. ¶¶ 5-8; Carty Decl. ¶¶ 5-8; Pesina Decl. ¶¶ 5-8; and Saenz Decl. ¶¶ 5-8. Moreover, Wanger Jones Helsley, P.C., and Fitzpatrick, Spini & Swanston have significant experience in the area of complex litigation. Swanston Decl. ¶ 32(b); Toole Decl. ¶¶ 22-23. In particular, both firms have litigated numerous wage and hour class actions, and have been certified by numerous state and federal courts as competent and adequate class counsel. Swanston Decl. ¶ 33. Accordingly, Plaintiffs and their Counsel have and will adequately represent the Settlement Class.

      **2.**      **FRCP 23(b)(3) Requirements for Class Certification Have Been Met.**

Under Rule 23(b)(3), Plaintiffs must demonstrate that common questions "predominate over any questions affecting only individual members" and that a class action is "superior to other available methods

for fairly and efficiently adjudicating controversy." This analysis focuses on "the relationship between the common and individual issues" and "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Wang*, 709 F.3d at 835; *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

Here, the common questions raised in this action predominate over any individualized questions concerning the proposed Settlement Class. As discussed above, Plaintiffs' claims are typical of the class and are based on improper wage classification for certain SR Is.  Thus, the class has suffered a common injury, which satisfies the predominance element for certification with common facts (e.g. the putative class members had at least 18 months of "directly related clerical job experience" and were entitled to be paid at a wage rate higher than the entry level rates) and with common legal violations. Swanston Decl. ¶ 30.

Further, class action procedure is a superior method of adjudication compared to a multitude of individual suits. To determine if the class approach is superior, courts consider: (1) the interest of class members in individually controlling the prosecution of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability of concentrating the litigation in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D). Here, a class action device is preferable because the Class Members do not have a strong interest in controlling their individual claims as the individual prosecution of the claims would be identical to and duplicative of the class action litigation. The use of the class action mechanism here would also efficiently resolve numerous identical claims at the same time while avoiding the waste of judicial resources and eliminating the possibility of conflicting decisions from repetitious litigation. Although manageability is not a concern in the settlement context, *Amchem*, 521 U.S. at 593 ("Whether trial would present intractable management problems, *see* Rule 23(b)(3)(D), is not a consideration when settlement-only certification is requested, for the proposal is that there be no trial."), Plaintiffs are unaware of any issues that would render unmanageable the adjudication of Plaintiffs' class claims. Accordingly, the class action is the superior method for adjudication the claims in this action.

### C.       The Settlement is Fair, Reasonable and Adequate.

In deciding whether to approve a proposed class action settlement, the Court must find that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil*

---

*Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). In exercising their sound discretion to approve settlements, courts regularly consider whether the settlement is fair, non-collusive, and "reflects all the normal perils of litigation as well as the additional uncertainties inherent in complex class actions." *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 179-80 (5th Cir. 1979). Included in this analysis are considerations of "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) citing *Hanlon*, 150 F.3d at 1026.

Importantly, there is a presumption of fairness "if the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, No. C–06–05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. 2011) (quoting 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions*, § 11:42 4th ed. 2002). There is also "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.,* 516 F.3d 1095, 1101 (9th Cir. 2008).

Applying these factors to this case, it is clear that the proposed settlement is fair, reasonable, and adequate.

### 1.   The Settlement Amount is a Fair Compromise in Light of the Litigation Risks and Uncertainties.

The proposed Settlement results in a substantial monetary benefit to all Settlement Class Members. This monetary value of the proposed Settlement represents a fair compromise, given the litigation risks and uncertainties presented by continued litigation. Swanston Decl. ¶¶ 26-27. PG&E and IBEW asserted and would have continued to assert legal and factual grounds to defend against this action. *Id.* ¶ 26. Absent settlement, Plaintiffs' Counsel anticipate a vigorous and lengthy challenge to both class certification and the merits of Plaintiffs' claims. *Id.* While Plaintiffs' remain confident that they would be able to certify the class and prevail on the claims herein, continued litigation would be costly, time consuming, and uncertain. *Id.* Plaintiffs would still have to continue to litigate class certification, establish class-wide liability, and then prove up various issues regarding penalties. Such efforts would likely take years, and necessitate expert

witness testimony, as well as other costs, risks, and potential delays. Appellate proceedings could further delay and jeopardize recovery. By contrast, the Settlement ensures timely relief and substantial recovery of the wages and penalties Plaintiffs contend are owed to the proposed Settlement Class. *Id.*

