1 **WANGER JONES HELSLEY PC**
265 East River Park Circle, Suite 310
2 Fresno, California 93720
Telephone: (559) 233-4800
3 Facsimile: (559) 233-9330

4
Patrick D. Toole #190118
5 Erin T. Huntington #306037
Lawrence J.H. Liu #312115
6

7 **FITZPATRICK, SPINI & SWANSTON**
555 S. Main Street
8 Salinas, California 93901
Telephone: (831) 755-1311
9 Facsimile: (831) 755-1319

10
Charles Swanston #181882
11

12 Attorneys for: Plaintiffs and Proposed Class Representatives BECKY GREER,
TIMOTHY C. BUDNIK, HALEY MARKWITH, ROSARIO SAENZ,
13 IAN CARTY and MARIA GARCIA PESINA

14 **UNITED STATES DISTRICT COURT**

15 **EASTERN DISTRICT OF CALIFORNIA**

16

17 BECKY GREER; TIMOTHY C. BUDNIK; | Case No. 1:15-CV-01066—EPG
ROSARIO SAENZ; HALEY MARKWITH
18 IAN CARTY, and MARIA GARCIA
PESINA, individually and as "Class | **DECLARATION OF CHARLES**
19 Representatives," | **SWANSTON IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR**
20 Plaintiffs, | **PRELIMINARY APPROVAL**

21 v. | Date: March 23, 2018
Time: 10:00 a.m.
22 PACIFIC GAS AND ELECTRIC | Judge: Hon. Erica P. Grosjean
COMPANY, and IBEW LOCAL 1245, and | Courtroom: 10, 6th Floor
23 DOES 1 through 10, inclusive,

24 Defendants.

25

26

27

28

I, Charles Swanston, declare:

1.     I am an attorney duly licensed to practice before all courts of the State of California and the Eastern District of California.  I am a partner in the firm of Fitzpatrick, Spini & Swanston and have been for approximately 16 years.  Unless indicated otherwise, I have personal knowledge of the following facts, and, if called as a witness, I could and would testify competently to them.

**I.     INTRODUCTION**

2.     Plaintiffs Becky Greer, Timothy C. Budnik, Rosario Saenz, Haley Markwith, Ian Carty, and Maria Garcia Pesina seek preliminary approval of a $6,000,000.00 non-reversionary class action lawsuit against Defendants Pacific Gas and Electric Company ("PG&E") and IBEW Local 1245 ("IBEW") (collectively referred to herein as "Defendants"). I make this declaration in support of Plaintiffs' Motion for Order to (1) preliminarily approve the Settlement Agreement; (2) conditionally certify the proposed Settlement Class; (3) appoint Plaintiffs and their Counsel as Class Representatives and Class Counsel respectively; (4) approve and direct the mailing of Settlement Notices pursuant to the proposed notice plan; and (5) schedule a fairness hearing for final approval of the Settlement.

3.     Plaintiffs seek to represent a settlement class of approximately 925 individuals employed by PG&E in California Call Centers as Service Representative I's ("SR I") at any time between January 1, 2011 through June 30, 2015.

4.     Our initial investigation suggested that PG&E enacted a class-wide policy that disregarded the terms of the 2011 Clerical Collective Bargaining Agreement ("CBA") resulting in improper wage classification for 974 SR Is "hired" into the SR I classification from January 1, 2011 through June 30, 2015, violating the CBA in the process.  Based upon these alleged practices, Plaintiffs asserted class claims for breach of contract, violation of California Labor Code sections 216 and 226(a), promissory fraud, promissory estoppel, and violation of Business and Professions code on behalf of Pacific Gas and Electric Company ("PG&E") and breach of duty of fair representation b IBEW Local 1245 ("IBEW").

## II. HISTORY OF THE CASE AND SETTLEMENT NEGOTIATIONS

### Procedural History

5. Plaintiffs filed this action on July 10, 2015 in the United States District Court, Eastern District of California. The complaint has been amended a total of three times. The operative complaint is the Third Amended Complaint, which was filed on November 2, 2016 ("TAC"). Following the filing of the original complaint, the Parties exchanged discovery and engaged in protracted litigation.

6. In September 2015, PG&E moved to dismiss the First Amended Complaint on the grounds that: (1) Plaintiffs failed to adequately allege that IBEW breached its duty of fair representation and, absent this allegation, Plaintiffs were bound by the results of the grievance process; (2) Plaintiffs' complaint was time barred because it was filed more than six months after Plaintiffs had actual knowledge that they were being underpaid; and (3) Plaintiffs' claims are preempted by 29 U.S.C. § 185(a), or § 301 of the Labor Management Relations Act.

7. The Court held that certain of Plaintiffs' claims were preempted and dismissed them without prejudice. Specifically, Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing, declaratory relief, and labor code violations were preempted to the extent that they rested on rights conferred by the collective bargaining agreement or require significant interpretation of the collective bargaining agreement for their resolution. However, the primary claims for breach of the collective bargaining agreement, fraud, and unfair business practices were held to be properly before the Court. Following the Court's ruling, Plaintiffs amended their Complaint to re-allege certain labor code claims that were independent of the CBA, in their Second Amended Complaint filed on January 27, 2016.

8. Plaintiffs' original, first and second amended complaints named PG&E as the sole defendant. In May 2016, PG&E made a Rule 19 and 20 motion to join IBEW as a party. The Court granted the motion determining that "it *may* not be able to accord complete relief to Plaintiffs without [IBEW's] addition," and to avoid PG&E being subjected to multiple or inconsistent obligations under the CBA. Plaintiffs then filed their Third Amended Complaint ("TAC") adding a cause of action against IBEW on November 2, 2016.

9. On May 12, 2017, Defendants filed a motion for summary judgment, challenging, Plaintiffs' entire TAC. Specifically, Defendants asserted that the Court could not proceed by arguing that the claims were finally resolved between PG&E and IBEW during the grievance process. By Order filed September 12, 2017, the Court granted the motion in part, and denied it in part. In granting PG&E's motion in part, the Court found that Plaintiffs were precluded from challenging Defendants' 'clarification' of the CBA's criteria for "directly related clerical job experience" that resulted from the resolution of Grievance 21052. The resolution regarding contractual interpretation, as reflected in Pre-Review Committee Number 21052 letter of November 24, 2013 ("PRC 21052"), was a "final and binding" decision under the CBA. However, the Court denied the remainder of Defendants' motions because the individual determinations as to which employees qualified for a higher rate of pay under the CBA, which followed Grievance 21052, were not final and binding. As a result, Plaintiffs were able to proceed on their breach of contract claim against PG&E and breach of the duty of fair representation claim against IBEW. As to Plaintiffs' remaining causes of action, the Court requested supplemental briefing and has yet to issue a ruling.

10. There were a multitude of discovery issues and motions that have arisen during the courts of this action. These are explained in further detail in the Declaration of Pat Toole, filed concurrently herewith.

11. Plaintiffs moved to certify a class consisting of all persons hired into the SR I classification by PG&E, between January 1, 2011 and June 30, 2015[1], that were subject to the Policy. Defendants challenged Plaintiffs' motion on the grounds that individual issues predominate. Specifically, Defendants argued that each SR I's entitlement to higher initial wages would have to be individually evaluated according to the clarified definition agreed to by Defendants in PRC 21052.

12. During the hearing on October 6, 2017, the Court indicated that an individual evaluation of each employee's background may be necessary to determine qualifications for

---

[1] PG&E required SR Is hired after June of 2015 to fill out a 'Resume Addendum,' which was used to evaluate eligibility for higher wage classification.

higher initial wages. However, the Court also indicated that class certification on other issues, including IBEW's breach of the duty of fair representation and Defendants' affirmative defenses challenging the Court's jurisdiction (both of which were adjudicated in Plaintiffs' favor), might be appropriate. The Court also indicated the possibility of proceeding as a coordinated action, wherein all putative class members would be given the opportunity to join the suit as named plaintiffs. The hearing date set for the motion was October 6, 2017. During the hearing, the court did not issue a ruling on the motion, but rather directed the parties to participate in a settlement conference.

13.     On October 27, 2017, IBEW filed a Motion to Stay requesting that the Court stay the case and allow IBEW and PG&E to re-grieve the issue of individual SR I entitlements to higher initial wages. In a total reversal of its prior position, IBEW asked the Court to allow Defendants to effectively "redo" the grievance process, and rectify the errors which caused IBEW to breach its duty of fair representation. To that end, IBEW proposes that it send each SR I who did <u>not</u> receive a settlement payout a copy of PRC 21052, the Exhibit A, Clerical Hiring Rate Guidelines, and any resume that they submitted with their application for the SR I job, and request that they provide any/all additional information regarding their prior job experience that they would like to have considered for purposes of evaluating whether they had, prior to being hired at a PG&E Call Center, 18 or more months of "directly related clerical job experience" to the Call Center SR I job, as that phrase is set forth in Exhibit A to the CBA, and clarified by PRC 21052. The Court deemed IBEW's motion to stay suitable for a decision without oral argument. However, due to the ongoing settlement negotiations the Court has yet to rule on said motion.

14.     On October 6, 2017, Judge Grosjean directed the parties to participate in a settlement conference. The parties briefed and participated in four settlement conferences, in person and telephonically, with Judge McAuliffe on November 9, 2017, December 7, 2017, December 21, 2017 and January 18, 2018. The final settlement conference concluded with Judge McAuliffe making a mediator's proposal with a deadline of January 25, 2018 at 10:00 a.m. for the parties to contact the court and accept or reject the proposed settlement. Both

parties accepted the proposal on the final day. The Joint Stipulation for Settlement has been negotiated between the parties and is attached hereto as Exhibit 1.

15.     Attached to the Settlement as Exhibits A and B, are the Notices of Settlement (First and Second and Final Notice) and the Questionnaire (collectively "Notice Packet"), which have been negotiated and agreed upon by the parties. The proposed class notice is the best available such that the Class Members will receive notice directly by the Class Administrator based on the last known address maintained by Defendants. The Class Notice adequately informs Class Members of the nature of the litigation, the essential terms of the Settlement, how to object to, comment on, or opt out of the Settlement. Further, the Class Notice identifies Class Counsel, specifies the amounts of the Class enhancement payment, Class Counsel attorneys' fees and costs, settlement administration costs, and explains how to obtain additional information regarding the action and the Settlement.

**III.     FAIRNESS AND ADEQUACY OF THE PROPOSED SETTLEMENT**

16.     <u>Proposed Terms of the Settlement</u>: Under the terms of the Settlement, Defendants will pay a maximum gross settlement amount of $6,000,000 (Settlement, ¶ 18), consisting of the following: (a) all settlement payments to Settlement Class Members (from the Net Settlement Funds); (b) Plaintiffs' and Class Counsel's attorneys' fees and costs (including, without limitation, all attorneys' fees and costs incurred to date and to be incurred in documenting the Settlement, securing Court and/or appellate court approval of the Settlement, attending to the administration of the Settlement, and filing a notice of satisfaction of judgment after the Settlement has become Final and Defendant has deposited the Maximum Settlement Payment with the Settlement Administrator); (c) Plaintiffs' respective Class Representative payments; and (d) the Settlement Administrator's fees and costs. This Maximum Settlement Payment is the maximum settlement amount that Defendants will pay in connection with this Settlement and is non-reversionary.

17.     <u>Payment of Class Counsel's Fees and Costs:</u> The Settlement Agreement provides that Defendants will not oppose Plaintiffs' Counsel's application for attorneys' fees and costs so

long as it does not exceed 33.33% of the Maximum Settlement Fund or their requested costs do not exceed $275,000. Plaintiff's Counsel's fee application will be the subject of a separate motion filed prior to the opt-out/objection deadline.

18. Plaintiffs will apply to the Court for Service Payments to Plaintiffs in an amount not to exceed Thirty Five Thousand Dollars ($35,000.00), collectively, in addition to whatever payment, if any, each may be otherwise entitled to from the Net Settlement Fund as a Settlement Class Member.

19. <u>Claims Administration</u> – The Parties have selected Simpluris, Inc. to serve as the Claims Administrator. The Claims Administrator will, among other things, distribute the Settlement Notice, Questionnaires, calculate individual settlement payments, resolve any disputes over the number of Pay Periods received by Settlement Class Members during the applicable period, draw and distribute checks to the Settlement Class Members, administer the Settlement Fund, prepare and file any necessary tax reporting for the Settlement Fund, and report to the Court on the notice/opt out process and distribution of the Net Settlement Fund. The costs of claims administration are estimated at approximately $29,000.00. The quote received from Simpluris is attached hereto as Exhibit 2.

20. Within ten (10) calendar days after the Court grants final approval to the Settlement, Defendants will pay to the Settlement Administrator the Maximum Settlement Payment of $6,000,000.00, so that the Settlement Administrator can make the Class Representatives payment to Plaintiffs, the payment to Class Counsel for their attorneys' fees and costs, the individual settlement payments to Claimants and the payment to the Settlement Administrator, each as approved by the Court.

21. After the distribution of these amounts, if approved by the Court, the remainder of approximately $ 3,661,200.00 ("Net Settlement Amount") will be distributed to the class members who do not timely exclude themselves from the Settlement. (Settlement, ¶ 25).

22. <u>Manner of Distribution of the Net Settlement Amount and each Class Member's Estimated Amount:</u> The Net Settlement Fund, estimated to be approximately $3,661,200.00,

will be distributed as follows:

  a.  **Payment to the <u>Labor Code Subclass</u>.**  The **Labor Code Subclass** shall consist of an estimated 137 Settlement Class Members who received retroactive wage adjustments in either December 2014 or May 2015.  Each member of the Labor Code Subclass shall be paid $250.00 (Two Hundred Fifty Dollars) from the Net Settlement Fund. The sum paid to each member of the Labor Code Subclass shall constitute penalties and/or interest to resolve Plaintiffs' Labor Code claims against PG&E and shall not be subjected to payroll tax and withholdings; instead, each member of the Labor Code Subclass shall be issued a 1099-MISC accounting for his or her payment for tax purposes.

  b.  **Establishment of the Qualifying Group and Non-Qualifying Group Subclasses**.  The Settlement Class Members who are not members of the Labor Code Subclass shall be divided into two groups: (i) the Qualifying Group Subclass and (ii) the Non-Qualifying Group Subclass.  The **Qualifying Group Subclass** shall consist of those Settlement Class Members who are not members of the Labor Code Subclass who demonstrate, in the sole opinion of Class Counsel, that at the time they were initially hired into an SR-1 classification position and placed in a California Call Center they had acquired at least 18 months of "prior directly related clerical job experience," as that term is defined in PRC 21052, excluding any experience that (1) was acquired prior to a five-year break in employment; (2) consisted of retail sales work; (3) was acquired while working as a bank teller; (4) was acquired in a part-time position (5) was acquired while working an internship; or (6) was acquired while working as a temporary employee.  All other Settlement Class Members shall be members of the Non-Qualifying Group Subclass.  Defendants take no position on the propriety of these groupings, which are proposed and will be populated solely by Plaintiffs' determination.

  c.  **Settlement Payments to the Qualifying Group Subclass and the Non-**

**Qualifying Group Subclass**. Members of the Non-Qualifying Group Subclass shall each receive a single payment of $250.00 from the Net Settlement Fund. The remaining balance of the Net Settlement Fund (the "Qualifying Group Fund") shall be divided *pro rata* among the members of the **Qualifying Group Subclass** based on each Qualifying Group Subclass Member's number of SR I Pay Periods not to exceed 54 months of pay periods. The amount to be paid to each member of the Qualifying Group Subclass will be determined by multiplying the amount of the Qualifying Group Fund by a fraction, the numerator of which is the individual number of SR I Pay Periods for that particular Qualifying Group Subclass Member, and the denominator of which is the aggregate total number of SR I Pay Periods worked by all Qualifying Group Subclass Members during the Class Period. It is estimated that the Qualifying Group Subclass is made up of approximately 175 employees. The average settlement payment will be $19,729.71.

d.      SR I Pay Periods shall be provided by PG&E and calculated from Defendant PG&E's records, with Qualifying Group Subclass Members being given credit for one full SR I Pay Period for all full or partial pay periods actually worked, not to exceed 54 months of pay periods. If a dispute arises as to the number of SR I Pay Periods, the number of paystubs issued to the Qualifying Group Subclass Member, while working as an SR I during the Class Period, shall control.

e.      The amounts, from the Net Settlement Fund, allocated to Opt-Outs, shall be known as the "Remainder." 25% of the Remainder shall be added to the Qualifying Group Fund, which is to be paid out as specified in Paragraph 21(c) above. 75% of the Remainder shall be known as the "Opt-Out Fund" and shall be retained by the Settlement Administrator for 150 days after the date of the Court's final approval order. If any Opt-Out elects, in writing, to change his or her mind and be included in and bound by the Settlement, during this 150-day period, the Settlement Administrator shall promptly issue the previously allocated payment to him or her (provided that sufficient funds remain in the Opt-Out Fund). If any

Opt-Out files a separate action, alleging Released Claims (defined in Paragraph 47(a) below), during the 150-day period after final approval, Defendants may elect to try and resolve the separate action by making a Federal Rule of Civil Procedure 68 offer of judgment and instructing the Settlement Administrator to send that Opt-Out the amount previously allocated to him or her (provided that sufficient funds remain in the Opt-Out Fund). Within fifteen (15) calendar days after the end of this 150-day period after the date of the final approval order, what is left of the Opt-Out Fund shall be distributed to Qualifying Group Subclass Members, via the same pro rata SR I Pay Period calculations described above in Paragraph 21(c). In no event shall any amount of the Maximum Settlement Payment, including but not limited to the Opt-Out Fund, revert to Defendants.

   f.     After the initial distribution of settlement checks, should here be any uncashed settlement checks forty-five (45) days from the date of the mailing of the checks by the Settlement Administrator, the Settlement Administrator shall use standard skip tracing methods to locate the Class Member and shall send the Claimant a reminder postcard of the deadline to cash the settlement check and shall also follow up with at least one reminder phone call. The cost associated with this reminder process will be included in the Settlement Administrator's fee to be approved by the Court.

   g.     **Identification of Settlement Class Members to Either the Qualifying Group Subclass or the Non-Qualifying Group Subclass.** The parties estimate that approximately 788 Settlement Class Members will be placed in either the Qualifying Group or the Non-Qualifying Group. Placement in either group shall be determined by excluding all Labor Code Subclass Members and then evaluating the work history of each remaining Settlement Class Member, as such history is set forth in (i) the information appearing on the resume submitted by the member when he or she initially applied for employment with PG&E in the SR-1 classification; (ii) the information

supplied by the member in response to interview questions, written questions and other requests for information involved in the application process for such position; and (iii) the information supplied by each member who timely returns a completed Questionnaire. If, in the sole opinion of Class Counsel, such information demonstrates that it is more likely than not that a Settlement Class Member had acquired at least 18 months of "prior directly related clerical job experience," as that term is defined in PRC 21052, at the time he or she was initially hired into an SR-1 classification position by PG&E and placed in a California Call Center, then that Settlement Class Member shall be included in the **Qualifying Group Subclass** All remaining Settlement Class Members who are not Labor Code Subclass Members shall be included in the **Non-Qualifying Group Subclass.** The failure of a Settlement Class Member to timely submit a completed Questionnaire shall not disqualify that Settlement Class Member from inclusion on the Qualifying Group Subclass; however, such a failure shall limit the information reviewed to determine the member's inclusion in the Qualifying Group Subclass to (i) the information appearing on the resume submitted by the member when he or she initially applied for employment with PG&E in the SR-1 classification and (ii) the information supplied by the member in response to interview questions, written questions and other requests for information involved in the application process for such position.