It is well established that settlements that amount to only a fraction of the potential recovery do not preclude a court from finding that the settlement offer is fair. *See Hanlon*, 150 F.3d at 1027; *Officers of Justice*, 688 F.2d at 628. Accordingly, district courts have found that settlements for substantially less than the plaintiffs' claimed damages were fair and reasonable, especially when taking into account the uncertainties involved in litigation. *See, e.g., Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *4 (N.D. Cal. 2007) *aff'd*, 331 F. App'x 452 (9th Cir. 2009) (finding settlement of wage and hour class action for 25% to 35% of the claimed damages to be reasonable).

This proposed settlement a represents reasonable resolution of Plaintiffs' Labor Code claims. Plaintiffs originally asserted five causes of action under California Labor Code §§ 201-204, 216, 226, 1174 and 1175. Upon motion by PG&E, the Court dismissed all of Plaintiffs' Labor Code claims after finding that each was dependent upon the language of the CBA and thus preempted by Section 301 of the Labor Management Relations Act (18 U.S.C. 185(a)). Plaintiffs amended and re-alleged two of these claims in the Third Amended Complaint. However, PG&E has reasserted its challenge to these claims in its Motion for Summary Judgment (Dkt. 161). While Plaintiffs believe that these claims will survive preemption, there is a possibility that Defendants will prevail on summary judgment or at trial.  In cognizance of this possibility, the proposed settlement guarantees a reduced recovery to each of the putative class members entitled to labor code penalties.

The proposed settlement represents a fair resolution of Plaintiffs' claims for unpaid wages. While the Court has already ruled that the duty of fair representation is not a barrier (see Dkt. 196), the Court did narrow Plaintiffs' claims in the process by ruling that IBEW did not breach its duty of fair representation in agreeing to limit the meaning of prior "directly related clerical job experience" to the criteria articulated in PRC 20152. As the Court noted during the hearing on Plaintiffs' Motion for Class Certification, the determination of each putative class member's entitlement to backwages appears to necessitate an individual determination. (Dkt. 207, 28:15-17.) For those class members whose prior experience qualifies, this settlement represents a reasonable, albeit discounted, return on their claims. These individuals benefit from this settlement insofar as their eligibility will be determined by Plaintiffs' counsel. Moreover, the survey-

response procedure contemplated by this settlement will provide all class members the opportunity to provide any and all information that bears on this determination. As a result, it is anticipated that there will be only a narrow group of putative class members whose information does not conclusively place them in either the qualifying or non-qualifying group. Even for these SR Is, the proposed settlement offers them an opt-out remedy that allows them to pursue their claims individually.

Several additional factors weigh in support of this settlement as compared to further litigation, as well. Both the legal and factual issues presented in this case are uncommonly complex. Legally, this case involves novel issues of federal law concerning a labor union's breach of its duty of fair representation (see Dkt. 196), contractual interpretation, and interrelated statutory and non-statutory state law claims. Moreover, avoiding delay and uncertainty weighs heavily in favor of the proposed settlement. There is uncertainty for all parties surrounding the unresolved motions for summary judgment and class certification. While the Court has granted in part and denied in part IBEW's Motion for Summary Judgment (see *id.*), it has not ruled (nor will it rule) on Plaintiffs' request for Rule 56(f) relief or PG&E's Motion for Summary judgment. Thus, the majority of Plaintiffs' claims remain in limbo and even assuming that the Court allow Plaintiffs to proceed to trial after ruling on the pending motions, it is not clear exactly what claims will proceed and in what form.

Plaintiffs have incurred significant expenses to date in the form of attorneys' fees and costs; yet the costs of pursuing their remedies through trial will likely exceed these. Defendants contend that Plaintiffs will not be entitled to either interest or fees if Plaintiffs prevail at trial. While Plaintiffs disagree, given the novel issues in this case, counsel cannot dismiss Defendants contentions on these points. The proposed settlement addresses the risk ascertained with disputes over the entitlement of fees, which Defendants contend weighs in their favor and provides them with an incentive to vigorously oppose Plaintiffs' claims.