23. The settlement is fair and provides adequate compensation to the class members. The manner in which the settlement is structured to compensate class members based upon their work experience and their purported claims in relation to PRC 21052.

24. <u>Scope of Release</u>: In consideration of Plaintiffs' court-approved Class Representatives payment, Plaintiffs' settlement payment, and the other terms and conditions of the Settlement, each named Plaintiff releases any and all claims against (i) Pacific Gas and Electric and IBEW Local 1245; (ii) any of their present and former parents, subsidiaries and affiliated companies or entities; and (iii) the officers, directors, employees, partners,

shareholders, agents, successors, assigns and legal representatives of the entities included in (i)

and (ii) (collectively, "Released Parties"), known or unknown, that arise from or relate to

employment with Defendant PG&E or its conclusion. The employment-related claims that

Plaintiffs release include, but are not limited to, claims arising under any and all national, state,

or local laws (including statutes, regulations, other administrative guidance, and common law

doctrines), including but not limited to the following: (i) anti-discrimination statutes as

amended, such as Title VII of the Civil Rights Act of 1964 and Sections 1981 and 1983 of the

Civil Rights Act of 1866, which prohibit discrimination based on race, color, national origin,

religion, or sex; the Equal Pay Act, which prohibits paying men and women unequal pay for

equal work; the Americans with Disabilities Act and state and local laws, which prohibit

discrimination based on disability and failure to reasonably accommodate disability; the

California Fair Employment and Housing Act; and any other federal, state, or local laws which

prohibit retaliation, discrimination and harassment in employment on the basis of actual or

perceived race, color, religion, sex, sexual orientation, ancestry, national origin, physical or

mental disability or medical condition, marital status or age, or association with a person who

has, or is perceived to have, any of those characteristics, or failure to accommodate pregnancy,

disability, religious observance or any other legally protected characteristic, status or activity;

(ii) federal employment statutes as amended, such as the WARN Act, which requires that

advance notice be given of certain work force reductions; the Employee Retirement Income

Security Act of 1974, which, among other things, protects employee benefits; the Occupational

Safety and Health Act of 1970, which protects employee health and safety; the Fair Labor

Standards Act, which regulates minimum wages, overtime and other aspects of pay and work

hours; and the National Labor Relations Act, which protects employees from unfair labor

practices and provides rights for protected activity; and (iii) other employment statutes,

regulations and laws as amended, such as the Industrial Welfare Commission Orders; the

California Labor Code relating to wages, compensation, benefits, hours, overtime, alternative

workweek schedules, working conditions, off-the-clock time, split shift premiums, reporting

time pay, meal periods and rest breaks, record-keeping penalties, paycheck stub and itemized

wage statement penalties, minimum wage penalties, meal and rest period penalties, waiting time

penalties, penalties for alleged failure to provide proper seating, and reimbursement of expenses;

California Labor Code Section 2699 et seq. (the Private Attorneys General Act of 2004), which

provides for penalties, fees and costs for violations of various California wage-hour and other

laws; the Family and Medical Leave Act and the California Family Rights Act, which mandate

certain leaves of absence; and unfair competition in violation of Business and Professions Code

Section 17200. Plaintiff expressly waives the protection of California Civil Code section 1542.

Section 1542 provides: "A general release does not extend to claims which the creditor does not

know or suspect to exist in his or her favor at the time of executing the release, which if known

by him or her must have materially affected his or her settlement with the debtor."

25.     Class members who do not opt-out will also be releasing all claims pleaded in

the Third Amended Complaint, which alleges 1) Breach of Contract; (2) Violation of California

Labor Code section 216; (3) Violation of California Labor Code sections 226(a), 1174 and

1175; (4) Promissory Fraud; (5) Promissory Estoppel; (6) Violation of California Business and

Professions Code section 17200 et seq. against Defendant Pacific Gas and Electric Company;

and alleged claims against IBEW Local 1245 for Breach of the Duty of Fair Representation

(Settlement, ¶¶ 46-47), will receive their pro rata share of the Net Settlement Fund

26.     <u>Risk of Maintaining Class Certification through Trial and the Likelihood of

Success on the Merits</u>. This proposed settlement a represents reasonable resolution of

Plaintiffs' Labor Code claims. Plaintiffs originally asserted five causes of action under

California Labor Code §§ 201-204, 216, 226, 1174 and 1175. Upon motion by PG&E, the

Court dismissed all of Plaintiffs' Labor Code claims after finding that each was dependent

upon the language of the Collective Bargaining Agreement and thus preempted by Section 301

of the Labor Management Relations Act (18 U.S.C. 185(a)). However, the Court dismissed

these claims without prejudice after acknowledging the possibility that these claims could be

based on the fact that PG&E failed to pay Plaintiffs in accordance with the California Labor

Code, rather than the fact that PG&E failed to pay Plaintiffs in accordance with the higher advertised wage rate. Plaintiffs amended and re-alleged two of these claims in the Third Amended Complaint. However, PG&E has reasserted its challenge to these claims in its Motion for Summary Judgment (Dkt. 161). While Plaintiffs believe that these claims will survive preemption, there is a possibility that Defendants will prevail on summary judgment or at trial. In cognizance of this possibility, the proposed settlement guarantees a reduced recovery to each of the putative class members entitled to labor code penalties. Reasonableness of the settlement is supported by:

     a.     This proposed settlement a represents reasonable resolution of Plaintiffs' Labor Code claims. Plaintiffs originally asserted five causes of action under California Labor Code §§ 201-204, 216, 226, 1174 and 1175. Upon motion by PG&E, the Court dismissed all of Plaintiffs' Labor Code claims after finding that each was dependent upon the language of the Collective Bargaining Agreement and thus preempted by Section 301 of the Labor Management Relations Act (18 U.S.C. 185(a)). However, the Court dismissed these claims without prejudice after acknowledging the possibility that these claims could be based on the fact that PG&E failed to pay Plaintiffs in accordance with the California Labor Code, rather than the fact that PG&E failed to pay Plaintiffs in accordance with the higher advertised wage rate. Plaintiffs amended and re-alleged two of these claims in the Third Amended Complaint. However, PG&E has reasserted its challenge to these claims in its Motion for Summary Judgment (Dkt. 161). While Plaintiffs believe that these claims will survive preemption, there is a possibility that Defendants will prevail on summary judgment or at trial. In cognizance of this possibility, the proposed settlement guarantees a reduced recovery to each of the putative class members entitled to labor code penalties.

     b     The proposed settlement represents a fair resolution of Plaintiffs' claims for unpaid wages. While the Court has already ruled that the duty of fair representation is not a barrier to Plaintiffs' pursuit of these claims (see Dkt. 196), the Court did narrow

Plaintiffs' claims in the process by ruling that IBEW did not breach its duty of fair representation in agreeing to limit the meaning of "prior directly related clerical job experience" to the criteria articulated in PRC 20152. As the Court noted during the hearing on Plaintiffs' Motion for Class Certification, the determination of each putative class member's entitlement to backwages appears to necessitate an individual determination. (Dkt. 207, 28:15-17.) For those class members whose prior experience qualified them for higher initial wages, this settlement represents a reasonable, albeit discounted, return on their claims. These individuals benefit from this settlement insofar as their eligibility will be determined by Plaintiffs' counsel. Moreover, the survey-response procedure contemplated by this settlement will provide all class members the opportunity to provide any and all information that bears on this determination. As a result, it is anticipated that there will be only a narrow group of putative class members whose information does not conclusively place them in either the qualifying or non-qualifying group. Even for these SR Is, the proposed settlement offers them an opt-out remedy that allows them to pursue their claims individually.

c. Several additional factors weigh in support of this settlement as compared to further litigation, as well. Both the legal and factual issues presented in this case are uncommonly complex. Legally, this case involves novel issues of federal law concerning a labor union's breach of its duty of fair representation (see Dkt. 196), contractual interpretation, and interrelated statutory and non-statutory state law claims. Moreover, avoiding delay and uncertainty weighs heavily in favor of the proposed settlement. The current trial date of May 18, 2018 has been vacated and should the matter be re-set it is unlikely that the parties will obtain a trial date prior to late 2019 or early 2020. There is uncertainty for all parties surrounding the unresolved motions for summary judgment and class certification. While the Court has granted in part and denied in part IBEW's Motion for Summary Judgment (see *id.*), it has not ruled (nor will it rule) on Plaintiffs' request for Rule 56(f) relief or PG&E's Motion for Summary

judgment. Thus, the majority of Plaintiffs' claims remain in limbo and even assuming that the Court allow Plaintiffs to proceed to trial after ruling on the pending motions, it is not clear exactly what claims will proceed and in what form. Similarly, the Court appeared unconvinced by Plaintiffs' method of establishing class-wide liability on the part of Defendants in their Motion for Certification. Although Plaintiffs remain confident that their claims are suitable for resolution on a class-wide basis, the necessity of establishing the SR I's qualifications presents a risk that certification could be denied.

d.     Plaintiffs have incurred significant expenses to date in the form of attorneys' fees and costs; yet the costs of pursuing their remedies through trial will likely exceed these. Defendants contend that Plaintiffs will not be entitled to either interest or fees if Plaintiffs prevail at trial.  While Plaintiffs disagree, given the novel issues in this case, counsel cannot dismiss Defendants contentions on these points. The proposed settlement addresses the risk ascertained with disputes over the entitlement of fees, which Defendants contend weighs in their favor and provides them with an incentive to vigorously oppose Plaintiffs' claims.

**V.     CERTIFICATION OF CLASS FOR SETTLEMENT**

27.     Based on our investigation and evaluation of the information and documents we have reviewed, I believe that the requirements for certification of the settlement class in this case have been met.

28.      Ascertainable and Numerous: Based on Defendants' review of their records, it is estimated that there are approximately 925 employees (collectively "Class Members") in the settlement Class defined as follows:

All current and former Service Representative I ("SR I") classification employees who were hired by Defendant Pacific Gas and Electric Company into a Call Center (or Contact Center) SR I position in California at any time between January 1, 2011 through June 30, 2015 (the Class Period), and whose initial wage rate was the starting rate specified in the collective bargaining agreement.  The Settlement Class thus does not include any SR I's who, upon hire, started at the 18-month rate.32.     The Class is sufficiently numerous and the identities of the Class Members are readily ascertainable

by inspecting Defendants' employment and payroll records.

29. _Commonality:_ This litigation involves questions of law and fact that are common to each putative Class Member and predominate over any individual issues. These common questions of law and fact arise because all of Plaintiffs' claims are based on common policies and/or practices of general application – specifically, wage classification for PG&E employees in the position of SR I from January 1, 2011 through June 30, 2015. Plaintiffs allege that PG&E enacted a class-wide policy that disregarded the terms of the CBA resulting in improper wage classification for 925 SR Is.

30. _Typicality:_ The Plaintiffs' claims are the same as the claims brought by Settlement Class Members – they were all hired into a PG&E call center between January 1, 2011 and June 30, 2015 as Service Representative I employees, at the time of hire had at least 18 months of "directly related clerical job experience".

31. _Adequacy of Representation:_

a.) Class Representatives: Plaintiffs Becky Greer, Timothy C. Budnik, Rosario Saenz, Haley Markwith, Ian Carty, and Maria Garcia Pesina are suitable representatives in that they have fairly and adequately represented the interests of the Class Members and have put the interests of the class before their own. Plaintiffs have spent a considerable amount of time helping to investigate the facts of this case. They have actively participated in the lawsuit by attending numerous in-person meetings and telephonic conferences with me, attorneys and staff from my office; regularly providing information and documents to my office; regularly reviewing documents associated with this lawsuit; preparing several declarations; preparing for and attending their depositions; and otherwise kept apprised of the case developments. Plaintiffs recognized and accepted that any resolution of this lawsuit, by dismissal or settlement, is subject to Court approval and must be in the best interest of the Class as a whole. As a direct result of their efforts the Class Members now stand to benefit from the Settlement. Neither Plaintiffs nor their Counsel have a conflict with any Settlement

Class Member. In fact, the interests of the named Plaintiffs and putative class members are identically aligned, because they have been injured by the same company-wide policies and practices.

b.) Class Counsel: Plaintiffs' Counsel have diligently litigated this case and has adequately and zealously represented the Class Members in this action. I have been practicing in Monterey, San Benito, Santa Clara, and Santa Cruz counties for over 20 years. The primary emphasis of my practice is employment litigation. I have represented both employers and employees. Approximately 14 years ago my office commenced handling plaintiff class action wage and hour cases. Since then my office has handled hundreds of wage and hour cases to conclusion and have been class counsel and/or co-counsel in over 70 class actions. Currently, we have multiple ongoing wage and hour class actions in Monterey County Superior Court, Santa Clara Superior Court, San Benito Superior Court, Santa Cruz Superior Court and the United States District Court, Northern District of California, where we will seek class certification by way of a settlement or a class certification motion.

32. More specifically, we have served as counsel in the following class actions (not an exhaustive list): *Arce v. Vintage Senior Management, Inc.*, Monterey County Superior Court, Case No. M102563; *Areyano v. Tacaza, Inc.*, Fresno County Superior Court, Case No. 10CECG03994; *Barbosa v. Kelly Services, Inc.*, United States District Court, Northern District of California, Case No. 15-CV-06022-HRL; *Barrios v. Christopher Ranch*, LLC, Santa Clara County Superior Court, Case No. 112CV233772; *Bautista v. Carmel Valley Manor*, Monterey County Superior Court, Case No. M122739; *Bernal v. Davita, Inc.*, United States District Court, Northern District of California, Case No. 12-CV-03255-LHK; *Bueno v. Little Caesars of Santa Cruz, Inc.*, Monterey County Superior Court, Case No. M117267; *Canseco v. Full Steam Staffing, LLC*, Monterey County Superior Court, Case No. M129251; *Castillo v. Elyxir Distributing, LLC*, Santa Cruz County Superior Court, Case No. CV177119; *Castro v. Emeritus*, Monterey County Superior Court, Case No. M118861; *Ceja v. Taylor Farms Retail,*

*Inc.*, Monterey County Superior Court, Case No. M116475; *Chico v. Mi Pueblo*, Monterey County Superior Court, Case No. M114983; *Clavijo v. Manpower, Inc./California Peninsula*, Monterey County Superior Court, Case No. M126646; *Chavez v. Oceano Packing Company, LLC*, Monterey County Superior Court, Case No. 15CV000018; *Coyt v. Nelson Staffing Solutions dba Nelson Staffing*, San Benito County Superior Court, Case No. CU-14-00130; *Cruz v. Gianna's Inc.*, Monterey County Superior Court, Case No. M115703; *De La Torre v. National Security Guard*, Monterey County Superior Court, Case No. M122792; *Deras v. Merchants Building Maintenance Company*, Monterey County Superior Court, Case No. M112362; *Escalante v. Mi Pueblo San Jose, Inc.*, Santa Cruz County Superior Court, Case No. CV170586; *Esparza v. Pandori Electronics USA, Inc.*, Monterey County Superior Court, Case No. M117241; *Estrada v. Salyer American*, United States District Court, Northern District of California, Case No. 09-CV-05618 LHK; *Fernandez v. Driscoll Strawberry Associates, Inc.*, Monterey County Superior Court, Case No. M124551; *Flores v. Full Steam Staffing LLC*, Monterey County Superior Court, Case No. M129277; *Flores v. GreenGate Fresh LLLP*, Monterey County Superior Court, Case No. M114982; *Flores v. Jesse and Evan, Inc.*, Monterey County Superior Court, Case No. M128382; *Garcia v. Monterey Signature Hotels, LLC*, Monterey County Superior Court, Case No. M123573; *Guerrero v. Chualar Harvesting, Inc.*, Monterey County Superior Court, Case No. M129075; *Goodwin v. Cowles California Media Company*, Monterey County Superior Court, Case No. M117831; *Hernandez v. Archon Hospitality*, Monterey County Superior Court, Case No. M100610; *Hernandez v. Clinica de Salud del Valle de Salinas*, Monterey County Superior Court, Case No. M118707; *Isquierdo v. W.G. Hall, LLC dba @Work Personnel Services*, Inc., United States District Court, Northern District of California, Case No. 5:15-cv-00335 BLF; *Jimenez v. Ameri-Kleen*, Monterey County Superior Court, Case No. M114430; *Juarez v. Malta Enterprises dba Laurel Inn Motel*, Monterey County Superior Court, Case No. M129346; *LeFurge v. Tacaza, Inc.*, Fresno County Superior Court Case No. 10 CE CG 04433; *Lopez v. Nutricion Fundamental, Inc.*, Monterey County Superior Court, Case No. M112351; *Lopez v. Progress Financial*, Monterey County