Here, the proposed settlement provides $6,000,000 in total monetary relief to the Settlement Class, of which approximately $3,661,200.00 will be distributed to Settlement Class Members. Swanston Decl. ¶ 21. The Settlement Class Member who is part of the "Labor Code Subclass" will receive an award of $250.00. The Settlement Class Member who is part of the "Qualifying Group Subclass" will receive an average award of $19,849.71. The Settlement Class Member who is part of the "Non-Qualifying Group Subclass" will receive an award of $250.00. This recovery represents 30% of Plaintiffs' reasonable estimate of the likely recovery at trial if they were to prevail, which could range from $ 18 million. This degree of

recovery is consistent with amounts routinely found to be fair and reasonable. *See, e.g., Glass*, 2007 WL 221862, at *4; *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving settlement that constituted 6% of the maximum potential damages). In fact, this Settlement represents an extraordinary result as compared to other court approved settlements of similar types of cases.

Accordingly, the Settlement, in light of the litigation risks, uncertainties, and delays, offers a recovery that is fair, reasonable, and adequate. Swanston Decl. ¶ 33.

## 2. Plaintiffs Had the Benefit of Extensive Discovery that Permitted Plaintiffs' Counsel to Calculate Class Damages and Make Informed Decisions Regarding Settlement.

The amount of discovery and investigation completed prior to reaching a settlement is important to determining its reasonableness because it demonstrates whether the parties and the Court have sufficient information before them to assess the merits of the claims. *See Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690, at *6 (E.D. Cal. 2008) ("approval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases"); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 617 (N.D. Cal. 1979).

Here, over multiple years, the Parties have exchanged significant formal and informal discovery. Toole Decl. ¶ 4, 7-9.  Plaintiffs served 16 sets of written discovery on Defendant PG&E, including six sets of interrogatories, five sets of requests for admissions, and five sets of requests for production of documents. Defendants responded to each of these written discovery requests, including, amending and supplementing its responses, which included the production of over 200,000 pages of responsive documents. Plaintiffs also served 16 sets of written discovery on Defendant IBEW, including six sets of interrogatories, five sets of requests for admissions, and five sets of requests for production of documents. Defendants responded to each of these written discovery requests, including, amending and supplementing its responses, which included the production of over 7,000 pages of responsive documents.  Plaintiffs took over 16 full-day depositions of corporate designees and witnesses. *Id.* ¶¶ 7, 9, 11, 13 and 14.

Defendant PG&E served two sets of written discovery on Plaintiffs, which included Special Interrogatories and Requests for Production. Plaintiffs provided initial responses to both sets of discovery and amended responses to PG&E's Special Interrogatories. Defendant IBEW also served one set of Requests for Production, one set of Requests for Admission, and two sets of Special Interrogatories on Plaintiffs. Plaintiffs provided initial responses to all four sets, and amended responses to IBEW's Special

Interrogatories. Plaintiffs also served Rule 26 Initial Disclosures, and eleven sets of supplemental disclosures and produced 793 pages documents. Defendants took the deposition of the six Plaintiffs and two Plaintiffs experts witnesses, Jonathan Swerdloff and Ed Garcia.

In sum, the discovery and information provided by Defendants prior to settlement permitted Plaintiffs to evaluate the strengths and weaknesses of Plaintiffs' claims, and negotiate a fair, reasonable, and adequate settlement.

### 3.    The Settlement was the Product of Informed, Non-Collusive, and Arms-Length Negotiations Between Experienced Counsel Whom Jointly Support the Settlement.

Courts routinely presume a settlement is fair where it is reached through arm's-length bargaining. *See Hanlon,* 150 F.3d at 1027 (affirming trial court's approval of class action settlement where parties reached agreement after several months of negotiation and the record contained no evidence of collusion); *Wren*, 2011 WL 1230826, at *14 (finding that settlement reached after two mediation sessions before an experienced and retired judge was reached in a "procedurally sound manner and that it was not the result of collusion or bad faith by the parties or counsel"); *see also Satchell v. Fed. Express Corp*., No. C 03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Carter v. Anderson Merchandisers, LP*, No. EDCV 07-0025-VAP, 2010 WL 1946784, at *7 (C.D. Cal. 2010). Furthermore, where counsel are well-qualified to represent the proposed class in a settlement based on their extensive class action experience and familiarity with the strengths and weakness of the action, courts find this factor to support a finding of fairness. *Wren*, 2011 WL 1230826, at *10; *Carter*, 2010 WL 1946784, at *8.