Superior Court, Case No. M115703; *Lopez v. Satellite Healthcare, Inc.*, Santa Cruz County Superior Court, Case No. CV169725; *Lopez v. Springfield Farms*, Monterey County Superior Court, Case No. M122067; *Martinez v. Harmony Foods Corporation dba Santa Cruz Nutrinals*, Santa Cruz County Superior Court, Case No. CV177053; *Mendez v. Earthbound Farms Holding I, LLC*, San Benito County Superior Court, Case No. CU-13-00011; *Michel v. La Princesa Market #14, Inc.*, Santa Cruz County Superior Court, Case No. CV175999; *Montejano v. Fox Factory Inc.*, Santa Cruz County Superior Court, Case No. CV175560; *Montoya v. Full Steam Staffing LLC*, Monterey County Superior Court, Case No. 128639; *Mora v. Robert Mann Packaging, Inc.*, Monterey County Superior Court, Case No. M125128; *Ochoa v. The Complete Logistics Company*, Santa Clara County Superior Court, Case No. 111CV200180; *Ortiz v. Gurries Property Management, Inc.*, Monterey County Superior Court, Case No. M121091; *Pantoja v. National Custom Packing, Inc.*, Monterey County Superior Court, Case No. M125340; *Pantoja v, RAMCO Enterprises, L.P.*, Monterey County Superior Court, Case No. M126835; *Polanco v. Salinas Valley Imaging, LLC*, Monterey County Superior Court, Case No. 15CV000800; *Quezada v. Sonora Packing Company, Inc.*, Monterey County Superior Court, Case No. M123892; *Ramirez v. Manpower, Inc.*, United States District Court, Northern District of California, Case No. C-13-02880 EJD; *Ramirez v. Manpower, Inc./California Peninsula*, United States District Court, Northern District of California, Case No. C-13-03238 EJD; *Reyna v. Diageo Chateau & Estate Wines Company, Inc. dba Chalone Vineyards*, Monterey County Superior Court, Case No. M131771; *Rico v. Full Steam Staffing LLC*, Monterey County Superior Court, Case No. M129278; *Rico v. Manpower, Inc./California Peninsula*, Monterey County Superior Court, Case No. M129042; *Rico v. T.W.D.C. Industries Corp. dba Vision Recycling*, Monterey County Superior Court, Case No. M132307; *Rivera v. Laser Devices, Inc.*, Monterey County Superior Court, Case No. M116176; *Robledo v. Randstad US, L.P.*, Monterey County Superior Court, Case No. M130588; *Rodriguez v. Westmont Living, Inc.*, Santa Clara County Superior Court, Case No. 115CV279290; *Romero v. Custom House Hotel, L.P. dba Portola Hotel & Spa*, Monterey County Superior Court, Case

No. M128440; *Romero v. Noble House Monterey, LLC dba Monterey Beach Resort*, Monterey County Superior Court, Case No. M132275; *Rosales v. Santa Fe Mercados, Inc.,* Santa Cruz County Superior Court, Case No. CV166615; *Ruiz v. Monterey Mushrooms, Inc.,* Monterey County Superior Court, Case No. 15CV000023; *Salgado v. River Ranch Fresh Foods, LLC*, Monterey County Superior Court, Case No. M115475; *Sanchez v. Keurig Green Mountain, Inc.*, United States District Court, Northern District of California, Case No. 15-cv-04657-EJD; *Santos v. Blackburn Farming Co., Inc.*, San Benito County Superior Court, Case No. CU-15-00012; *Silva v. Foothill Packing, Inc.*, Monterey County Superior Court, Case No. M127426; *Talavera v. Full Steam Staffing*, LLC Santa Clara County Superior, Court Case No. 114CV267357; *Valadez v. Jal Berry Farms, LLC*, Monterey County Superior Court, Case No. M127425; *Valdez v. Max Hoseit Management Company*, Monterey County Superior Court, Case No. M127656; *Vargas v. Vasvision Berry Farms, LLC*, Monterey County Superior Court, Case No. M126647; *Vega v. Elkhorn Packing, Co., LLC* , Monterey County Superior Court, Case No. M121202; *Weinmann v. Balance Staffing*, Santa Cruz County Superior Court, Case No. CV180848; and *Weinmann v. Infinity Staffing*, San Benito County Superior Court, Case No. CU-15-00007.

33.      My firm takes cases on a contingency fee basis.  We have not received any compensation for our time or expenses invested in this case.  We have prosecuted this litigation for over two years, taking a risk that we might ultimately receive no compensation for our work.  As of the date of this declaration, we have advanced costs totaling approximately $65,000.00.

34.      <u>Superiority and Public Policy:</u> The nature of the action makes the use of class treatment superior to individual litigation.  This class action has achieved economies of time, effort and expense as compared to 925 potential separate individual lawsuits. Individualized litigation would not be practicable as the recovery of any individual damages would be relatively low and the costs of litigating single claims would exceed the benefit to any one individual.   Prosecuting separate actions would create a risk that Defendants would not be

persuaded to change their policies and procedures.  Moreover, current employees are often

intimidated and afraid to assert their rights out of fear that they will be subjected to direct or

indirect retaliation by their employers. Former employees are often fearful of brining a lawsuit

against their former employers because they believe any future employment endeavors will be

jeopardized.

I declare under penalty of perjury under the laws of the State of California and the

United States of America that the foregoing is true and correct and if called as a witness I could

and would competently testify to each of the matters stated herein, and I state that these matters

are based upon my own personal knowledge acquired through first-hand observation, except

where stated otherwise.  This declaration was executed on March 2, 2018, in Salinas,

California.

*/s/ Charles Swanston*
Charles Swanston

EXHIBIT
"1"

**Wanger Jones Helsley PC**
265 East River Park Circle, Suite 310
Fresno, California 93720
Telephone:   (559) 233-4800
Facsimile:   (559) 233-9330
Patrick D. Toole #19011
Erin T. Huntington #306037
Lawrence J.H. Liu #312115

**Fitzpatrick, Spini & Swanston**
555 S. Main Street
Salinas, California 93901
Telephone: (831) 755-1311
Facsimile: (831) 755-1319

Charles Swanston #181882

Attorneys for:   Plaintiffs and Proposed Class Representatives BECKY GREER, TIMOTHY C. BUDNIK,
HALEY MARKWITH, ROSARIO SAENZ, IAN CARTY and MARIA GARCIA PESINA

**Littler Mendelson, P.C.**
333 Bush Street, 34th Floor
San Francisco, California 94104
Telephone:   (415) 433-1940
Facsimile:   (415) 39-8490
Joshua D. Kienitz #244903
Aurelio J. Perez #282135
William A. Cosmopulos #312908

Attorneys for:   Defendant Pacific Gas and Electric Company

**Leonard Carder, LLP**
1130 Broadway, Suite 1450
Oakland, California 94612
Telephone:   (510) 272-0169
Facsimile:   (510) 272-0174
Philip C. Monrad #151073
Paul H. Schwartz #215214

**IBEW Local Union 1245**
30 Orange Tree Circle
Vacaville, CA 95687
Telephone:   (707) 452-2751
Alex Pacheco # 302852

Attorneys for:   Defendant IBEW Local 1245

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BECKY GREER; TIMOTHY C. BUDNIK; ROSARIO SAENZ; IAN CARTY, HALEY MARKWITH, MARIA GARCIA PESINA, Individually and as "Class Representatives," <br><br> Plaintiffs, <br><br> v. <br><br> PACIFIC GAS AND ELECTRIC COMPANY, IBEW LOCAL 1245, and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No.  1:15-cv-01066-EPG <br><br> **CLASS ACTION** <br><br> **JOINT STIPULATION OF CLASS SETTLEMENT** <br><br> **Honorable Erica P. Grosjean** |

Through this Joint Stipulation of Settlement and Release ("Settlement" or "Agreement"), Plaintiffs Becky Greer, Timothy C. Budnik, Haley Markwith, Rosario Saenz, Ian Carty and Maria Garcia Pesina ("Plaintiffs"), individually and on behalf of all others similarly situated, and Defendants Pacific Gas and Electric Company and IBEW Local 1245 ("Defendants"), by and through their respective counsel of record, agree to resolve the alleged class action suit pleaded in the Third Amended Complaint, entitled *Becky Greer, et al., individually, and on behalf of all others similarly situated, Plaintiffs v. Pacific Gas and Electric Company, IBEW Local 1245, and Does 1 through 50, inclusive,* now pending in the United States District Court for the Eastern District of California and designated Case No. 1:15-cv-01066-EPG. Defendant PG&E and Defendant IBEW Local 1245, and each of them, deny any and all wrongdoing, and by entering into this Agreement, Defendants do not admit any violation of law. Furthermore, Defendants deny any and all wrongdoing, and by entering into this Agreement and Settlement, Defendants do not admit any violation of law. This Agreement is entered into solely for the purpose of compromising highly disputed claims, and will not be deemed admissible in any litigation other than this Lawsuit for any purpose.

**A.** **Definitions**

1. "Class Counsel" means Patrick D. Toole of Wagner Jones Helsley, P.C., and Charles Swanston of Fitzpatrick, Spini & Swanston.

2. "Class Period" means the period beginning January 1, 2011, and ending June 30, 2015.

3. "Court" means the United States District Court for the Eastern District of California.

4. "Defendants" means Pacific Gas and Electric Company and IBEW Local 1245, individually and collectively.

5. "Defendants' Counsel" means individually and collectively the following: (a) Joshua D. Kienitz and Aurelio J. Perez of Littler Mendelson, P.C. for

Pacific Gas and Electric Company and (b) Philip C. Monrad and Paul Schwartz of Leonard Carder, LLP and Alex Pacheco, general counsel for IBEW Local 1245.

6. "Final" means that the Court has granted final approval of the Settlement without material modification and either (a) the applicable date for seeking appellate review of the Court's final approval of the Settlement has passed without a timely appeal or request for review having been made; or (b) if an appeal, review or writ is sought from the final judgment, the day after the judgment is affirmed or the appeal, review or writ is dismissed or denied, and the judgment is no longer subject to further judicial review.

7. "Lawsuit" means the alleged class action suit pleaded in the Third Amended Complaint filed in the case entitled *Becky Greer, et al., individually, and on behalf of all others similarly situated, Plaintiffs v. Pacific Gas and Electric Company, IBEW Local 1245, and Does 1 through 50, inclusive,* now pending in the United States District Court for the Eastern District of California and designated Case No. 1:15-cv-01066-EPG.

8. "Notice" means the First Notice of Proposed Class Action Settlement (attached hereto as Exhibit A) and the Second and the Final Notice of Proposed Class Action Settlement (attached hereto as Exhibit B), as approved (or modified) by the Court, that the Settlement Administrator will mail to each Settlement Class Member following preliminary approval of the Settlement by the Court.

9. An "Opt-Out" is an eligible Settlement Class Member who timely submits a Request for Exclusion.

10. "Parties" means the Class Representatives, each for him or herself and on behalf of the Settlement Class Members, and Defendants.

11. "Parties' Counsel" means Class Counsel and Defendants' Counsel, individually and collectively.

3

12.     "Plaintiffs" and "Class Representatives" mean named Plaintiffs Becky Greer, Timothy C. Budnik, Haley Markwith, Rosario Saenz, Ian Carty and Maria Garcia Pesina.

13.     "Released Parties" means (i) Pacific Gas and Electric Company, Inc., and IBEW Local 1245; (ii) any of their present and former parents, subsidiaries and affiliated companies or entities; and (iii) the officers, directors, employees, partners, shareholders, agents, successors, assigns and legal representatives of the entities included in (i) and (ii).

14.     "Release Period" means January 1, 2011 through the date of preliminary approval of this settlement.

15.     "Settlement Administrator" means Simpluris.

16.     "Settlement Class," "Settlement Class Member(s)" or "Class Member(s)" mean all current and former Service Representative I ("SR I") classification employees who were hired by Defendant Pacific Gas and Electric Company into a a Call Center (or Contact Center) SR I position in California at any time between January 1, 2011 through June 30, 2015 (the Class Period), and whose initial wage rate was the starting rate specified in the collective bargaining agreement.  The Settlement Class thus does not include any SR I's who, upon hire, started at the 18-month rate.  According to the information shared by PG&E to date, there are 925 Settlement Class Members.

17.     "SR I Pay Periods" includes all time employed as an SR I during the Class Period.  If any Settlement Class Member also worked for Pacific Gas and Electric Company in another position during the Class Period, such employment will not count toward his or her total SR I Pay Periods.

18.     "Net Settlement Fund" means the sum remaining in the Maximum Settlement Payment after deducting Class Counsel's Court-approved attorneys' fees and costs, Plaintiff's Court-approved Class Representatives payment, and the settlement administration fees and costs.

4

Firmwide:153178580.1 048517.1064

**B.  Monetary Terms**

18.  <u>Maximum Settlement Payment:</u> The "Maximum Settlement Payment" is Six Million Dollars ($6,000,000), consisting of the following: (a) all settlement payments to Settlement Class Members (from the Net Settlement Funds); (b) Plaintiffs' and Class Counsel's attorneys' fees and costs (including, without limitation, all attorneys' fees and costs incurred to date and to be incurred in documenting the Settlement, securing Court and/or appellate court approval of the Settlement, attending to the administration of the Settlement, and filing a notice of satisfaction of judgment after the Settlement has become Final and Defendant has deposited the Maximum Settlement Payment with the Settlement Administrator); (c) Plaintiffs' respective Class Representative payments; and (d) the Settlement Administrator's fees and costs.  This Maximum Settlement Payment is the maximum settlement amount that Defendants will pay in connection with this Settlement and is non-reversionary.

19.  <u>Payment of Class Counsel's Fees and Costs:</u> Class Counsel will apply to the Court for an award of attorneys' fees and costs not to exceed 33.33% of the Maximum Settlement Payment plus actual costs (the precise amount of which will be identified later by class counsel), to be paid out of the Maximum Settlement Payment. No reimbursement for costs shall be made without a final Cost Bill, which Plaintiff will submit in advance of the final approval hearing, and must be approved by the Court. Defendants will not oppose Class Counsel's request. The Settlement Administrator will issue to Class Counsel an IRS Form 1099 and any applicable equivalent state form for the attorneys' fees and costs that the Court approves.

20.  <u>Payment to Class Representatives ("Service Payments"):</u> Plaintiffs will apply to the Court for Service Payments to Plaintiffs in an amount not to exceed Thirty Five Thousand Dollars ($35,000.00), collectively, in addition to whatever payment, if any, each may be otherwise entitled to from the Net Settlement Fund as a Settlement Class Member. The Service Payments will be paid out of the Maximum Settlement Payment.  The

5

Firmwide:153178580.1 048517.1064

Settlement Administrator will issue an IRS Form 1099 and any equivalent state form to Plaintiffs in connection with the Class Representative payments.

21. <u>Payments to Settlement Class Members:</u> After deducting the sums set forth in Paragraph 18(b) – (d) from the Maximum Settlement Payment, the remainder of the Maximum Settlement Payment (the Net Settlement Fund) will be distributed by the Settlement Administrator as follows:

a. **Payment to the <u>Labor Code Subclass</u>.** The **Labor Code Subclass** shall consist of an estimated 137 Settlement Class Members who received retroactive wage adjustments in either December 2014 or May 2015. Each member of the Labor Code Subclass shall be paid $250.00 (Two Hundred Fifty Dollars) from the Net Settlement Fund. The sum paid to each member of the Labor Code Subclass shall constitute penalties and/or interest to resolve Plaintiffs' Labor Code claims against PG&E, and shall not be subjected to payroll tax and withholdings; instead, each member of the Labor Code Subclass shall be issued a 1099-MISC accounting for his or her payment for tax purposes.

b. **Establishment of the Qualifying Group and Non-Qualifying Group Subclasses.** The Settlement Class Members who are not members of the Labor Code Subclass shall be divided into two groups: (i) the Qualifying Group Subclass and (ii) the Non-Qualifying Group Subclass. The **Qualifying Group Subclass** shall consist of those Settlement Class Members who are not members of the Labor Code Subclass who demonstrate, in the sole opinion of Class Counsel, that at the time they were initially hired into an SR-1 classification position and placed in a California Call Center they had acquired at least 18 months of "prior directly related clerical job experience," as that term is defined in PRC 21052, excluding any experience that (1) was acquired prior to a five-year break in employment; (2) consisted of retail sales work; (3) was acquired while working as a bank teller; (4) was acquired in a part-time position (5) was acquired while working an internship; or (6) was acquired while working as a

JOINT STIPULATION OF CLASS SETTLEMENT

temporary employee.  All other Settlement Class Members shall be members of the Non-Qualifying Group Subclass.  Defendants take no position on the propriety of these groupings, which are proposed and will be populated solely by Plaintiffs' determination.

       c.    **Settlement Payments to the** Qualifying Group Subclass **and the Non-Qualifying Group Subclass**.  Members of the Non-Qualifying Group Subclass shall each receive a single payment of $250.00 from the Net Settlement Fund. The remaining balance of the Net Settlement Fund (the "Qualifying Group Fund") shall be divided *pro rata* among the members of the **Qualifying Group Subclass** based on each Qualifying Group Subclass Member's number of SR I Pay Periods not to exceed 54 months of pay periods. The amount to be paid to each member of the Qualifying Group Subclass will be determined by multiplying the amount of the Qualifying Group Fund by a fraction, the numerator of which is the individual number of SR I Pay Periods for that particular Qualifying Group Subclass Member, and the denominator of which is the aggregate total number of SR I Pay Periods worked by all Qualifying Group Subclass Members during the Class Period.