Here, the Settlement was a product of non-collusive, arm's-length negotiations. The parties participated in four settlement conferences, heard by Magistrate Judge McAuliffe. This Court is well aware that the Parties vigorously litigated this matter with adversarial motion practice. After extensive negotiations during the settlement conferences, Magistrate Judge McAuliffe issued a settlement proposal. The Parties also spent another few weeks negotiating the joint stipulation for settlement agreement, with back and forth on the details of the settlement terms. *Id*. In addition, the Parties are represented by skilled and experienced counsel who have extensive background litigating and settling similar wage and hour class actions. Swanston Decl. ¶ 14; and Toole Decl. ¶ 19. These factors support a finding that the Settlement is fair, reasonable, and adequate.

### 4.     The Proposed Notice and Claims Process Are Reasonable.

In order to protect the rights of absent class members, courts must ensure that the settlement class members receive the best notice practicable under the circumstances of the case. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974). Procedural due process requires that affected parties have the right to be heard at a meaningful time and in a meaningful manner. It does not guarantee any particular procedure but rather requires only notice reasonably calculated "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).

The First Notice, Questionnaire and Second and Final Notice will be sent to all Settlement Class Members and will inform them about the terms of the Settlement. The First Notice informs Settlement Class Members of the pending lawsuit, what the lawsuit is about, the terms of the settlement and how the settlement may affect his or her rights, and a description of the Settlement Class Members Subclasses. It informs Settlement Class Members of the deadline to submit the Questionnaire (attached thereto) and the importance of filling-out and returning said Questionnaire in order to be evaluated correctly and receive the appropriate settlement award. The First Notice includes a self-addressed stamped envelope for the convenient return of the Questionnaires.

The Second and Final Notice informs Settlement Class Members of the date and location of the final approval hearing. It also explains that the process for those Settlement Class Members wishing to object to the Settlement, and those wishing to opt-out. It will contain information regarding which Subclass the Settlement Class Member was classified as and a computation of each Settlement Class Member's estimated individual settlement award.

Accordingly, the notice procedures above comply with the standards of fairness, completeness, and neutrality required of a settlement notice disseminated under authority of the Court.

In addition, the procedures surrounding the dissemination of the Notices ensure that they meet constitutional standards and should be approved. Toole Decl. ¶ 20; *see, e.g.*, *Lewis*, 2008 WL 4196690, at *5 ("Notice by mail is sufficient to provide due process to known affected parties.").

Within five (5) calendar days of preliminary approval, PG&E will provide the Settlement Administrator with a list including each Settlement Class Member's name, last known address, phone

number, social security number, and number of eligible paystubs received during the class period. Settlement ¶ 28. Within ten (10) days of receipt of the class member list, the Settlement Administrator will mail the Court-approved Notices of Class Action Settlement and Questionnaires in English to all identified Settlement Class Members via first-class regular U.S. Mail. *Id.* ¶ 30. The Notices will be sent to the mailing addresses provided by PG&E from its employment records, unless modified by any updated address information obtained by the Claims Administrator after it consults the National Change of Address database or other available resource. If a Notice is returned because of an incorrect address, the Claims Administrator will conduct a skip trace search for a more current address and re-mail the Notice and accompanying papers to the Settlement Class Member. *Id.* ¶ 29.

> **5.      Plaintiffs' Counsel Will Submit A Separate Application for the Requested Attorneys' Fees and Costs.**

Pursuant to the terms of the Settlement Agreement, Plaintiff's Counsel will not seek more than 33.33% of the Maximum Settlement Amount in attorneys' fees and a maximum of $275,000.00 in costs. Settlement Agreement ¶ 19. Plaintiffs' Counsel will file a motion for reasonable attorneys' fees and costs, prior to the opt-out/objection deadline so that Settlement Class Members will have an opportunity to inspect Plaintiffs' Counsel's fee application prior to the deadline for submitting objections or requests for exclusion. At this point, Plaintiffs do not seek approval of the fees/costs provision, but only asks that the Court include the maximum potential fee request so that the class can be informed of the provision. Swanston Decl. ¶ 17.