       d.    SR I Pay Periods shall be provided by PG&E and calculated from Defendant PG&E's records, with Qualifying Group Subclass Members being given credit for one full SR I Pay Period for all full or partial pay periods actually worked, not to exceed 54 months of pay periods.  If a dispute arises as to the number of SR I Pay Periods, the number of paystubs issued to the Qualifying Group Subclass Member, while working as an SR I during the Class Period, shall control.

       e.    The amounts, from the Net Settlement Fund, allocated to Opt-Outs, shall be known as the "Remainder."  25% of the Remainder shall be added to the Qualifying Group Fund, which is to be paid out as specified in Paragraph 21(c) above.  75% of the Remainder shall be known as the "Opt-Out Fund" and shall be retained by the Settlement Administrator for 150 days after the date of the Court's final approval order.  If any Opt-Out elects, in writing, to change his or her mind and be

included in and bound by the Settlement, during this 150-day period, the Settlement Administrator shall promptly issue the previously allocated payment to him or her (provided that sufficient funds remain in the Opt-Out Fund). If any Opt-Out files a separate action, alleging Released Claims (defined in Paragraph 47(a) below), during the 150-day period after final approval, Defendants may elect to try and resolve the separate action by making a Federal Rule of Civil Procedure 68 offer of judgment and instructing the Settlement Administrator to send that Opt-Out the amount previously allocated to him or her (provided that sufficient funds remain in the Opt-Out Fund). Within fifteen (15) calendar days after the end of this 150-day period after the date of the final approval order, what is left of the Opt-Out Fund shall be distributed to Qualifying Group Subclass Members, via the same pro rata SR I Pay Period calculations described above in Paragraph 21(c). In no event shall any amount of the Maximum Settlement Payment, including but not limited to the Opt-Out Fund, revert to Defendants.

    f.   After the initial distribution of settlement checks, should there be any uncashed settlement checks forty-five (45) days from the date of the mailing of the checks by the Settlement Administrator, the Settlement Administrator shall use standard skip tracing methods to locate the Class Member and shall send the Claimant a reminder postcard of the deadline to cash the settlement check and shall also follow up with at least one reminder phone call. The cost associated with this reminder process will be included in the Settlement Administrator's fee to be approved by the Court.

    g.   **Identification of Settlement Class Members to Either the Qualifying Group Subclass or the Non-Qualifying Group Subclass.** The parties estimate that approximately 788 Settlement Class Members will be placed in either the Qualifying Group or the Non-Qualifying Group. Placement in either group shall be determined by excluding all Labor Code Subclass Members and then evaluating the work history of each remaining Settlement Class Member, as such history is set forth in (i) the information appearing on the resume submitted by the member when he or she initially

Firmwide:153178580.1 048517.1064

applied for employment with PG&E in the SR-1 classification; (ii) the information supplied by the member in response to interview questions, written questions and other requests for information involved in the application process for such position; and (iii) the information supplied by each member who timely returns a completed Questionnaire. If, in the sole opinion of Class Counsel, such information demonstrates that it is more likely than not that a Settlement Class Member had acquired at least 18 months of "prior directly related clerical job experience," as that term is defined in PRC 21052, at the time he or she was initially hired into an SR-1 classification position by PG&E and placed in a California Call Center, then that Settlement Class Member shall be included in the **Qualifying Group Subclass** All remaining Settlement Class Members who are not Labor Code Subclass Members shall be included in the **Non-Qualifying Group Subclass.** The failure of a Settlement Class Member to timely submit a completed Questionnaire shall not disqualify that Settlement Class Member from inclusion on the Qualifying Group Subclass; however, such a failure shall limit the information reviewed to determine the member's inclusion in the Qualifying Group Subclass to (i) the information appearing on the resume submitted by the member when he or she initially applied for employment with PG&E in the SR-1 classification and (ii) the information supplied by the member in response to interview questions, written questions and other requests for information involved in the application process for such position.

   22. <u>The Deadline to Return Questionnaires is May 10, 2018:</u> After that date, all Questionnaire responses will be reviewed and Settlement Class Members will be placed by Plaintiffs' counsel in either the Qualifying or Non-Qualifying Groups. All placements will be final and not subject to review, other than any review by the Court. Once all placements are made, a Second and Final Notice of Settlement ("Second NOS") will be sent to all Settlement Class Members informing them of their approximate individual monetary recovery from the Net Fund Value. At that time, Settlement Class

9

Firmwide:153178580.1 048517.1064

Members will have the opportunity to request exclusion (Opt-Out), or object to the Settlement. All Settlement Class Members who do not timely opt-out shall be bound by the judgment herein. This process will be further explained in the Second NOS to be sent in approximately May 2018, as set forth in detail in Paragraph 21 above.

23. <u>Tax Treatment of Settlement Payments:</u> Except where otherwise specifically stated herein, all settlement payments to Class Members will be treated as payments in settlement of wage claims and subject to all tax withholdings customarily made from employee's wages and all other authorized and required withholdings and shall be reported by W-2 or 1099-INT forms. The payment allocations from the Net Settlement Fund will be 1/2 wages and 1/2 interest. Defendants and the Settlement Administrator do not make any warranty or representation to Plaintiff or Class Counsel regarding the tax consequences of any payment they make pursuant to the Settlement.

24. <u>No Effect on Other Benefits:</u> Neither the terms of this Agreement nor any of the payments made to Plaintiffs or any Settlement Class Members shall have any effect on the eligibility or calculation of any employee benefits other than those specifically identified herein. The Parties agree that any Settlement payments made to Plaintiffs and the Claimants pursuant to the terms of this Agreement do not represent any modification of any such individual's previously credited hours of service or other eligibility criteria under any employee pension benefit plan, employee welfare benefit plan, or other program or policy sponsored by Defendants. Furthermore, the Settlement payments made to Plaintiffs and the Settlement Class Members shall not be considered compensation or annual earnings for benefits in any year for purposes of determining eligibility for, or benefit accrual within, an employee pension benefit plan, employee welfare benefit plan, or other program or policy sponsored by Defendants.

25. <u>Timing of Payments:</u> Within ten (10) calendar days after the Settlement becomes Final, Defendants will pay to the Settlement Administrator the

10

Maximum Settlement Payment as described in Paragraph 18, so that the Settlement Administrator can make the Class Representatives payment to Plaintiffs, the payment to Class Counsel for their attorneys' fees and costs, the individual settlement payments to Claimants and the payment to the Settlement Administrator, each as approved by the Court.

## C. Procedure for Preliminary Approval of Settlement

26.     Motion for Preliminary Approval of Settlement: The Parties will jointly move the Court for preliminary approval of the Settlement, including without limitation, an order: preliminarily approving the Settlement; approving the form and content of the proposed First Notice of Proposed Class Action Settlement and Second and Final Notice of Proposed Action Settlement (Exhibits A and B); directing the mailing of the First and Second Notice; preliminarily certifying the class for purposes of the Settlement; and appointing Simpluris as the Settlement Administrator, which, as a condition of appointment, will agree to be bound by this Agreement with respect to the performance of its duties and compensation. Simpluris estimates its fees and costs to perform its duties to be $27,400.10, but $29,000.00 (Twenty-Nine Thousand Dollars) will be set aside to cover any of Simpluris' fees and costs in excess of that estimate, with any unspent funds to be distributed to Class Members as provided in ¶ 21. All fees and costs of Simpluris in excess of $29,000.00 shall be borne exclusively by Defendant PG&E and shall not be deducted from the Maximum Settlement Payment.

27.     Denial of Motion for Preliminary Approval: If the Court declines to preliminarily approve all material aspects of the Settlement, the Settlement will be null and void and the Parties will have no further obligations under the Settlement.

## D. Notice to Settlement Class Members

28.     Release of Settlement Class Member Information to Settlement Administrator: Within five (5) days after the Court has granted preliminary approval of the Settlement, Defendant PG&E will provide to the Settlement Administrator the names, last

11

Firmwide:153178580.1 048517.1064

known addresses, phone numbers, and Social Security numbers of the Settlement Class Members, along with data indicating the number of SR I Pay Periods worked by each Settlement Class Member during the Class Period.

29. <u>NCOA Search:</u> Prior to the initial mailing of the Notice packets to Settlement Class Members, the Settlement Administrator will perform a National Change of Address ("NCOA") search on the Settlement Class Members to update the addresses of all Settlement Class Members.

30. <u>Mailing of First Notice Packet to Settlement Class Members:</u> Within 10 (ten) days after receiving the Settlement Class Member information from Defendant PG&E, the Settlement Administrator will mail, via first-class regular U.S. Mail, to each Settlement Class Member the First Notice of Settlement ("First NOS"), which shall include the Class Member Questionnaire ("Questionnaire"). Said First NOS shall be in the form attached hereto as Exhibit A. Settlement Class Members will have until May 10, 2018, to complete their responses to the Questionnaire and return the Questionnaire to the Settlement Administrator. A pre-addressed, postage paid return envelope shall be included in the First NOS for this purpose. No Questionnaire postmarked later than May 10, 2018, will be considered for the purposes of placing a settlement class member in the appropriate Subclass. The Settlement Administrator shall provide Class Counsel and Defendants' Counsel with completed and anonymized Questionnaires received by the Settlement Administrator on at least a weekly basis, and in no case later than May 15, 2018. "Anonymized" here means including only the EE ID number as a means of identifying which Class Member submitted the Questionnaire, to avoid any claim of bias on the part of Class Counsel.

31. <u>Class Counsel's Review of Questionnaires in Determination of appropriate Subclass:</u> Class Counsel shall complete their review of the work history of each Settlement Class Member by May 21, 2018. On or before that date, Class Counsel shall prepare a Notice of Completion of Subclass Identification, which shall be circulated to Defendants' Counsel and the Court, identifying by employee identification number which

12

**JOINT STIPULATION OF CLASS SETTLEMENT**

Firmwide:153178580.1 048517.1064

Settlement Class Members have been placed in the **Qualifying Group Subclass** and which Settlement Class Members have been placed in the **Non-Qualifying Group Subclass**. Said Notice shall also be sent to the Settlement Administrator on or before May 22, 2018. The Settlement Administrator shall then use the information included in said Notice to calculate the payment amounts for each Settlement Class Member, using the formula described in Paragraph 21, above.

Within 10 days of receiving Notice of Completion of Subclass Identification, the Settlement Administrator shall provide Class Counsel and Defendants Counsel with its calculation of the amounts each Settlement Class Member shall receive.

Within 14 days of advising Class Counsel and Defendants Counsel of the distribution amounts to the Settlement Class Members, the Settlement Administrator shall prepare and mail a Second Notice of Settlement ("Second NOS"), using the form attached hereto as Exhibit B.

32. <u>Notice:</u> The Notices approved by the Court and issued by the Settlement Administrator to Settlement Class Members will recite verbatim the complete release set forth in Paragraph 47.

33. <u>Returned or Non-deliverable Notices:</u> In the event of returned or non-deliverable notices, the Settlement Administrator will make reasonable efforts to locate Settlement Class Members and re-send the notices, including use of the Settlement Class Members' Social Security numbers to perform all standard skip tracing techniques to obtain forwarding addresses to ensure that the Notice packets are sent to, and received by, all Settlement Class Members. With respect to returned Notice packets, the Settlement Administrator will use reasonable diligence to obtain a current address and re-mail the Notice packet to such updated address within ten (10) calendar days of the receipt of the returned envelope.

Firmwide:153178580.1 048517.1064

34.    Reminder Postcards: Fifteen (15) calendar days after the First Notice packet is first mailed to the Settlement Class Members, the Settlement Administrator will mail a postcard to all Settlement Class Members who have not responded by submitting their responses to the questionnaire. The front side of the postcard reminder will contain the Case Name, and the Settlement Administrator name and address in the top left corner, and will be addressed to the Settlement Class Member's name and address. The back side of the postcard reminder will state as follows: "REMINDER: A Notice Packet was mailed to you about *Greer, et al. v. Pacific Gas and Electric Company, et al.* The packet contained a Notice and Questionnaire. If you have not received or have misplaced your Notice Packet, you may obtain a copy by calling the Settlement Administrator at [phone number]. All Questionnaires must be returned to the Settlement Administrator no later than May 10, 2018 at [***], [address, and telephone number]."

**E.    Settlement Class Members' Submission of Questionnaires to Settlement Administrator**

35.    Submission of Questionnaire Form: The Settlement Class Members will have until May 10, 2018 to submit their Questionnaire responses to the Settlement Administrator.

**F.    Submission of Request for Exclusion and Objections to the Settlement**

36.    Submission of Request for Exclusion: To be excluded from (*i.e.*, to become an Opt-Out) the Settlement, a Settlement Class Member must prepare and sign a written request referred to as a Request for Exclusion, and submit it to the Settlement Administrator by no later than thirty (30) days after the Second Notice Packet was initially mailed. The Request for Exclusion must include the individual's name, address, telephone number, last four digits of his/her Social Security number (or full EE ID number, at the option of the individual), and a written affirmation of the desire to be excluded from this Settlement. The Settlement Administrator will determine the timeliness of submitted Requests for Exclusion by valid postmark. Within one (1) business day of the Settlement Administrator's

14

receipt of a Request for Exclusion, the Settlement Administrator will inform the Parties' Counsel of such Request for Exclusion. A Settlement Class Member who does not complete and mail a timely Request for Exclusion in the manner and by the deadline specified above will automatically remain as a Settlement Class Member and be bound by all terms and conditions of the Settlement (including, without limitation, the release provisions in the Settlement in Paragraph 47 if the Settlement is approved by the Court, and by the final judgment. A Settlement Class Member who timely submits a properly completed Election Not to Participate to the Settlement Administrator will not participate in or be bound by the Settlement and the final judgment.

37. <u>Parties' Right to Reject Settlement:</u> If five percent (5%) or more of the eligible Settlement Class Members submit a timely and valid Request for Exclusion, any party to this lawsuit will have the right to rescind the Settlement, and the Settlement and all actions taken in its furtherance will be null and void. To do so, a party must exercise this right within fourteen (14) days after the Settlement Administrator has notified the Parties' Counsel of the number of timely and valid Requests for Exclusion received, which the Settlement Administrator will do within fourteen (14) days after the deadline for submission of the Request for Exclusion.

38. <u>Objection to Settlement:</u> To object to the Settlement, a Settlement Class Member must file his or her objection with the Court, and serve it on the Parties' Counsel, no later than thirty (30) days after the Second Notice packet was initially mailed to the Settlement Class Members. The objection must indicate whether the Settlement Class Member intends to appear and object to the Settlement at the final approval hearing. A Settlement Class Member who does not file and serve an objection in the manner and by the deadline specified above will be deemed to have waived all objections and will be foreclosed from making any objections (whether by appeal or otherwise) to the Settlement. An Opt-Out (someone who has submitted a Request for Exclusion) may not object to the Settlement, because he or she is not bound by the Settlement.

Firmwide:153178580.1 048517.1064

### G. Resolution of Disputes

39. <u>Resolution by Settlement Administrator:</u> Any disputes shall be resolved by the Court-appointed Settlement Administrator after consultation with Class Counsel and Defendants' Counsel. If a Settlement Class Member believes that the number of SR I Pay Periods used to calculate his/her estimated Settlement Award is incorrect, the Settlement Class Member may submit a dispute to the Settlement Administrator. All estimated Settlement award disputes must be made or mailed with a postmark no later than thirty (30) days after the mailing of the Second Notice Packet and should be accompanied with supporting documentation related to the dispute. The Settlement Administrator shall notify Defendants' Counsel and Class Counsel of any such dispute no later than ten (10) days after receiving notice of the dispute. For any dispute that arises, counsel for the Parties may stipulate to a compromise or stipulate to allow the Settlement Administrator to resolve the dispute and make a final and binding determination without hearing or right of appeal.

40. <u>Resolution by the Court:</u> The Court will resolve any disputes not resolved through the process described immediately above.

### H. Final Approval of Settlement

41. <u>Motion for Final Approval of Settlement:</u>

a. The Parties will jointly move the Court for final approval of the Settlement. Plaintiffs will separately move for an award of their Class Representatives service payment and Class Counsel's attorneys' fees and costs pursuant to the Settlement, which Defendants will not oppose. Class Counsel will prepare the motion for final approval for advance review and comment by Defendants' Counsel.

b. Upon final approval of the Settlement by the Court at or after the final approval hearing, the Parties will present their proposed judgment for the Court's entry and approval, which will, among other things: (i) approve the Settlement, adjudging the terms thereof to be fair, reasonable and adequate, and directing implementation of all of its terms and provision; (ii) approve or revise Class Counsel's application for an award of

16

Firmwide:153178580.1 048517.1064

attorneys' fees and costs; (iii) approve or revise the Class Representatives' service payment; (iv) certify the class for settlement purposes only; (v) approve the payment to the Settlement Administrator; and (vi) permanently bar all Settlement Class Members (other than those who timely filed a valid Request for Exclusion) from prosecuting against the Released Parties any and all claims released under their general releases. After entry of the judgment, the Court will have continuing jurisdiction over the Lawsuit and the Settlement solely for purposes of enforcing this Agreement, addressing Settlement administration matters, and addressing such post-judgment matters as may be appropriate under Court rules or applicable law.

42. Denial of Motion for Final Approval of Settlement or Appellate Review of Settlement: If the Court does not grant final approval of the Settlement, either as submitted or with revisions approved by all Parties, or if the Court's final approval of the Settlement is reversed or materially modified on appellate review, then this Settlement will become null and void; if this occurs, the Parties will have no further obligations under the Settlement, including, without limitation, any obligation on the part of Defendants to pay the Maximum Settlement Payment or any other amounts payable under the Settlement other than payment to the Settlement Administrator for its work that is authorized by this Agreement and precedes the date that approval of the Settlement was denied. An award of a Class Representative payment or Class Counsel's attorneys' fees and costs in an amount less than sought will not constitute a failure to grant final approval or a material modification of the Settlement.