Plaintiffs and the Settlement Class are entitled to recover their attorneys' fees and costs for their claims. *See* Cal. Lab. Code §§ 218.5, 226(e)(1); Code Civ. Proc. § 1021.5(a). A plaintiff prevails for purposes of a fee award, if she "has succeeded on any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791-92 (1989)). A plaintiff is a prevailing party where she obtains a successful settlement. *See Farrar v. Hobby*, 506 U.S. 103, 111 (1992); *La Asociacion de Trabajadores de Lake Forest v. City of LakeForest*, 624 F.3d 1083, 1089 (9th Cir. 2010) ("Litigation that results in an enforceable agreement can confer 'prevailing party' status on a plaintiff.") Here, Plaintiffs are entitled to recover their reasonable attorneys' fees and costs because they obtained a successful settlement. As there

is a defined and clearly traceable monetary benefit to the Settlement Class, the Court can base an award of attorneys' fees on the class members' benefit, using a common fund approach to compensate Counsel.

The traditional method for calculating a common fund fee is to award a percentage of the total fund. *See, e.g., Blum v. Stenson,* 465 U.S. 886, 900 n.16 (1984); *Six (6) Mex. Workers v. Ariz. Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990). Courts have customarily approved payments of attorneys' fees that amount to as much as one-third to forty percent of the common fund in comparable wage and hour class actions. *See, e.g.,* Alba Conte & Herbert B. Newberg, *Newberg on Class Actions, § 14:6 (*4th ed. 2002) (studies show that "fee awards in class actions average around one-third of the recovery"); *Williams v. MGM-Pathe Commc'ns Co.,* 129 F.3d 1026, 1027 (9th Cir. 1997) (in a securities fraud class action, 33% award); *Wren,* 2011 WL 1230826, at *29 (approving fee that 42% of common fund in wage and hour class action); *Birch v. Office Depot, Inc.,* Case No. 3:2006-CV-01690-DMS-WMC, Dkt. No. 48, ¶ 13 (S.D. Cal. Sept. 28, 2007) (awarding a 40% fee on a $16 million wage and hour class action*); Rippee v. Boston Mkt. Corp.,* Case No. 3:05-CV-01359-BTM-JMA, Dkt. No. 70, at 7-8 (S.D. Cal. Oct. 10, 2006) (awarding a 40% fee on a $3.75 million wage and hour class action).

Accordingly, the Court should preliminarily approve Plaintiffs' ability to seek their requested attorneys' fees and costs award for purposes of inclusion in the class notice materials.

### 6.      The Class Representative Service Award Is Reasonable.

Named plaintiffs in class action litigation are eligible for reasonable service awards. *See Staton v. Boeing Co.,* 327 F.3d 938, 977 (9th Cir. 2003). "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Ingram v. The Coca-Cola Co.,* 200 F.R.D. 685, 694 (N.D. Ga. 2001) (approving $300,000 payment to each class representative in employment action settling before class certification) (quoting *In Re S. Ohio Corr. Facility,* 175 F.R.D. 270, 272 (S.D. Ohio 1997)); *Roberts v. Texaco, Inc.,* 979 F. Supp. 185 (S.D.N.Y. 1997) (approving incentive payments up to $85,000 for named plaintiffs in employment action settling prior to class certification); *Van Vranken v. Atl. Richfield Co.,* 901 F. Supp. 294, 300 (N.D. Cal. 1995) (named plaintiff received $50,000 for work in class action). The factors courts use in determining the amount of service awards include (1) a comparison between the service awards and the range of monetary recovery available to the class; *see Ingram,* 200 F.R.D. at 694; *Roberts,* 9*79 F. Supp. at 204; (2) time and effort put into the litigation; *see Van Vranken,* 901 F. Supp. at

299; *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998); (3) whether the litigation will further the public policy underlying the statutory scheme, *see Roberts,* 979 F. Supp. at 201 n.25; and (4) risks of retaliation, *see id.* at 202; *Cook;* 142 F.3d at 1016.

All of the above factors support the service award requested here. The reasonable service award of no more than $35,000 between all Plaintiffs is intended to compensate them for the critical role they played in this case, and the time, effort, and risks undertaken in helping secure the result obtained on behalf of the Settlement Class. In agreeing to serve as Class Representatives, they formally agreed to accept the responsibilities of representing the interests of all Class Members. They also each sat for a day-long deposition, responded to written discovery requests, assisted in and signed initial disclosures, completed several declarations submitted in support of several motions, assisted in preparing and evaluating the case for mediation, and evaluated and approved the proposed settlement on behalf of the Settlement Class. They also assumed liability for litigation costs in the event their claims were unsuccessful, and the negative notoriety resulting from suing their current employer.