43. Distribution of Payment Upon Final Approval of Settlement: If there are no objectors, Defendants shall deposit the Maximum Settlement Payment with the Settlement Administrator within ten (10) calendar days after the Court grants final approval to the Settlement. If there are objectors, Defendant shall deposit the Maximum Settlement Payment with the Settlement Administrator within (10) calendar days after the earlier of: (i) the expiration of the objector(s)'s deadline to appeal the final approval order; or (ii) the date that the final approval order is upheld, without material modification, after all levels of

17

Firmwide:153178580.1 048517.1064

appellate review have been exhausted. The Court-approved payments to Plaintiffs for their Class Representatives service payment, Class Counsel for their attorneys' fees and costs, and the Class Members will be made within twenty (20) days after the Settlement Administrator receives the Maximum Settlement Payment from Defendants.

44. <u>Waiver of Rights to Appeal:</u> The Parties and Parties' Counsel waive all appeals from the Court's final approval of the Settlement.

45. <u>Notice of Satisfaction of Judgment Upon Final Approval of Settlement and Defendants' Payment:</u> The Parties agree that, upon Final approval of the Settlement and Defendants' payment of the Maximum Settlement Payment to the Settlement Administrator, Class Counsel will promptly file with the Court a Notice of Satisfaction of Judgment.

I. **Release of Claims**

46. <u>Plaintiffs' Release of Claims:</u> In consideration of Plaintiffs' court-approved Class Representatives payment, Plaintiffs' settlement payment, and the other terms and conditions of the Settlement, each named Plaintiff releases any and all claims against (i) Pacific Gas and Electric and IBEW Local 1245; (ii) any of their present and former parents, subsidiaries and affiliated companies or entities; and (iii) the officers, directors, employees, partners, shareholders, agents, successors, assigns and legal representatives of the entities included in (i) and (ii) (collectively, "Released Parties"), known or unknown, that arise from or relate to employment with Defendant PG&E or its conclusion. The employment-related claims that Plaintiffs release include, but are not limited to, claims arising under any and all national, state, or local laws (including statutes, regulations, other administrative guidance, and common law doctrines), including but not limited to the following: (i) anti-discrimination statutes as amended, such as Title VII of the Civil Rights Act of 1964 and Sections 1981 and 1983 of the Civil Rights Act of 1866, which prohibit discrimination based on race, color, national origin, religion, or sex; the Equal Pay Act, which prohibits paying men and women unequal pay for equal work; the Americans with Disabilities Act and state and local laws, which prohibit discrimination based on disability and failure to reasonably accommodate

18

Firmwide:153178580.1 048517.1064

disability; the California Fair Employment and Housing Act; and any other federal, state, or local laws which prohibit retaliation, discrimination and harassment in employment on the basis of actual or perceived race, color, religion, sex, sexual orientation, ancestry, national origin, physical or mental disability or medical condition, marital status or age, or association with a person who has, or is perceived to have, any of those characteristics, or failure to accommodate pregnancy, disability, religious observance or any other legally protected characteristic, status or activity; (ii) federal employment statutes as amended, such as the WARN Act, which requires that advance notice be given of certain work force reductions; the Employee Retirement Income Security Act of 1974, which, among other things, protects employee benefits; the Occupational Safety and Health Act of 1970, which protects employee health and safety; the Fair Labor Standards Act, which regulates minimum wages, overtime and other aspects of pay and work hours; and the National Labor Relations Act, which protects employees from unfair labor practices and provides rights for protected activity; and (iii) other employment statutes, regulations and laws as amended, such as the Industrial Welfare Commission Orders; the California Labor Code relating to wages, compensation, benefits, hours, overtime, alternative workweek schedules, working conditions, off-the-clock time, split shift premiums, reporting time pay, meal periods and rest breaks, record-keeping penalties, paycheck stub and itemized wage statement penalties, minimum wage penalties, meal and rest period penalties, waiting time penalties, penalties for alleged failure to provide proper seating, and reimbursement of expenses; California Labor Code Section 2699 et seq. (the Private Attorneys General Act of 2004), which provides for penalties, fees and costs for violations of various California wage-hour and other laws; the Family and Medical Leave Act and the California Family Rights Act, which mandate certain leaves of absence; and unfair competition in violation of Business and Professions Code Section 17200. Plaintiff expressly waives the protection of California Civil Code section 1542. Section 1542 provides: "A general release does not extend to claims which the creditor does not know or suspect to exist

19

37899.5
Firmwide:153178580.1 048517.1064

in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

47. <u>Settlement Class Members' Release of Claims</u>: Unless he or she has submitted a timely and valid Request for Exclusion, each Settlement Class Member releases and discharges the Released Parties from Released Claims for the Release Period, as follows:

a. <u>Released Claims.</u> Released Claims are any and all claims, rights, demands, liabilities and causes of action of every nature and description, whether known or unknown, that are pleaded in the Third Amended Complaint, which alleges 1) Breach of Contract; (2) Violation of California Labor Code section 216; (3) Violation of California Labor Code sections 226(a), 1174 and 1175; (4) Promissory Fraud; (5) Promissory Estoppel; (6) Violation of California Business and Professions Code section 17200 *et seq.* against Defendant Pacific Gas and Electric Company; and alleged claims against IBEW Local 1245 for Breach of the Duty of Fair Representation; and any claim against any Party or any Party's counsel based on entering into this agreement, or implementation of the agreement consistent with its terms..

48. <u>Class Counsel's Release of Claims:</u> In consideration of their awarded attorneys' fees and costs, Class Counsel waives any and all claims to any further attorneys' fees and costs in connection with the Lawsuit.

**J.    No Admission of Liability or Class Certification for Other Purposes**

49. <u>Stipulated Class Certification:</u> For settlement purposes only, the Parties stipulate that a class may be certified, as described in this Agreement. The Parties agree that certification for settlement purposes under the lenient standard applied to settlements is in no way an admission that class certification is proper under the more stringent standard applied for litigation purposes, and that evidence of this limited stipulation for settlement purposes only will not be deemed admissible in this or any other proceeding. Defendant's position is that if the Lawsuit were to be litigated, class certification would be

20

Firmwide:153178580.1 048517.1064

inappropriate. The fact that the Parties were willing to stipulate to class certification as part of the Settlement will have no bearing on, and will not be admissible in any other action for any purpose or in this action for any purpose (other than solely in connection with the Settlement). Furthermore, Defendants deny any and all wrongdoing, and by entering into this Agreement and Settlement, Defendants do not admit any violation of law.

50. <u>Denial of Liability:</u> Defendant denies any and all wrongdoing, and by entering into this Agreement, Defendant does not admit any violation of law. Furthermore, Defendant denies any and all wrongdoing, and by entering into this Agreement and Settlement, Defendant does not admit any violation of law. This Agreement is entered into solely for the purpose of compromising highly disputed claims, and will not be deemed admissible in any litigation other than this Lawsuit for any purpose.

**K.** **Miscellaneous Terms**

51. <u>Disposition of Uncashed Settlement Checks:</u> Settlement Class Members shall have a period of One Hundred Eighty (180) days from the initial date of mailing to cash their checks, after which the Settlement Administrator shall issue a stop-payment order. If a Settlement Class Member fails to cash a check for his or her Settlement payment within 180 days after the Settlement Administrator has initially mailed the check to the Settlement Class Member, the value of every such uncashed check shall go to Government Unclaimed Funds. Thereafter, the Settlement Class Member will have no claim against Defendant or the Released Parties to the funds represented by the check. Regardless of whether the Settlement Class Member cashes his or her Settlement check, he or she nevertheless will remain bound by the Settlement, including without limitation, the release of Released Claims.

52. <u>Fair, Adequate and Reasonable Settlement:</u> The Parties agree that the Settlement is fair, adequate and reasonable and will so represent to the Court.

53. <u>Binding and Enforceable Agreement:</u> The Parties intend that this Agreement shall be fully enforceable and binding upon all Parties, and that it shall be admissible and subject to disclosure in any proceeding to enforce its terms.

54. <u>Integrated Agreement:</u> After this Agreement is signed and delivered by all Parties and Parties' Counsel, this Agreement will constitute the entire agreement between the Parties relating to the Settlement, and will supersede any prior or contemporaneous oral representations, warranties, covenants or inducements made to any Party concerning this Settlement.

55. <u>No Prior Assignments:</u> The Parties represent and warrant that they have not directly or indirectly assigned, transferred, encumbered or purported to assign, transfer or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or right released and discharged in this Settlement.

56. <u>Attorney Authorization and Mutual Full Cooperation:</u> Class Counsel and Defendant's Counsel warrant and represent that they are authorized by the Class Representative and Defendant, respectively, to take all appropriate actions required or permitted to be taken by such Parties pursuant to this Settlement to effectuate its terms, and to execute any other documents required to effectuate the terms of this Settlement. The Parties and Parties' Counsel will cooperate with each other and use their best efforts to effect the implementation of the Settlement. In the event the Parties are unable to reach agreement on the form or content of any document needed to implement the Settlement, or on any supplemental provisions that may become necessary to effectuate the terms of this Settlement, the Parties will seek the assistance of the Court, and in all cases all such documents, supplemental provisions and assistance of the Court will be consistent with this Settlement.

57. <u>Modification of Agreement:</u> This Settlement, and any and all parts of it, may be amended, modified, changed or waived only by an express written instrument signed by all Parties or their successors-in-interest.

58. <u>Agreement Binding on Successors:</u> This Agreement will be binding upon, and inure to the benefit of, the successors of each of the Parties, including without limitation, their respective heirs, trustees, executors, administrators and assigns.

59. <u>Applicable Law:</u> All terms and conditions of this Agreement will be governed by and interpreted according to the laws of the State of California, without giving effect to any conflict of law or choice of law principles.

60. <u>Cooperation in Drafting:</u> The Parties have cooperated in the drafting and preparation of this Agreement. This Agreement will not be construed against any Party on the basis that the Party was the drafter or participated in the drafting.

61. <u>Headings:</u> The descriptive heading of any section or paragraph of this Agreement is inserted for convenience of reference only and does not constitute a part of this Agreement.

62. <u>Notice:</u> All notices, demands or other communications given under this Agreement will be in writing and be sent by both facsimile and mail (either first-class U.S. Mail or overnight mail) as follows:

***To Plaintiff and Settlement Class:***

Patrick D. Toole CA Bar No. 190118
ptoole@wjhattorneys.com
WAGNER JONES HELSLEY PC
265 E. River Park Circle, Suite 310
Fresno, CA 93720
Telephone:    559.233.4800

Charles Swanston CA Bar No. 181882
cswanston@fandslegal.com
FITZPATRICK, SPINI & SWANSTON
555 S. Main Street
Salinas, CA 93901
Telephone:    831.755.1311

*To Defendants:*

**Pacific Gas and Electric** Company:

Joshua D. Kienitz CA Bar No. 244903
JKienitz@littler.com
Aurelio J. Perez CA Bar No. 282135
Aperez@littler.com
LITTLER MENDELSON, P.C
333 Bush Street, 34th Floor
San Francisco, California 94104
Telephone:    (415) 433-1940

**IBEW Local 1245:**

Philip C. Monrad CA Bar No. 151073
pmonrad@leonardcarder.com
Paul Schwartz
pschwarz@leonardcarder.com
LEONARD CARDER, LLP
1330 Broadway, Suite 1450
Oakland, CA 94612
Telephone:    (510) 272-0169

Alex Pacheco CA Bar No. 151073
AJP3@IBEW1245.com
IBEW Local 1245
30 Orange Tree Circle
Vacaville, California 95687
Telephone:    (707) 452-2751

63.    Execution in Counterparts: This Agreement may be executed in one or more counterparts. All executed counterparts and each of them will be deemed to be one and the same instrument provided that the Parties' Counsel will exchange between themselves original signed counterparts. Facsimile and pdf signatures will be accepted. Any executed counterpart will be admissible in evidence to prove the existence and contents of this Agreement.

//

//

Firmwide:153178580.1 048517.1064

64. <u>Class Counsel Signatories:</u> It is agreed that because the Settlement Class Members are so numerous, it is impossible or impractical to have each Settlement Class Member execute this Settlement. The Notice will advise Settlement Class Members of the binding nature of the release in this Settlement Agreement. Excepting only the Settlement Class Members who timely submit a valid Request for Exclusion, the Notice shall have the same force and effect as if this Settlement were executed by each Settlement Class Member, including, without limitation the release of Released Claims in Paragraph 47.

L. **Execution by Parties and Counsel**

### PLAINTIFFS/CLASS REPRESENTATIVES AND CLASS COUNSEL

DATED: March __, 2018

By: _____
Becky Greer

DATED: March __, 2018

By: _____
Timothy C. Budnik

DATED: March __, 2018

By: _____
Haley Markwith

DATED: March __, 2018

By: _____
Rosario Saenz

DATED: March __, 2018

By: _____
Ian Carty

DATED: March __, 2018

By: _____
Maria Garcia Pesina

DATED: March 1, 2018

WANGER JONES HELSLEY

By: */s/ Patrick D. Toole*
Patrick D. Toole
Attorneys for Plaintiffs

DATED: March 1, 2018

FITZPATRICK, SPINI & SWANSTON

By: */s/ Charles Swanston*
Charles Swanston
Attorneys for Plaintiffs

25

Firmwide:153178580.1 048517.1064

1    64.    <u>Class Counsel Signatories:</u> It is agreed that because the

2  Settlement Class Members are so numerous, it is impossible or impractical to have each

3  Settlement Class Member execute this Settlement.  The Notice will advise Settlement Class

4  Members of the binding nature of the release in this Settlement Agreement.  Excepting only

5  the Settlement Class Members who timely submit a valid Request for Exclusion, the Notice

6  shall have the same force and effect as if this Settlement were executed by each Settlement

7  Class Member, including, without limitation the release of Released Claims in Paragraph 47.

8  //

9  //

10  //

11    L.    **<u>Execution by Parties and Counsel</u>**

12    **<u>PLAINTIFFS/CLASS REPRESENTATIVES AND CLASS COUNSEL</u>**

13

14  DATED: February 12, 2018          By: _____

15                                         Becky Greer

16  DATED: February 12, 2018

17                                         By: _____
                                           Timothy C. Budnik

18  DATED: February 12, 2018

19                                         By: _____
                                           Haley Markwith

20  DATED: February 12, 2018

21                                         By: _____
                                           Rosario Saenz

22  DATED: February 12, 2018

23                                         By: _____
                                           Ian Carty

24  DATED: February 12, 2018

25                                         By: _____
                                           Maria Garcia Pesina

26  DATED: February 12, 2018          WANGER JONES HELSLEY

27                                         *By: /s/ Patrick D. Toole*
                                           Patrick D. Toole

28                                         Attorneys for Plaintiffs

1    64.    Class Counsel Signatories: It is agreed that because the

2    Settlement Class Members are so numerous, it is impossible or impractical to have each

3    Settlement Class Member execute this Settlement. The Notice will advise Settlement Class

4    Members of the binding nature of the release in this Settlement Agreement. Excepting only

5    the Settlement Class Members who timely submit a valid Request for Exclusion, the Notice

6    shall have the same force and effect as if this Settlement were executed by each Settlement

7    Class Member, including, without limitation the release of Released Claims in Paragraph 47.

8    //

9    //

10

11    **L.    Execution by Parties and Counsel**

12

13    **PLAINTIFFS/CLASS REPRESENTATIVES AND CLASS COUNSEL**

14    DATED: February 12, 2018

15                                        By: _____
                                          Becky Greer

16    DATED: February 12, 2018
                                          By: *Timothy C. Budnik*
17                                            Timothy Budnik

18    DATED: February 12, 2018

19                                        By: _____
                                          Haley Markwith

20    DATED: February 12, 2018

21                                        By: _____
                                          Rosario Saenz

22    DATED: February 12, 2018

23                                        By: _____
                                          Ian Carty

24    DATED: February 12, 2018

25                                        By: _____
                                          Maria Garcia Pesina

26    DATED: February 12, 2018    WANGER JONES HELSLEY

27                                        *By: /s/ Patrick D. Toole*
                                          Patrick D. Toole
28                                        Attorneys for Plaintiffs

{7608/002/00815021.DOCX}
25

JOINT STIPULATION OF CLASS SETTLEMENT

1    64.    <u>Class Counsel Signatories:</u> It is agreed that because the

2  Settlement Class Members are so numerous, it is impossible or impractical to have each

3  Settlement Class Member execute this Settlement.  The Notice will advise Settlement Class

4  Members of the binding nature of the release in this Settlement Agreement.  Excepting only

5  the Settlement Class Members who timely submit a valid Request for Exclusion, the Notice

6  shall have the same force and effect as if this Settlement were executed by each Settlement

7  Class Member, including, without limitation the release of Released Claims in Paragraph 47.

8  //

9  //

10 

11 **L.    Execution by Parties and Counsel**

12 

13 **PLAINTIFFS/CLASS REPRESENTATIVES AND CLASS COUNSEL**

14 DATED: February 12, 2018

By: _____
15                                    Becky Greer

16 DATED: February 12, 2018

By: _____
17                                    Timothy C. Budnik

18 DATED: February 12, 2018

By: _____
19                                    Haley Markwith

20 DATED: February 12, 2018

By: _____
21                                    Rosario Saenz

22 DATED: February 12, 2018

By: _____
23                                    Ian Carty

24 DATED: February 12, 2018

By: _____
25                                    Maria Garcia Pesina

26 DATED: February 12, 2018    WANGER JONES HELSLEY

27                            *By: /s/ Patrick D. Toole*
                               Patrick D. Toole
28                             Attorneys for Plaintiffs

64. **Class Counsel Signatories:** It is agreed that because the Settlement Class Members are so numerous, it is impossible or impractical to have each Settlement Class Member execute this Settlement. The Notice will advise Settlement Class Members of the binding nature of the release in this Settlement Agreement. Excepting only the Settlement Class Members who timely submit a valid Request for Exclusion, the Notice shall have the same force and effect as if this Settlement were executed by each Settlement Class Member, including, without limitation the release of Released Claims in Paragraph 47.

//

//

**L.** *Execution by Parties and Counsel*

### PLAINTIFFS/CLASS REPRESENTATIVES AND CLASS COUNSEL

DATED: February 12, 2018

By: _____
Becky Greer

DATED: February 12, 2018

By: _____
Timothy C. Budnik

DATED: February 12, 2018

By: _____
Haley Markwith

DATED: February 12, 2018

By: _____
Rosario Saenz

DATED: February 12, 2018

By: _____
Ian Carty

DATED: February 12, 2018

By: _____
Maria Garcia Pesina

DATED: February 12, 2018

WANGER JONES HELSLEY

By: /s/ Patrick D. Toole
Patrick D. Toole
Attorneys for Plaintiffs

Scanned by CamScanner

//

64. <u>Class Counsel Signatories:</u> It is agreed that because the Settlement Class Members are so numerous, it is impossible or impractical to have each Settlement Class Member execute this Settlement. The Notice will advise Settlement Class Members of the binding nature of the release in this Settlement Agreement. Excepting only the Settlement Class Members who timely submit a valid Request for Exclusion, the Notice shall have the same force and effect as if this Settlement were executed by each Settlement Class Member, including, without limitation the release of Released Claims in Paragraph 47.

//

//

**Execution by Parties and Counsel**

## PLAINTIFFS/CLASS REPRESENTATIVES AND CLASS COUNSEL

DATED: February 12, 2018

By: _____
Becky Greer

DATED: February 12, 2018

By: _____
Timothy C. Budnik

DATED: February 12, 2018

By: _____
Haley Markwith

DATED: February 12, 2018

By: _____
Rosario Saenz

DATED: February 12, 2018

By: _____
Ian Carty

DATED: February 12, 2018

By: _____
Maria Garcia Pesina

shall have the same force and effect as if this Settlement were executed by each Settlement Class Member, including, without limitation the release of Released Claims in Paragraph 47.

//

ii

**K.** **Execution by Parties and Counsel**

## PLAINTIFFS/CLASS REPRESENTATIVES AND CLASS COUNSEL

DATED: February 12, 2018

By: _____
Becky Greer

DATED: February 12, 2018

By: _____
Timothy C. Budnik

DATED: February 12, 2018

By: _____
Haley Markwith

DATED: February 12, 2018

By: _____
Rosario Saenz

DATED: February 12, 2018

By: _____
Ian Carty

DATED: February 12, 2018

By: _____
Maria Garcia Pesina

DATED: February 12, 2018

WANGER JONES HELSLEY

By: /s/ Patrick D. Toole
Patrick D. Toole
Attorneys for Plaintiffs

DATED: February 12, 2018

FITZPATRICK, SPINI & SWANSTON

By: /s/ Charles Swanston
Charles Swanston
Attorneys for Plaintiffs

## DEFENDANTS AND COUNSEL FOR DEFENDANTS

**DEFENDANTS AND COUNSEL FOR DEFENDANTS**

DATED: March 1, 2018

By: _____
Stacy A. Campos, Esq.
Director, Employment & Workers
Compensation
Pacific Gas & Electric Co., Inc.

DATED: March __, 2018

By: _____
Print Name:
On behalf of IBEW Local 1245

DATED: March __, 2018

By: _____
Alex Pacheco
General Counsel for IBEW Local 1245

DATED: March 1, 2018

LITTLER MENDELSON, P.C.

By: /s/ Joshua D. Kienitz

Joshua D. Kienitz
Attorneys for Defendant Pacific Gas and
Electric Company

DATED: March __, 2018

LEONARD CARDER, LLP

By: _____
Philip C. Monrad
Paul H. Schwartz
Attorneys for Defendant IBEW Local 1245

26

## DEFENDANTS AND COUNSEL FOR DEFENDANTS

DATED: March __, 2018

By: _____
    Stacy A. Campos, Esq.
    Director, Employment & Workers
    Compensation
    Pacific Gas & Electric Co., Inc.

DATED: March 1, 2018

By: _____
    Print Name: Tom Dalzell, Business Manager
    On behalf of IBEW Local 1245

DATED: March 1, 2018

By: _____
    Alex Pacheco
    General Counsel for IBEW Local 1245

DATED: March 1, 2018

LITTLER MENDELSON, P.C.

By: _/s/ Joshua D. Kienitz___

Joshua D. Kienitz
Attorneys for Defendant Pacific Gas and
Electric Company

DATED: March __, 2018

LEONARD CARDER, LLP

By: _/s/ Philip C. Monrad___
Philip C. Monrad
Paul H. Schwartz
Attorneys for Defendant IBEW Local 1245

26

Firmwide:153178580.1 048517.1064

# EXHIBIT
## "A"

## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

**TO: ALL CURRENT AND FORMER SERVICE REPRESENTATIVE I EMPLOYEES HIRED INTO A PACIFIC GAS AND ELECTRIC CALL CENTER IN CALIFORNIA BETWEEN JANUARY 1, 2011 AND JUNE 30, 2015**

PLEASE READ THIS NOTICE CAREFULLY. YOUR RIGHTS MAY BE AFFECTED. YOU MAY BE ENTITLED TO RECEIVE MONEY FROM THIS PROPOSED SETTLEMENT.

This Notice is Court Approved. This is not a solicitation from an attorney.

### 1.    WHY DID I GET THIS NOTICE?

You received this Notice because a proposed settlement (the "Settlement") has been reached in a class action lawsuit entitled *Greer, et al. v. Pacific Gas and Electric Company, et al.*, United States District Court, Eastern District of California, Fresno Division, Case No. 1:15-CV-01066-EPG (the "Lawsuit"). This Notice explains the nature of the Lawsuit, the general terms of the proposed Settlement, your legal rights, and specific steps you must take to protect your rights.

### 2.    WHAT IS THIS LAWSUIT ABOUT?

Plaintiffs Becky Greer, Timothy Budnik, Ian Carty, Haley Markwith, Maria Garcia Pesina, and Rosario Saenz ("Plaintiffs") filed the Lawsuit alleging that Pacific Gas and Electric Company ("PG&E") failed to pay them wages in accordance with the Collective Bargaining Agreement ("CBA"). Under the terms of the CBA, Service Representative I ("SR I") employees who at the time of hire had at least 18 months of "directly related clerical job experience" were entitled to be paid at a wage rate higher than the entry level rate.

Plaintiffs brought this lawsuit as a class action on behalf of all current and former SR Is that were hired into a PG&E call center between January 1, 2011 and June 30, 2015. Plaintiffs contend that PG&E both adopted new policies inconsistent with the requirements of the CBA and/or intentionally and fraudulently misinterpreted the phrase "directly related clerical job experience" in order to place most SR Is at the entry level wage rate. Plaintiffs also allege that, as a result, PG&E failed to pay workers all wages owed and provided them with wage statements that stated an inaccurate amount for wages earned.

PG&E denies these allegations and is prepared to defend the action to the fullest extent of the law.

The Court has not yet made any findings of liability as to PG&E.

## 3. WHAT IS A CLASS ACTION?

In a class action lawsuit, one or more persons sue on behalf of a group of people who have similar claims. Here, Becky Greer, Timothy Budnik, Ian Carty, Haley Markwith, Maria Garcia Pesina, and Rosario Saenz are the Class Representatives in the Lawsuit, and, as such, are asserting the above claims on behalf of themselves and the class. PG&E and IBEW Local 1245 are the Defendants. A class action allows the Court to resolve the claims of all the class members at the same time in a single proceeding. A class member is bound by the determination or judgment entered in the case, whether the class wins or loses, and may not thereafter file his or her own lawsuit on the same claims that were decided in the class action. A class action allows one court to resolve all of the issues in a lawsuit for all the class members who choose not to exclude themselves from the class.

## 4. WHO IS INCLUDED IN THE SETTLEMENT CLASS?

Anyone who was hired into the SR I classification between January 1, 2011 and June 30, 2015 and placed upon hire in a California Call Center. All such individuals are included in the class even if they are not currently employed at PG&E or no longer employed in the SR I classification.

## 5. WHAT ARE THE TERMS OF THE CLASS SETTLEMENT?

A hearing was conducted on March 23, 2018, in the United States District Court for the Eastern District of California, in which Judge Erica P. Grosjean preliminarily approved the Settlement of this Lawsuit. The Settlement will resolve the Settlement Class Members' claims for: (1) Breach of Contract against PG&E; (2) Violation of California Labor Code section 216 by PG&E; (3) Violation of California Labor Code sections 226(a), 1174 and 1175 by PG&E; (4) Promissory Fraud by PG&E; (5) Promissory Estoppel by PG&E; (6) Violation of California Business and Professions Code section 17200 *et seq.* by PG&E; and (7) Breach of the Duty of Fair Representation by IBEW Local 1245.

The Settlement represents a compromise of sharply disputed claims. Nothing in the Settlement may be used as an admission by either PG&E or IBEW Local 1245 that the claims in the Lawsuit have merit or that they have any liability to Plaintiffs or the Class Members on those claims.

The Parties have agreed to settle the case for a total of $6,000,000.00 (Six Million Dollars) ("Total Settlement Amount"). Under the terms of the Settlement, the following payments have been agreed: (1) attorneys' fees not to exceed 33.33% of the Total Settlement Amount; (2) all litigation expenses incurred by Class Counsel, in an amount to be approved by the Court, not to

exceed $275,000; (3) a separate service payment to each of the Class Representatives for their services in filing and participating in the Lawsuit, in a total amount not to exceed $35,000; and (4) $29,000 for administration settlement costs. The amount of money remaining after these payments is the amount that will be distributed to the individuals who are participating Settlement Class Members. This amount is known as the "Net Settlement Fund."

The allocation of the Net Settlement Fund, and the estimated payment for each Settlement Class Member, will be determined by their placement into one of three groups: (1) 137 Settlement Class Members who received retroactive wage adjustments in December 2014 or May 2015 (the "Labor Code Subclass"); (2) approximately 175 Settlement Class Members with 18 months of prior directly related clerical job experience (the "Qualifying Group"); and (3) approximately 613 Settlement Class Members who have not demonstrated 18 months of prior directly related clerical job experience (the "Non-Qualifying Group") in their response. Placement of Class Members in the Qualifying Group Subclass or in the Non-Qualifying Group Subclass was determined solely by Plaintiffs' counsel, though the settlement must be approved by the court as being fair to the Settlement Class Members.

Members of the Labor Code Subclass will each receive a one-time payment of $250. Members of the Qualifying Group Subclass will each receive a single payment in the amount of approximately $19,849,71. Members of the Non-Qualifying Subclass will each receive a one-time payment of $250. No Settlement Class member will receive an elevated wage rate going forward, nor will any Settlement Class member receive any seniority benefits as a result of the Settlement.

## 6.  HOW DOES THE SETTLEMENT AFFECT MY RIGHTS?

If the final approval of the settlement is granted, the Court will enter a Final Order and Judgment. **If you fail to timely request to be excluded from the Settlement, you will be bound by that order and judgment and you will release the following claims during the Class Period (meaning you will be barred from prosecuting any and all such claims against PG&E):** 1) Breach of Contract; (2) Violation of California Labor Code section 216; (3) Violation of California Labor Code sections 226(a), 1174 and 1175; (4) Promissory Fraud; (5) Promissory Estoppel; (6) Violation of California Business and Professions Code section 17200 *et seq.* **You will also release the following claims during the Class Period, and will be barred from prosecuting any and all such claims against IBEW Local 1245:** (1) Breach of the Duty of Fair Representation. Collectively, these are the "Released Claims."

The Judgment will resolve the claims to the extent provided in the Settlement Agreement and will permanently bar all Class Members who do not request to be excluded from prosecuting any and all such claims against PG&E and/or IBEW Local 1245. You will remain bound by the Settlement, and you cannot sue, continue to sue or be part of any other lawsuit about the Released Claims. It also means that all of the Court's orders will apply to you and legally bind you. However, you may exclude yourself from this Settlement.

The precise definitions of the capitalized terms in the paragraphs above can be found in the Stipulation of Settlement and Release, which can be viewed at the United States District Court for the Eastern District of California, 2500 Tulare Street, Fresno, CA 93721, during normal business hours, and by contacting Plaintiffs' counsel at the address listed below.

## 7. WHAT DO I NEED TO DO TO RECEIVE A SETTLEMENT PAYMENT?

Each of the 137 members of the Labor Code Subclass will receive a payment of $250, unless they opt out. The remaining 787 Settlement Class Members will be placed in either the Qualifying Group or the Non-Qualifying Group. Placement in either group is determined by each individual's prior directly related clerical job experience as defined in Pre-Review Committee Decision No. 21052. Each person's prior directly related clerical job experience is determined from the individual's resume that was submitted at the time of their hire (which has already been provided by PG&E), and any additional information provided by the individual in the attached Questionnaire. Whether you are placed in the "Qualifying Group" or the "Non-Qualifying Group," will be determined by counsel for Plaintiffs.

**It is not necessary to fill out a Questionnaire, although failing to do so will result in your placement in the Qualifying or Non-Qualifying Group being determined solely on the basis of the resume you submitted with your employment application.**

## 8. DO I HAVE A LAWYER IN THIS CASE?

You are free to discuss this Settlement with anyone of your choosing. Plaintiffs and the proposed Settlement Class Members are represented by Plaintiffs' counsel:

Patrick D. Toole, Esq.
Erin T. Huntington, Esq.
Lawrence J.H. Liu, Esq.
**WANGER JONES HELSLEY PC**
265 E. River Park Cir., Suite 310
Fresno, CA 93720
Telephone: (559) 233-4800
Facsimile: (559) 233-9330

Charles Swanston, Esq.
**FITZPATRICK, SPINI & SWANSTON**
555 S. Main Street
Salinas, California 93901
Telephone: (831) 755-1311
Facsimile: (831) 755-1319

Defendant PG&E is represented by:

**LITTLER MENDELSON, P.C.**
Joshua D. Kienitz, Esq.
Aurelio J. Perez, Esq.
333 Bush St., 34th Floor
San Francisco, California 94104
Telephone: (415) 433-1940
Facsimile: (415) 399-8490

Defendant IBEW Local 1245 is represented by:

**LEONARD CARDER, LLP**
Philip Monrad, Esq.
Paul Schwartz, Esq.
1330 Broadway, Suite 1450
Oakland, CA 94612
Telephone: (510) 272-0169
Facsimile: (510) 272-0174

**IBEW LOCAL UNION 1245**
Alex Pacheco, Esq.
30 Orange Tree Circle
Vacaville, CA 95687
Telephone: (707) 452-2751
Facsimile: (707) 452-2701

## 9.    WHEN WILL I KNOW WHAT GROUP I FALL INTO?

Placement in the Labor Code Subclass is determined according to whether you received a retroactive wage adjustment (also known as an "Exhibit A Payout") in December 2014 or May 2015. If you are one of the 137 SR Is who did receive this adjustment, then you are already in the Labor Code Subclass, and there is nothing further for you to do at this time about your placement in this Subclass.

As mentioned above, placement in the Qualifying and Non-Qualifying Subclasses is determined by your resumes and other hiring information provided by PG&E, and by your responses to the attached Questionnaire. As a result, final placement in either of the subclasses will not be determined until the deadline for submitting Questionnaire responses has passed. **The deadline to return Questionnaires is May 10, 2018.**

All Questionnaire responses postmarked on or before that date will be reviewed and Settlement Class Members will be placed, by Plaintiffs' counsel, in either the Qualifying or Non-Qualifying Groups. All determinations about which subclass a member will be placed into are final. Once placements are made, a second notice will be sent to all Settlement Class Members informing them of the estimated amount of their individual monetary recovery from the Net Settlement Fund. At that time, Settlement Class Members wishing to do so will have the

opportunity to request exclusion from the settlement ("opt out") or object to the Settlement. This process will be further explained in the Second Notice that will be sent in approximately May 2018.

**To ensure accurate placement into Qualifying and Non-Qualifying Subclasses, you are urged to fill out, sign and return the attached Questionnaire as soon as possible, but no later than May 10, 2018.**

# GREER, et al. v. PG&E, et al. QUESTIONNAIRE

"Directly related clerical job experience" is defined in Pre-Review Committee Decision 21052 (a complet copy of "PRC 21052" is attached to this Questionnaire, for your review, as Exhibit "A"), as:

> Customer service work in a call center environment where the nature of the work and complexity of the billing, systems, and rules is comparable to that at a PG&E Contact Center. Such work experience would need to include identifying and resolving customer inquiries on all phases of customer service (i.e. service billing and credit).

In order to qualify, you must have at least 18 months of experience as defined above. In addition, any qualifying experience must be work that: (1) is not prior to a five year break in employment; (2) was not work in retail sales; (3) was not work as a bank teller; and (4) was neither part-time employment, an internship, nor work as a temporary employee.

However, all 18 months of qualifying experience do not have to come from the same job. You can add qualifying experiences from different jobs together to meet the 18 month threshold. The purpose of this Questionnaire is to provide you with an opportunity to describe any and all prior experience which you believe constitutes "directly related clerical job experience," as defined above, and provide any documents (prior job description, performance reviews, etc.) you believe assist with the evaluation your work experiences.

**PRIOR TO BEING HIRED INTO THE SR-1 CLASSIFICATION AT PG&E, HAD YOU EVER WORKED IN A CALL CENTER ENVIRONMENT? IF SO, PLEASE LIST EACH JOB THAT YOU WORKED IN A CALL CENTER ENVIRONMENT BY IDENTIFYING THE NAME OF THE EMPLOYER, JOB TITLE(S) AND DATES OF EMPLOYMENT (*YOU MUST EXCLUDE ANY EXPERIENCE THAT (1) WAS ACQUIRED PRIOR TO A FIVE-YEAR BREAK IN EMPLOYMENT; (2) CONSISTED OF RETAIL SALES WORK; (3) WAS ACQUIRED WHILE WORKING AS A BANK TELLER; (4) WAS ACQUIRED IN A PART-TIME POSITION (5) WAS ACQUIRED WHILE WORKING AN INTERNSHIP; OR (6) WAS ACQUIRED WHILE WORKING AS A TEMPORARY EMPLOYEE*) (YOU MAY ATTACH ADDITIONAL SHEETS AS NEEDED).**

1. Employer: _____  Position Title: _____

Date Employment in This Position Began: _____  Date Employment in This Position Ended: _____

2. Employer: _____  Position Title: _____

Date Employment in This Position Began: _____  Date Employment in This Position Ended: _____

3. Employer: _____ Position Title: _____

Date Employment in This Position Began: _____ Date Employment in This Position Ended:

4. Employer: _____ Position Title: _____

Date Employment in This Position Began: _____ Date Employment in This Position Ended:

5. Employer: _____ Position Title: _____

Date Employment in This Position Began: _____ Date Employment in This Position Ended:

1. **FOR EACH JOB LISTED IN RESPONSE TO QUESTION 1, PLEASE DESCRIBE WHY THE DUTIES OF THAT POSITION QUALIFY AS "DIRECTLY RELATED CLERICAL JOB EXPERIENCE," AS DEFINED IN PRC 21052 (QUOTED ABOVE).**

1. _____

_____

2. _____

_____

3. _____

_____

4. _____

_____

5. _____

_____


I, _____, declare under penalty of perjury under

the laws of the United States of America that the foregoing is true and correct.

Executed this _____ day of _____, 2018, at _____, California.


_____

_____
(print name)

EXHIBIT
"B"

## SECOND AND FINAL NOTICE
## OF PROPOSED CLASS ACTION SETTLEMENT

**Attention: JOHN DOE**
**INSERT ADDRESS**

**Your estimated payment from this settlement is $_____. This amount was based on your:**
**_____ California Labor Code 226 claim against PG&E based upon inaccurate wage statement allegations;**
**_____ Your prior "directly related clerical job experience," and, if applicable, number of weeks in the Service Representative I classification**

**TO: ALL CURRENT AND FORMER SERVICE REPRESENTATIVE I EMPLOYEES HIRED INTO A PACIFIC GAS AND ELECTRIC CALL CENTER IN CALIFORNIA BETWEEN JANUARY 1, 2011 AND JUNE 30, 2015**

PLEASE READ THIS NOTICE CAREFULLY. YOUR RIGHTS MAY BE AFFECTED. YOU MAY BE ENTITLED TO RECEIVE MONEY FROM THIS PROPOSED SETTLEMENT.

This Notice is Court Approved. This is not a solicitation from an attorney.

### 1. WHY DID I GET THIS NOTICE?

On or about ____ you were sent a First Notice of Settlement in this case. That Notice informed you of a class action settlement enclosed a Questionnaire and asked to you complete and return the Questionnaire. You received this Notice because the review of the Questionnaires has been completed and important information about the results affect your rights under the proposed settlement (the "Settlement") that has been reached in the class action lawsuit entitled *Greer, et al. v. Pacific Gas and Electric Company, et al.*, United States District Court, Eastern District of California, Fresno Division, Case No. 1:15-CV-01066-EPG (the "Lawsuit"). This Notice explains the nature of the Lawsuit, the general terms of the proposed Settlement, your legal rights, and specific steps you must take to protect your rights.

## 2. WHAT IS THIS LAWSUIT ABOUT?

Plaintiffs Becky Greer, Timothy Budnik, Ian Carty, Haley Markwith, Maria Garcia Pesina, and Rosario Saenz ("Plaintiffs") filed the Lawsuit alleging that Pacific Gas and Electric Company ("PG&E") failed to pay them wages in accordance with the Collective Bargaining Agreement ("CBA"). Under the terms of the CBA, Service Representative I ("SR I") employees who at the time of hire had at least 18 months of "directly related clerical job experience" were entitled to be paid at a wage rate higher than the entry level rate.

Plaintiffs brought this lawsuit as a class action on behalf of all current and former SR Is that were hired into a PG&E California call center between January 1, 2011 and June 30, 2015. Plaintiffs contend that PG&E both adopted new policies inconsistent with the requirements of the CBA and/ misinterpreted the phrase "directly related clerical job experience" in order to place most SR Is at the entry level wage rate, even if their prior work experience entitled them to be paid at a higher rate. Plaintiffs also allege that, as a result, PG&E failed to pay workers all wages owed and provided them with wage statements that stated an inaccurate amount for wages earned.

PG&E denies these allegations and is prepared to defend the action to the fullest extent of the law.

The Court has not yet made any findings of liability as to PG&E or IBEW Local 1245.

## 3. WHAT IS A CLASS ACTION?

In a class action lawsuit, one or more persons sue on behalf of a group of people who have similar claims. Here, Becky Greer, Timothy Budnik, Ian Carty, Haley Markwith, Maria Garcia Pesina, and Rosario Saenz are the Class Representatives in the Lawsuit, and, as such, are asserting the above claims on behalf of themselves and the class. PG&E and IBEW Local 1245 are the Defendants. A class action allows the Court to resolve the claims of all the class members at the same time in a single proceeding. A class member is bound by the determination or judgment entered in the case, whether the class wins or loses, and may not thereafter file his or her own lawsuit on the same claims that were decided in the class action. A class action allows one court to resolve all of the issues in a lawsuit for all the class members who choose not to exclude themselves from the class.

## 4. WHO IS INCLUDED IN THE SETTLEMENT CLASS?

Anyone who was hired into the SR I classification between January 1, 2011 and June 30, 2015 and placed upon hire in a California Call Center. All such individuals are included in the class even if they are not currently employed at PG&E or no longer employed in the SR I classification.

## 5.    WHAT ARE THE TERMS OF THE CLASS SETTLEMENT?

The Settlement will resolve the Settlement Class Members' claims for: (1) Breach of Contract against PG&E; (2) Violation of California Labor Code section 216 by PG&E; (3) Violation of California Labor Code sections 226(a), 1174 and 1175 by PG&E; (4) Promissory Fraud by PG&E; (5) Promissory Estoppel by PG&E; (6) Violation of California Business and Professions Code section 17200 *et seq.* by PG&E; and (7) Breach of the Duty of Fair Representation by IBEW Local 1245.

The Settlement represents a compromise of sharply disputed claims. Nothing in the Settlement may be used as an admission by either PG&E or IBEW Local 1245 that the claims in the Lawsuit have merit or that they have any liability to Plaintiffs or the Class Members on those claims.

The Parties have agreed to settle the case for a total of $6,000,000.00 (Six Million Dollars) ("Total Settlement Amount"). Under the terms of the Settlement, the following payments have been agreed: (1) attorneys' fees not to exceed 33.33% of the Total Settlement Amount; (2) all litigation expenses incurred by Class Counsel, in an amount to be approved by the Court, not to exceed $275,000; (3) a separate service payment to each of the Class Representatives for their services in filing and participating in the Lawsuit, in a total amount not to exceed $35,000; and (4) $29,000 for administration settlement costs. The amount of money remaining after these payments is the amount that will be distributed to the individuals who are participating Settlement Class Members. This amount is known as the "Net Settlement Fund ."

The allocation of the Net Settlement Fund, and the estimated payment for each Settlement Class Member, has been determined by the placement of the Settlement Class Member into one of three groups: (1) a group consisting of 137 Settlement Class Members who received retroactive wage adjustments in December 2014 or May 2015 (the "Labor Code Subclass"); (2) a second group consisting of _____ Settlement Class Members with 18 months of prior directly related clerical job experience (the "Qualifying Group Subclass"); and (3) a third group consisting of _____ Settlement Class Members who have not demonstrated 18 months of prior directly related clerical job experience (the "Non-Qualifying Group Subclass") in their response. Placement of Class Members in the Qualifying Group Subclass and the Non-Qualifying Group Subclass was determined by Plaintiffs' counsel.

Members of the Labor Code Subclass will each receive a one-time payment of $250. Members of the Non-Qualifying Group Subclass will each receive a one-time payment of $250. The remaining balance of the Net Settlement Fund is divided amount members of the Qualifying Group Subclass. No Settlement Class member will receive an elevated wage rate going forward, nor will any Settlement Class member receive any seniority benefits as a result of the Settlement.

## 6.    HOW DOES THE SETTLEMENT AFFECT MY RIGHTS?

If the final approval of the settlement is granted, the Court will enter a Final Order and Judgment. **If you fail to timely request to be excluded from the Settlement, you will be bound by that order and judgment and you will release the following claims to the extent they are alleged in the Third Amended Complaint, with the release applying to such claim that arose during the Class Period, and you will be barred from prosecuting any and all such claims against PG&E):** 1) Breach of Contract; (2) Violation of California Labor Code section 216; (3) Violation of California Labor Code sections 226(a), 1174 and 1175; (4) Promissory Fraud; (5) Promissory Estoppel; (6) Violation of California Business and Professions Code section 17200 *et seq*. **You will also release the following claims against IBEW Local 1245, to the extent such claims are pleaded in the Third Amended Complaint, applying to the claims that arose during the Class Period, and will be barred from prosecuting any and all such claims against IBEW Local 1245:** (1) Breach of the Duty of Fair Representation. Collectively, these are the "Released Claims."

The Judgment will resolve the claims to the extent provided in the Settlement Agreement and will permanently bar all Class Members who do not request to be excluded from prosecuting such claims against PG&E and/or IBEW Local 1245. You will remain bound by the Settlement, and you cannot sue, continue to sue or be part of any other lawsuit about the Released Claims. All of the Court's orders will apply to you and legally bind you. However, you may exclude yourself from this Settlement.

Further details concerning the matters explained in the paragraphs above can be found in the Stipulation of Settlement and Release, which can be viewed at the United States District Court for the Eastern District of California, 2500 Tulare Street, Fresno, CA 93721, during normal business hours, and by contacting Plaintiffs' counsel at the address listed below.

## 7.    WHAT DO I NEED TO DO TO RECEIVE A SETTLEMENT PAYMENT?

You do not need to do anything to participate in the settlement. There was a hearing on March 23, 2018, in the United States District Court for the Eastern District of California, after which Judge Erica P. Grosjean preliminarily approved the Settlement of this Lawsuit. After that hearing, all Settlement Class Members received a Notice and a Questionnaire. Settlement Class Members were instructed to fill out the Questionnaire and return them by May 10, 2018. All Questionnaires have been received and all available information has been reviewed to place Settlement Class Members in the appropriate Subclasses.

You have been determined, in the opinion of Plaintiffs' counsel, to properly belong to the _____ Subclass. The estimated amount of the settlement payment you shall receive is _____, [based upon ___ payperiods worked as a Call Center SR I OR based on your placement in the Non-Qualifying Subclass.]

You will receive your settlement payment from this Settlement approximately forty (40) days after the Court's Order on the Final Approval, if the Settlement is approved and no appeals

are filed. Class Counsel, appointed and approved by the Court for settlement purposes only, will represent you.

**It is your responsibility to keep a current address on file with the Claims Administrator to ensure receipt of your settlement payment. If you fail to keep your address current, you may not receive your settlement payment.**

## 8. WHAT IF I DON'T WANT TO PARTICIPATE IN THE SETTLEMENT?

You have the right to request exclusion from the Settlement. To do so, you must submit a written request for exclusion which must state that you wish to be excluded, and (1) must contain the name (and former names, if any), current address, and telephone number of the Putative Class Member requesting exclusion; (2) must be signed by the Putative Class Member; (3) must be postmarked on or before _____ and returned to the Claims Administrator at the following address: _____.

If you timely request to be excluded from the settlement, you will not receive any payment under the Settlement and will not be bound by anything that happens in this Lawsuit. Unless you timely request to be excluded from the Settlement, you will be bound by the judgment upon final approval of the Settlement, including the Release described in this Notice. Class Counsel will not represent your interests if you request to be excluded.

## 9. WHAT IF I WANT TO OBJECT TO THIS SETTLEMENT?

Provided that you do not request to be excluded from the Settlement, you can object to any of the terms of the Settlement before the Final Approval Hearing. Failure to take the steps below will be deemed a waiver of your objections. If the Court rejects your objection, you will still be bound by the terms of the Settlement, but you will also receive a monetary award. To object, you must file your written objection and a notice of intention to appear at the Final Approval Hearing with the Clerk of the Court and mail it to the Claims Administrator and Counsel at the addresses listed below by _____, 2018, no later than thirty (30) calendar days before the Final Approval Hearing.

COURT:
Clerk of the Court
United States District Court,
Eastern District of California
Fresno Division
2500 Tulare Street
Fresno, CA 93721

PG&E'S COUNSEL:

**LITTLER MENDELSON, P.C.**
Joshua D. Kienitz, Esq.
Aurelio J. Perez, Esq.
333 Bush St., 34th Floor
San Francisco, California 94104
Telephone: (415) 433-1940
Facsimile: (415) 399-8490

PLAINTIFFS' COUNSEL:
Patrick D. Toole, Esq.
Erin T. Huntington, Esq.
Lawrence J.H. Liu, Esq.
**WANGER JONES HELSLEY PC**
265 E. River Park Cir., Suite 310

Fresno, CA 93720
Telephone: (559) 233-4800
Facsimile: (559) 233-9330

Charles Swanston, Esq.
**FITZPATRICK, SPINI &**
**SWANSTON**
555 S. Main Street
Salinas, California 93901
Telephone: (831) 755-1311
Facsimile: (831) 755-1319

IBEW LOCAL 1245's
COUNSEL:
Philip Monrad, Esq.
Paul Schwartz, Esq.
**LEONARD CARDER, LLP**
1330 Broadway, Suite 1450
Oakland, CA 94612
Telephone: (510) 272-0169
Facsimile: (510) 272-0174

Alex Pacheco, Esq.
**IBEW LOCAL UNION 1245**
30 Orange Tree Circle
Vacaville, CA 95687
Telephone: (707) 452-2751
Facsimile: (707) 452-2701

Any written objections shall state each specific reason for your objection and any legal support for each objection. Your objection and the envelope containing the objection must state: "Attention: *Greer, et al. v. Pacific Gas and Electric Company, et al.*, United States District Court, Eastern District of California, Case No. 1:15-CV-01066-EPG." Your objection shall also state your full name, address, date of birth, last four digits of your Social Security number, and the dates of your employment as an SR I at a PG&E Call Center. You will then have the right to address the Court at the Final Approval Hearing scheduled for _____, 2018. You may appear personally or by telephone at the Final Approval Hearing, or through your own counsel, paid for at your own expense. Failure to file a written objection will not prevent you from objecting at the hearing, however, the Court may choose not to address the objection if a written objection is not timely filed as required.

**IF YOU DO NOT TIMELY MAKE YOUR OBJECTION, YOU WILL BE DEEMED TO HAVE WAIVED ALL OBJECTIONS AND WILL NOT BE ENTITLED TO SPEAK AT THE FINAL APPROVAL HEARING.**

**10.    WHAT IF I DO NOT EXCLUDE MYSELF FROM THIS SETTLEMENT?**

The Settlement, if finally approved by the Court, will bind all Settlement Class Members who do not request to be excluded from the Settlement. Final approval of the Settlement will bar any Settlement Class Member who does not request to be excluded from the Settlement from hereafter initiating a lawsuit or proceeding regarding the Released Claims.

**11.    WHAT IS THE FINAL APPROVAL HEARING?**

The Court has preliminarily approved the Settlement and will hold a hearing to decide whether to give final approval to the Settlement. The purpose of the Final Approval Hearing will be for the Court to determine whether the Settlement should be approved as fair, reasonable, adequate, and in the best interests of the Class; to consider the award of attorneys' fees and expenses to Class Counsel; and to consider the request for service awards to the Named Plaintiffs.

**12.    WHERE AND WHEN IS THE FINAL APPROVAL HEARING?**

The Court will hold the Final Approval Hearing on _____ at _____, in Department 10, 6th Floor of the United States District Court, Eastern District of California, Fresno Division, 2500 Tulare Street, Fresno, CA 93721 ("Final Approval Hearing").

The Final Approval Hearing may be continued without further notice to the Class Members. It is not necessary for you to appear at the Final Approval Hearing unless you have timely filed an objection with the Court. However, you have the right to attend the Final Approval Hearing and be represented by your own counsel at your own expense. If you plan to attend the Final Approval Hearing, you may contact Class Counsel to confirm the date and time. If the Settlement is not approved by the Court or does not become final for some reason, the Lawsuit may continue.

### 13.    MAY I SPEAK AT THE FINAL APPROVAL HEARING?

At the hearing, the Court will be available to hear any objections and arguments concerning the Settlement. You may attend, but you do not have to attend. You will be entitled to speak at the Final Approval Hearing only if (a) you have timely served and filed an Objection, and (b) followed the procedures set forth in Section 9 above for notifying the Court and the parties that you intend to speak at the Final Approval Hearing.

If you have requested exclusion from the Settlement, however, you may not speak at the Final Approval Hearing.

### 14.    HOW DO I GET MORE INFORMATION?

To see a copy of the Stipulation of Settlement and Release (which defines the capitalized terms used in this Notice and provides a brief summary of what has happened in the Lawsuit), the Court's Preliminary Approval Order, the operative Complaint filed in the Lawsuit, and other filed documents related to the Lawsuit and this Settlement, you may view all such files at the Clerk's office at the United States District Court for the Eastern District of California, 2500 Tulare Street, Fresno, CA 93721, during normal business hours.

IF YOU NEED MORE INFORMATION OR HAVE ANY QUESTIONS, you may contact the Claims Administrator at the address and telephone number listed below, toll free. Please refer to the PG&E Class Action Settlement.

> PG&E Claims Administrator
> INSERT ADDRESS

You may also contact the attorneys for the Class, whose names and contact information is listed above.

### 15.    WHAT IF MY INFORMATION CHANGES?

If, after you receive this Notice, you change your postal address or telephone number, it is your responsibility to inform the Claims Administrator of your updated information.

**DO NOT ADDRESS ANY QUESTIONS ABOUT THE SETTLEMENT OR THE LITIGATION TO THE CLERK OF THE COURT OR THE JUDGE**

# EXHIBIT
## "2"



| | | | |
|---|---|---|---|
| Estimate #: | 8330V2 | Prepared By: | **Mike Sutherland** |
| Estimate Date: | 2/4/2018 | Direct Dial #: | 321.223.5067 |
| Expiration Date: | 6/30/2014 | Email: | msutherland@simpluris.com |

| | | | |
|---|---|---|---|
| _Plaintiff Attorney_ | | _Defense Attorney_ | |
| Attorney/Client: | | Attorney/Client: | Joshua Klientz |
| Firm: | | Firm: | Littler (SF) |
| Email: | | Email: | |

**Case Name:  Greer, et al. v. PG&E and IBEW; Opt Out Settlement**

| | |
|---|---|
| **_Anticipated Total Cost_** | **$27,400.10** |
| **_Discount Given_** | **$738.00** |
| **Estimated Fee** | **$26,662** |
| **Capped Fee** | **$29,000** |

**Notes:**

1) Estimated administration fees assume that Simpluris will receive the data in a Single Excel file and that there are no substantial changes to class size

2) All Notification and Case Setup fees will be paid to Simpluris prior to mailing.

| | | | |
|---|---|---|---|
| Total Possible Class Size: | 925 | Undeliverable Rate: | 25% |
| Response Rate: | 2% | Call Center: | Yes |
| Length of Claims Period: | 60 | Fund Distribution: | Simpluris/CA Only |
| Mailing Document Language: | English | Re-Distribution: | One |
| Reminder Letter/Postcard: | No | Wage Reporting: | CA Only |

## Case Setup

### Data Compilation - Develop Case Specific Response Tracking - Error Reports

| Category | Unit Value | # of Units | Total | |
|---|---|---|---|---|
| Project Manager - Case Setup | $75.00 | 8 | | $600.00 |
| Database Manager = Initial Data Analysis | $125.00 | 8 | | $1,000.00 |
| | | | Total | $1,600.00 |

## Notification

### Mailing Notice Pack -4 pg Notice,  - Printed Double Sided (English)

| Category | Unit Value | # of Units | Total | |
|---|---|---|---|---|
| Mailing Notice Pack One | $1.00 | 925 | | $925.00 |
| Postage | $0.49 | 925 | | $453.25 |
| NCOA/CASS/LACS | $50.00 | 1 | | $50.00 |
| Undeliverable Processing | $0.50 | 231 | | $115.63 |
| Skip Tracing | $2.00 | 231 | | $462.50 |
| Re-Mail Notice Pack | $1.50 | 231 | | $346.88 |
| Postage | $0.49 | 231 | | $113.31 |
| Mailing Notice Pack Number Two | $1.00 | 925 | | $925.00 |
| Postage | $0.49 | 925 | | $453.25 |
| NCOA/CASS/LACS | $50.00 | 1 | | $50.00 |
| Undeliverable Processing | $0.50 | 46 | | $23.13 |
| Skip Tracing | $2.00 | 46 | | $92.50 |
| Re-Mail Notice Pack | $1.50 | 46 | | $69.38 |
| Postage | $0.49 | 46 | | $22.66 |
| Clerical | $50.00 | 4 | | $200.00 |
| | | | Total | $4,302.48 |

## Call Center

### Establish Case Specific Toll Free Number

| Category | Unit Value | # of Units | Total | |
|---|---|---|---|---|
| Customer Service Reps/Call Center Support | $75.00 | 12 | | $900.00 |
| | | | Total | $900.00 |

Confidential and Proprietary



**simpluris**

Class Action Settlement Administration

800-779-2104 • www.simpluris.com
3176 Pullman Street, Suite 123
Costa Mesa, CA 92626

## Administration

Process Mailed in Responses. (1) dispute the number of workweeks credited (through the normal process); or (2) submit documentation that would demonstrate entitlement to a higher allocation. Please assume that they would simply send the information back to Simpluris, and Simpluris would email a copy of the entire submission (for that individual) to counsel for all parties, after anonymizing it to include only the EE ID number.

Questionnaire processing. Class members will have opportunity to submit response to questionnaire. Sent back to Simpluris. Simpluris will "anonymize" the response before sending it to counsel. "Anonymize" means scrubbing all name and address information and stamping it instead with the EE ID number for identification purposes.

| Category | Unit Value | # of Units | Total |
|---|---|---|---|
| Database Manager | $125.00 | 4 | $500.00 |
| Disputed/Deficient Claims - One Cure Letter | $2.50 | 46 | $115.63 |
| Questionnaire Processing and Administration | $5.00 | 93 | $462.50 |
| Opt Out Processing | $2.50 | 19 | $46.25 |
| SSN Verification | $75.00 | 2 | $150.00 |
| Data Entry | $50.00 | 15 | $750.00 |
| Project Manager | $125.00 | 15 | $1,875.00 |
| Declaration from Settlement Administrator | $500.00 | 1 | $500.00 |
| Weekly Reporting to Counsel | WAIVED | 12 Wks of Reporting | $0.00 |
| | | Total | $4,399.38 |

## Distribution

Setup a Disbursement Account

Print & Mail Checks to Class Members- W2s/1099's – File Reports with Appropriate Federal & State Taxing Authorities (CA)

Account Management & Reconciliation. Entire fund ($6 million) to be held in interest-bearing account. Opt-Out retention fund. Some of the amount allocated to opt-outs will be held onto by Simpluris for 150 days after final approval. If any Opt-Out changes his/her mind during this 150-day period, or if any Opt-Out files his/her own claim during this 150-day period, Simpluris would be instructed to send the check (for the previously allocated amount) to that same opt-out.
Second distribution (to all those who do not opt-out) after the 150-day period of pro rata share of settlement checks.

| Category | Unit Value | # of Units | Total |
|---|---|---|---|
| Disbursement Data Preparation | $125.00 | 10 | $1,250.00 |
| Disbursement Manager - Data Validation | $75.00 | 2 | $150.00 |
| Setup Banking Account/QSF | $300.00 | 1 | $300.00 |
| Print & Mail-Check W2s/1099s-Two Distributions | $4.00 | 1850 | $7,400.00 |
| Postage | $0.49 | 1850 | $906.50 |
| Process Returned Checks | $0.50 | 19 | $9.25 |
| Remail Checks | $5.00 | 19 | $92.50 |
| QSF Account Reconciliation | $500.00 | 1 | $500.00 |
| Individual Federal/State Tax Reporting | $500.00 | 1 | $500.00 |
| QSF Reporting/Declaration | $500.00 | 1 | $500.00 |
| QSF Annual Tax Preparation Fee | $1,000.00 | 1 | $1,000.00 |
| Reissuing Checks/Mailing | $5.00 | 4 | $20.00 |
| Reissuing W2s/1099s | $5.00 | 4 | $20.00 |
| Opt Out Retention Fund Distributiion, Management | $1,000.00 | 1 | $1,000.00 |
| Responding to IRS, State, Agency Inquiries | $75.00 | 2 | $150.00 |
| Disbursement Manager | $125.00 | 12 | $1,500.00 |
| | | Total | $15,298.25 |

Confidential and Proprietary



## Case Wrap Up

| Category | Unit Value | # of Units | Total | |
|---|---|---|---|---|
| Send Final Reports to Counsel | | | | |
| Data Manager-Final Reporting | $125.00 | 3 | | $375.00 |
| Clerical-Clean Up Any Misc | $50.00 | 3 | | $150.00 |
| Project Manager-Wrap-up Final Issues | $125.00 | 3 | | $375.00 |
| | | | Total | $900.00 |

**Total Case Costs**          **$27,400.10**

Confidential and Proprietary



**800-779-2104 • www.simpluris.com**
**3176 Pullman Street, Suite 123**
**Costa Mesa, CA 92626**

All administration services to be provided by Simpluris to Client, are provided subject to the following terms and conditions:

**1.** **Services**. Simpluris agrees to provide Client those services set forth in the Bid (the "Services") to which these terms and conditions are attached and which has been provided to Client. As compensation for such Services, Client agrees to pay the fees for Services outlined in the Bid. However, Client such fees for Services are estimated based on the requirements provided by Client and actual fees charged by Simpluris may be greater or less than such estimate and Client will be responsible for the payment of all such fees.

**2.** **Billing and Payment**. Simpluris will invoice Client on a regular basis unless a specific timeframe is otherwise set forth in the Bid. Client shall pay all invoices within 30 days of receipt. Amounts unpaid after thirty (30) days are subject to a service charge at the rate of 1.5% per month or, if less, the highest rate permitted by law. Services are not provided on a contingency basis and Client shall remain liable to Simpluris for all fees for the Services, regardless of any court decisions, and/or actions by the parties, including disapproval or withdrawal of a settlement.

**3.** **Retention of Documents**. Unless directed otherwise in writing by the Client, Simpluris will destroy all undeliverable mail (except for undeliverable checks) on the date that it is processed and retained in Simpluris' system. Simpluris will maintain records to establish that the subject mail is undeliverable. Simpluris will retain undeliverable checks until the Qualified Settlement Fund is closed. Simpluris will also retain all other class member and putative class member correspondence (including without limitation, claims forms and opt out forms) for one year after final distribution of funds or benefits, or until the date that the disposition of the case is no longer subject to appeal or review, whichever is later. Lastly, Simpluris will retain bank & tax documents for such period of time as it determines is required to maintain compliance with various federal and state requirements.

**4.** **Limitation of Liability; Disclaimer of Warranties**. Simpluris warrants that it will perform the Services diligently, with competence and reasonable care. Simpluris' only obligation will be to correct any non-conformance with the foregoing warranty. In no event will Simpluris be liable for any lost profits/opportunities, business interruption or delay or, special, consequential , or incidental damages incurred by Client relating to the performance of the Services, regardless of whether Client's claim is for breach of contract, tort (including negligence and strict liability) or otherwise. Under no circumstances will Simpluris be liable to Client for any claims, losses, costs, penalties, fines, judgment or damages, including court costs and reasonable attorney's fees (collectively, "Losses"), whether direct or indirect, arising out of, related to, or in connection with Services in an amount in excess of the total fees charged or chargeable to Client for the particular portion of the Services affected by Simpluris' omission or error. THE WARRANTIES SET FORTH IN THIS SECTION ARE EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES, EXPRESS, IMPLIED OR STATUTORY, INCLUDING WITHOUT LIMITATION ANY IMPLIED WARRANTY OF MERCHANTABILITY OR OF FITNESS FOR A PARTICULAR PURPOSE.

**5.** **Force Majeure**. To the extent performance by Simpluris of any of its obligations hereunder is substantially prevented by reason of any act of God or because of any other matter beyond Simpluris' reasonable control, then such performance shall be excused and this Agreement, at Simpluris' option, be deemed suspended during the continuation of such condition and for a reasonable time thereafter.

**6.** **Rights in Data**. Client agrees that it will not obtain, nor does Simpluris convey, any rights of ownership in the programs, system data, or materials provided or used by Simpluris in the performance of the Services.

**7.** **Electronic Communications**. During the provision of the Services the parties may wish to communicate electronically with each other at a business e-mail address. However, the electronic transmission of information cannot be guaranteed to be secure or error free and such information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete or otherwise be adversely affected or unsafe to use. Accordingly, each party agrees to use commercially reasonable procedures to check for the then most commonly known viruses and to check the integrity of data before sending information to the other electronically, but each party recognizes that such procedures cannot be a guarantee that transmissions will be virus free. It remains the responsibility of the party receiving an electronic communication from the other to carry out a virus check on any attachments before launching any documents whether received on disk or otherwise.

**8.** **Notice**. Any notice required or permitted hereunder shall be in writing and shall be delivered personally, by, or sent by registered mail, postage prepaid, or overnight courier and shall be deemed given when so delivered personally, or, if mailed, five days after the date of deposit in United States mail, or, if sent by courier, one business day after delivery to such courier service. Notice should be addressed to an officer or principal of Client and Simpluris, as the case may be.

**9.** **Waiver**. Failure or delay on the part of a party to exercise any right, power or privilege hereunder shall not operate as a waiver thereof or any of other subject, right, power or privilege.

**10.** **Termination**. Client may terminate the Services at anytime upon 30 days prior written notice to Simpluris. Termination of Services shall in no event relieve Client of its obligation make any payments due and payable to Simpluris in respect of Services rendered up to the effective date of Termination. Simpluris may terminate this Agreement (i) for any reason upon no less than 90 days prior written notice to the Client; or (ii) upon 15 calendar days' prior written notice, if the Client is not current in payment of fees.

**11.** **Jurisdiction**. The parties hereto irrevocably and unconditionally submit to the jurisdiction of the Court of the applicable case for purposes of any suit, action or proceeding to enforce any provision of, or based on any right arising out of, this Agreement. The parties hereto hereby irrevocably and unconditionally waive any objection to the laying of venue of any such suit, action or proceeding in such Court.

**12.** **Survival**. Any remedies for breach of this Agreement, this Section and the following Sections will survive any expiration or termination of this Agreement: Section 4 - Limitation of Liability; Disclaimer of Warranties, Section 6 – Rights in Data, and Section 12- Jurisdiction, 14 -Confidentiality, and Section 15 – Indemnification.

**13.** **Entire Agreement**. These Terms and Conditions and the proposal embody the entire agreement between the parties with respect to the subject matter hereof, and cancels and supersedes all prior negotiations, representations, and agreements related thereto, either written or oral, except to the extent they are expressly incorporated herein. No changes in, additions to, or waivers of, the terms and conditions set forth herein will be binding upon any party, unless approved in writing by such party's authorized representative.

**14. Confidentiality**. Simpluris maintains reasonable and appropriate safeguards to protect the confidentiality and security of data provided by Client to Simpluris in connection with the Services. If, pursuant to a court order or other proceeding, a third party requests that Simpluris to disclose any confidential data provided by or for Client, Simpluris will promptly notify the Client unless prohibited by applicable law. Client will then have the option to provide Simpluris with qualified legal representation at Client's expense to defend against such request. If, pursuant to a court order, Simpluris is required to disclose data, produce documents, or otherwise act in contravention of the obligation to maintain confidentiality set forth in these terms and conditions, Simpluris will not be liable for breach of said obligation.

**15.** **Indemnification**. Client will indemnify and hold Simpluris (and the officers, employees, affiliates and agents harmless against any Losses incurred by Simpluris, arising out of, in connection with , or related to (i) any breach of the terms by Client; (ii) the processing and handling of any payment by Simpluris in accordance with Client's instructions, including without limitation, the imposition of any stop payment or void payment on any check or the wrongful dishonor of a check by Simpluris pursuant to Client's instructions.

**16.** **Severability**. If any term or condition or provisions of this Agreement shall be held to be invalid, illegal, unenforceable or in conflict with the law of any jurisdiction, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

**17.** **Database Administration**. Simpluris' database administration for Client assumes that Client will provide complete data that includes all information required to send notifications and calculate and mail settlement payments. Data must be provided in a complete, consistent, standardized electronic format. Simpluris' standardized format is Microsoft Excel, however, Simpluris may accept other formats at its discretion. Further developments or enhancements to non-standardized data will be billed to Client by Simpluris on a time and materials basis according to Simpluris' Standard Rates.

*Confidential and Proprietary*





## Simpluris Security Summary – White Paper

Simpluris is committed to the security and overall protection of not only our data and information but our client's data and information, as well. As a demonstration of our commitment, we maintain SOC 2 Certification which requires strict adherence to policies and procedures surrounding information security, including processing and storage of confidential customer data. Simpluris supports a comprehensive, written Information Security Program that complies with all applicable laws and regulations (e.g. HIPAA, Gramm-Leach-Bliley Act, MA 201 CMR 17.00) and is designed to (a) ensure the security, privacy and confidentiality of Client and Class Member Information, (b) protect against any reasonably anticipated threats or hazards to the security or integrity of Client or Class Member Information, and (c) protect against unauthorized access to, use, deletion, or modification of Class Member Information. Simpluris has designated specific employees to be responsible for the administration of its Information Security Program. Also, Simpluris regularly and routinely monitors, tests, and updates our Information Security Program.

Simpluris uses Client and Class Member Information only for the purposes for which its' clients provide it, as described in any Agreements or Court Orders governing the provision of Simpluris' services in any particular case. Simpluris maintains a process for identifying, assessing, and mitigating the risks to Class Member Information in each relevant area of Simpluris' operations. At Simpluris, we continuously evaluate the effectiveness of the safeguards for controlling these risks to data and bank accounts. Simpluris restricts access to Class Member Information only to those employees, agents, or subcontractors who need to know the information to perform their jobs. Simpluris performs background checks of all its employees that will have access to Sensitive Personal Information, including a review of their references, employment eligibility, education, and criminal history to ensure they do not pose a risk to the security of Client or Class Member Information.

Simpluris adheres to the following industry best practices to safeguard its systems which process, store or transmit Client and Class Member Information:

- Identity and Access Management;
- Complex passwords are routinely and regularly changed;
- Role-based access control systems to limit individual    employee access to network applications and systems based on their particular job role and function;
- Data Loss Prevention and Intrusion Prevention System software at multiple layers to prevent from internal and external threats of data leaks, malicious activity, and policy violations
- Encryption of Class Member Information if transmitted over public or wireless networks (e.g., via email, FTP, the Internet, etc.);
- Implementation of a Secure File Transfer system (using SSL encryption) for transmitting documents back and forth to clients;
- Encryption of servers, portable media, laptops, desktops, smartphones, mobile devices, and new technologies that store Class Member Information;
- Complex password authentication for remote access to Company's networks;
- Upon hire and annually after that, training of all employees with access to Class Member Information, (including any agents, and subcontractors with access to Class Member Information) about their obligations to implement the Information Security Program;
- Strict disciplinary measures for employees who violate the Information Security Program;
- Preventing terminated employees from accessing Class Member Information;
- Appropriately configured and updated firewall, antivirus, and spyware software;
- Prompt application of vendor-recommended security patches and updates to systems and other applications to avoid any adverse impact on Class Member Information;
- Separation of Duties;
- Infrastructure and Physical Security;
- Business Continuity Planning;
- Disaster Recovery Planning