Moreover, Plaintiffs' receipt of this service award is contingent upon executing a general release, not required of the other Class Members. Plaintiffs' proposed service award will also be the subject of a separate motion filed prior to the opt-out/objection deadline.

### D.   The Court Should Schedule a Final Approval Hearing.

Once a class action settlement is preliminarily approved, the court may schedule a final fairness hearing "at which arguments and evidence may be presented in support of and in opposition to the settlement." *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002); *see* 4 Newberg on Class Actions § 11:25 (4th ed. 2012). The following schedule sets forth a proposed sequence for the relevant deadlines culminating in a final fairness hearing, assuming the Court preliminarily approves the Settlement:

| Deadline | Action | Authority |
|---|---|---|
| Five (5) calendar days after the Court issues the Preliminary Approval Order | Defendant PG&E shall provide to the Settlement Administrator in electronic form, a list of each Class Member, including each person's name, last known address, phone number, social security number, and number of SR I pay periods worked during the class period. | Settlement Agreement ¶ 28 |

| Within ten (10) calendar days of the receipt of Class information | Settlement Administrator will send via United States first class mail the First Notice of Settlement and Questionnaire to the Class Members. | Settlement Agreement ¶ 30 |
|---|---|---|
| May 15, 2018 | Settlement Administrator to provide Class Counsel and Defendants' Counsel with completed and anonymized Questionnaires | Settlement Agreement ¶ 30 |
| May 21, 2018 | Class Counsel shall complete review of Questionnaires and determine appropriate Subclass | Settlement Agreement ¶ 31 |
| May 22, 2018 | Class Counsel to prepare and circulate to Defendants' Counsel, the Court, and Settlement Administrator, a Notice of Completion of Subclass Identification | Settlement Agreement ¶ 31 |
| Within ten (10) calendar days from the date the Notice of Completion of Subclass Identification | Settlement Administrator shall calculate the payment amounts for each Settlement Class Member and provide to Class Counsel and Defendants' Counsel | Settlement Agreement ¶ 31 |
| Within fourteen (14) calendar days from the date Settlement Administrator provided payment amounts | Settlement Administrator shall prepare and send the Second and Final Notice Settlement to the Class Members | Settlement Agreement ¶ 31 |
| Within thirty (30) calendar days from the mailing of the Second and Final Notice Settlement | Opt-Out Request Deadline. Class Members must timely submit a signed and dated written request to be excluded from the Settlement to the Claims Administrator. Must be postmarked on or before deadline. | Settlement Agreement ¶ 36 |
| Within fourteen (14) calendar days from the Opt-Out Request Deadline | If five percent (5%) or more of the eligible Settlement Class Members submit a timely and valid Request for Exclusion, any party to this lawsuit may rescind the Settlement | Settlement Agreement ¶ 37 |
| Within thirty (30) calendar days from the date of mailing the Second and Final Notice Settlement | Deadline to file and serve a written objection and a notice of intention to appear at the Final Approval Hearing. | Settlement Agreement ¶ 38 |
| Prior to Final Approval Hearing | Plaintiffs will move court for an award of   Class Counsel's attorneys' fees and Costs | Settlement Agreement ¶ 41 |
| Prior to Final Approval Hearing | Plaintiffs will move court for entry of Order of Final Approval & Judgment. | Settlement Agreement ¶ 41 |

## VI. CONCLUSION

For the foregoing reasons, the Court should (1) preliminarily approve the Settlement Agreement;

(2) conditionally certify the proposed Settlement Class; (3) appoint Plaintiffs and their Counsel as Class

1    Representatives and Class Counsel respectively; (4) approve and direct the mailing of Settlement Notices

2    pursuant to the proposed notice plan; and (5) schedule a fairness hearing for final approval of the Settlement.

3    Dated:                                              Respectfully submitted,

4                                                         FITZPATRICK, SPINI & SWANSTON

5
                                                         By: */s/ Charles Swanston*_____
6                                                              Charles Swanston
                                                             Attorneys for Plaintiffs and the Putative Class
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT