UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BECKY GREER, TIMOTHY C. BUDNIK, ROSARIO SAENZ, IAN CARTY, HALEY MARKWITH, and MARCIA GARCIA PESINA, individually and as class representatives, <br><br> Plaintiffs, <br><br> v. <br><br> PACIFIC GAS AND ELECTRIC COMPANY, IBEW LOCAL 1245, and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. 1:15-cv-01066-EPG <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR ORDER (1) CONDITIONALLY CERTIFYING THE SETTLEMENT CLASS; (2) PRELIMINARILY APPROVING THE CLASS ACTION SETTLEMENT; (3) APPOINTING PLAINTIFFS AS CLASS REPRESENTATIVES AND THEIR COUNSEL AS CLASS COUNSEL; (4) APPROVING IN PART AND REQUIRING CHANGES IN PART TO NOTICE PACKET; AND (5) SETTING A HEARING FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT <br><br> (ECF No. 238) |

## I.    INTRODUCTION

This matter came before the Court on March 23, 2018 for a motion hearing on Plaintiffs'

motion for an order (1) conditionally certifying the proposed Settlement Class; (2) preliminarily

approving the Joint Stipulation of Class Settlement; (3) appointing Plaintiffs as Class

Representatives and Plaintiffs' Counsel as Class Counsel; (4) approving and directing the mailing

of Settlement Notices pursuant to the proposed notice plan; and (5) scheduling a fairness hearing

for final approval of the Settlement. (ECF No. 238.)  Attorneys Patrick Toole, Erin Huntington,

and Charles Swanston appeared on behalf of Plaintiffs, attorney Aurelio Perez appeared on behalf of Defendant Pacific Gas and Electric Company ("PG&E"), and attorney Philip Monrad appeared on behalf Defendant IBEW Local 1245 ("IBEW"). Following the hearing, the court directed the parties to submit supplemental briefing on the pending motion by April 6, 2018, and the matter was taken under submission. (ECF No. 242.) The parties submitted a supplemental briefing on April 5-6, 2018. (ECF Nos. 248-50.)

For the reasons set forth below, the Court will grant Plaintiffs' unopposed motion for preliminary approval of class action settlement. However, for the reasons described below, the Court will require additional disclosures in the notice packet given to proposed class members.

## II.     BACKGROUND

On July 10, 2015, Plaintiffs Becky Greer, Timothy C. Budnik, Rosario Saenz and Ian Carty, as individuals and on behalf of themselves and all others similarly situated, filed suit against PG&E alleging various claims based on underpayment of wages for a purported class. (ECF No. 1). The case is now proceeding on the Third Amended Complaint ("3AC") on behalf of Plaintiff class representatives Timothy C. Budnik, Ian Carty, Becky Greer, Haley Markwith, Maria Garcia Pesina, and Rosario Saenz and the proposed class. (3AC, ECF No. 105). At the time of filing on November 2, 2016, the 3AC consisted of seven causes of action (Counts 1-7) against PG&E, and one claim (Count 8) against IBEW, as follows:

1. Count 1: Breach of Contract;
2. Count 2: Violation of California Labor Code § 216;
3. Count 3: Knowing and Intentional Failure to Comply with Itemized Employee Wage Statement Provisions in Violation of California Labor Code §§ 226(a), 1174, and 1175;
4. Count 4: Promissory Fraud in Violation of California Civil Code § 1572(4);
5. Count 5: Promissory Estoppel;
6. Count 6: Violation of California Business and Professions Code § 17200 *et seq*.
7. Count 7: Violation of California Business and Professions Code § 17500 *et seq*.
8. Count 8: (in the alternative) Breach of Duty of Fair Representation, 29 U.S.C. § 185.

(*Id*.) The parties stipulated on December 21, 2016 to dismiss the individual claims of Monica Muldrow against PG&E and IBEW. (ECF No. 121). In the same stipulation, the parties agreed to dismiss Count 7, violation of California Business and Professions Code § 17500 *et seq*. against

Defendant PG&E. (*Id.*)  Thus, the case now proceeds on Counts 1-6 against PG&E and Count 8 against IBEW.

The parties briefed and participated in four settlement conferences, in person and telephonically, with Eastern District of California Magistrate Judge Barbara A. McAuliffe on November 9, 2017, December 7, 2017, December 21, 2017 and January 18, 2018. (ECF Nos. 216, 219, 220, 225-26.)  The final settlement conference concluded with Judge McAuliffe making a mediator's proposal with a deadline of January 25, 2018, which both parties accepted on the final day.

The proposed settlement resolves all class claims alleged against PG&E and IBEW.  The Settlement in this case will establish three groups: SR Is who received settlement payments from PG&E prior to this lawsuit, but who have wage statement claims under Labor Code § 226; SR Is whose experience does not qualify them for an increased wage rate under PRC 21052; and SR Is whose experience does qualify them for an increased wage rate under PRC 21052. (ECF No. 238-1 at 12.)

The proposed settlement contemplates a process whereby all SR Is have an opportunity to provide information relating to their work history to demonstrate satisfaction of PRC 21052's requirements.  All SR Is will be provided a notice of settlement, which will include a questionnaire soliciting information concerning their work history. Counsel for Plaintiffs will review that information, along with resumes and other information that was submitted with their initial employment application, and place each SR I into the appropriate category.  Those who have not met the requirements of PRC 21052 will receive a settlement payout of $250.00.  The remaining settlement funds will be distributed pro-rata among the group of SR Is who do meet the requirements of PRC 21052, at this point an anticipated 175 individuals.  If that estimate turns out to be correct, then these SR Is will receive an average payment of $19,849.71. (*Id.*)

Under the settlement agreement, Defendants PG&E and IBEW[1] will, collectively, make a gross payment of $6,000,000 into a settlement fund administered by the proposed settlement

---

[1] The amount of contribution among these defendants has not been disclosed to the Court.  The Court will discuss this issue and required notice later in this order.

3

administrator. (*Id*. at 12-13.) This amount is inclusive of payments to the proposed class, Plaintiffs' and class counsels' attorneys' fees and costs, Plaintiffs' proposed Service Payments, and costs of settlement administration. (*Id*. at 13.) The settlement agreement provides that Plaintiffs' counsel will file a separate application for attorneys' fees and costs prior to the opt-out/objection deadline, and Defendants will not oppose the application so long as it does not exceed 33.33% of the settlement fund and their requested costs do not exceed $275,000. (*Id*. at 17.) The six class representatives, Timothy C. Budnik, Ian Carty, Becky Greer, Haley Markwith, Maria Garcia Pesina, and Rosario Saenz, will apply to the Court for service payments in an amount not to exceed $35,000.00, collectively, in addition to whatever payment, if any, each may be otherwise entitled to from the settlement fund as a settlement class member. (*Id*.) The costs of claims administration are estimated at approximately $29,000.00. (*Id*. at 16.) The settlement is non-reversionary. (*Id*. at 13)

On March 2, 2018, Plaintiffs filed the instant unopposed motion for preliminary approval of the settlement. (ECF No. 238.) Plaintiffs seek an Order: (1) conditionally certifying the proposed Settlement Class; (2) preliminarily approving the joint stipulation of class settlement; (3) appointing Plaintiffs as class representatives and Plaintiffs' counsel as class counsel; (4) approving and directing the mailing of settlement notices pursuant to the proposed notice plan; and (5) scheduling a fairness hearing for final approval of the settlement. (*Id*.)

## III.        LEGAL STANDARD – CLASS ACTION CERTIFICATION AND SETTLEMENT

"A difficult balancing act almost always confronts a district court tasked with approving a class action settlement." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015). "On the one hand, … 'there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *Id*. (quoting *In re Syncor ERISA Litig*., 516 F.3d 1095, 1101 (9th Cir. 2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). "But on the other hand, 'settlement class actions present unique due process concerns for absent class members,' *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998), and the district court has a fiduciary duty to look after the interests of those absent class members." *Id*. (citations omitted). "The dangers of collusion between class counsel and the defendant, as well as the need

for additional protections when the settlement is not negotiated by a court-designated class representative, weigh in favor of a more probing inquiry than may normally be required under Rule 23(e)." *Hanlon*, 150 F.3d at 1026.

"To guard against this potential for class action abuse, Rule 23(e) of the Federal Rules of Civil Procedure requires court approval of all class action settlements, which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citing Fed.R.Civ.P. 23(e)(2); *Staton v. Boeing Co.*, 327 F.3d 938, 972 n.22 (9th Cir. 2003) (court's role is to police the "inherent tensions among class representation, defendant's interests in minimizing the cost of the total settlement package, and class counsel's interest in fees"); *Hanlon*, 150 F.3d at 1026).

The Rule 23 class settlement process generally proceeds in two phases. In the first phase, the court conditionally certifies the class, conducts a preliminary determination of the fairness of the settlement (subject to a more stringent final review), and approves the notice to be imparted upon the class. *Ontiveros v. Zamora*, 303 F.R.D. 356, 363 (E.D. Cal. 2014). The purpose of the initial review is to ensure that an appropriate class exists and that the agreement is non-collusive, without obvious deficiencies, and within the range of possible approval as to that class. *See True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1062 (C.D. Cal. 2010); Newberg on Class Actions § 13:13 (5th ed. 2014).

In the second phase, the court holds a full fairness hearing where class members may present objections to class certification, or to the fairness of the settlement agreement. *Ontiveros*, 303 F.R.D. at 363 (citing *Diaz v. Trust Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989). Following the fairness hearing, taking into account all of the information before the court, the court must confirm that class certification is appropriate, and the settlement is fair, reasonable, and adequate. *See Valdez v. Neil Jones Food Co.*, 2015 WL 6697926 * 8 (E.D. Cal. Nov. 2, 2015); *Miller v. CEVA Logistics USA, Inc.*, 2015 WL 4730176, *3 (E.D. Cal. Aug. 10, 2015).

\\\

\\\

# IV.     DISCUSSION

When the parties have entered into a settlement agreement before the district court certifies the class, the court "must pay 'undiluted, even heightened, attention' to class certification requirements...." *Staton*, 327 F.3d at 952–53 (quoting *Hanlon*, 150 F.3d at 1019 (quoting *Amchem*, 521 U.S. at 620, 117 S.Ct. 2231)).  For class certification, the classes and sub-classes "must meet the four threshold requirements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy of representation." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013) (citing Fed.R.Civ.P. 23(a); *Hanlon*, 150 F.3d at 1019). "Moreover, the proposed class must satisfy the requirements of Rule 23(b), which defines three different types of classes." *Id.*

The plaintiff bears the burden of persuasion that the requirements of Rule 23 have been satisfied as to the proposed class.  "A court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met."  Advisory Committee 2003 Note on Fed. R. Civ. P. 23(c)(1).

As discussed below, the requirements for class certification in Rule 23(a) and (b) are satisfied here. *See Leyva*, 716 F.3d at 512.

## A.     Rule 23(a) Requirements

### 1. Numerosity

A proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw. v. Equal Employment Opportunity Comm'n*, 446 U.S. 318, 330, 100 S. Ct. 1698, 1706, 64 L. Ed. 2d 319 (1980).  Courts in the Ninth Circuit have found the requirement satisfied when the class comprises of as few as thirty-nine members. *See Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010) (citing *Jordan v. L.A. County*, 669 F.2d 1311, 1319 (9th Cir. 1982) (finding class sizes of thirty-nine, sixty-four, and seventy-one sufficient to satisfy the numerosity requirement), *vacated on other grounds*, 459 U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982)).

Here, the proposed class is defined as: "All current and former SR I classification employees who were hired by Defendant PG&E into a Contact Center in California at any time between January 1, 2011 through June 30, 2015, and whose initial wage rate was the starting rate specified in the CBA." (ECF No. 238-1 at 13.) There are an estimated 925 class members. (*Id.*) The Court finds that the requirements of Rule 23(a)(1) are satisfied.

### 2. *Commonality*

Rules 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3)." *Hanlon*, 150 F.3d at 1019. "Indeed, Rule 23(a)(2) has been construed permissively." *Id.* "All questions of fact and law need not be common to satisfy the rule." *Id.* "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* To satisfy commonality, there must be a "common contention … of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011). A plaintiff can meet this burden by showing "[s]ignificant proof that an employer operated under a general policy" of harmful conduct if the conduct "manifested itself in hiring and promotion practices in the same general fashion..." *Id.* at 353, 131 S. Ct. at 2553 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 159 n. 15, 102 S. Ct. 2364, 2371, 72 L. Ed. 2d 740 (1982)).

Plaintiffs argue that commonality is satisfied here because "all of Plaintiffs' claims are based on common policies and/or practices of general application – specifically, wage classification for PG&E employees in the position of SR I from January 1, 2011 through June 30, 2015." (ECF No. 238-1 at 18.) Plaintiffs allege that the general policies adopted by the defendants violated the terms of the applicable collective bargaining agreement and California labor law. Because there is a common contention capable of class-wide resolution "in one stroke," Plaintiffs have met the requirements of Rule 23(a)(2). *See Wal-Mart*, 564 U.S. at 350, 131 S. Ct. at 2551.

### 3. Typicality

Rule 23(a)(3) also requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001). Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong*, 275 F.3d at 868; *see also Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (claims are typical where named plaintiffs have the same claims as other members of the class and are not subject to unique defenses). While representative claims must be "reasonably co-extensive with those of absent class members," they "need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *see also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Here, the Plaintiff class representatives and the absent class members were all hired into a PG&E call center between January 1, 2011 and June 30, 2015 as SR Is, had at least 18 months of "directly related clerical job experience," and were impacted by policies adopted by the Defendants, which were violative of the terms of the applicable collective bargaining agreement and California labor law. Thus, typicality under Rule 23(a)(3) is satisfied because the claims of the Plaintiff class representatives are reasonably co-extensive with those of the absent class members.

### 4. Adequacy of Representation

In order for a class to be certified, the Court must find that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Amchem*, 521 U.S. at 625–26, 117 S. Ct. at 2250–51 (quoting *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216, 94 S.Ct. 2925, 2930, 41 L.Ed.2d 706 (1974)). "The proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action

8

vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000), *as amended* (June 19, 2000) (citing *Hanlon*, 150 F.3d at 1020; *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).

Here, Plaintiff class representatives Greer, Markwith, Budnik, Carty, Pesina and Saenz have submitted evidence that they have no conflict of interest with the rest of the class, possess the same interest and injury as the absent class members, and have vigorously prosecuted this case on behalf of the class, as demonstrated by initiating this lawsuit, undertaking discovery on behalf of the putative class, and diligently monitoring the progress of the case. (Greer Decl., ECF No. 238-4 ¶¶ 5-8; Markwith Decl., ECF No. 238-8 ¶¶ 5-8; Budnik Decl., ECF No. 238-5 ¶¶ 5-8; Carty Decl., ECF No. 238-6 ¶¶ 5-8; Pesina Decl., ECF No. 238-9 ¶¶ 5-8; Saenz Decl., ECF No. 238-7 ¶¶ 5-8). As such, the court finds that Plaintiff class representatives Greer, Markwith, Budnik, Carty, Pesina and Saenz satisfy the adequacy of representation requirement.

Next, Plaintiffs seek appointment of their current counsel, Fitzpatrick, Spini & Swanston and Wanger Jones Helsley PC, as Class Counsel. These attorneys have prosecuted this action on behalf of Plaintiffs and the proposed class since the commencement of the litigation; have extensive experience litigating class actions; and have been certified by numerous state and federal courts as adequate class counsel. (ECF No. Swanston Decl., ECF No. 238-2 ¶¶ 32, 33; Toole Decl., ECF No. 238-3 ¶ 22.) The court finds that Plaintiffs' counsel satisfies the adequacy requirements with respect to the proposed class.

### B. Rule 23(b) Requirements

Plaintiffs seek certification under Rule 23(b)(3), which requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Amchem*, 521 U.S. at 615. The test of Rule 23(b)(3) is "far more demanding," than that of Rule 23(a). *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (quoting *Amchem*, 521 U.S. at 623–24).

\\\

\\\

### 1. Predominance

First, questions of law or fact common to class members must predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (quoting *Amchem*, 117 S.Ct. at 2249). "This analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2); thus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3)." *Id.* ("In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues."). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.* (quoting Wright, Miller & Kane, supra, § 1778).

Here, Plaintiffs assert that common questions to class members raised in this action predominate over any individualized questions because the proposed class suffered a common injury resulting from an improper class-wide policy of pay rate misclassification under the applicable collective bargaining agreement. "Class actions in which a defendant's uniform policies are challenged generally satisfy the predominance requirement of Rule 23(b)(3)." *See, e.g., Goodwin v. Winn Mgmt. Grp. LLC*, No. 115CV00606-DAD-EPG, 2017 WL 3173006, at *7 (E.D. Cal. July 26, 2017) (citations omitted). Thus, the Court concludes that the predominance requirement in Rule 23(b)(3) is satisfied in this case.

### 2. Superiority

Under Rule 23(b)(3), a class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The matters pertinent to this finding include: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *See id.*; *see also Amchem*, 521 U.S. at 616.

Here, Plaintiffs contend that adjudication of the proposed class' claims in a class action is preferable because the individual prosecution of the claims would be identical to and duplicative of the class action litigation, and a class action would efficiently resolve numerous identical claims at the same time while avoiding the wasteful expenditure of judicial resources and eliminating the possibility of conflicting decisions from repetitious litigation. (ECF No. 238-2 at 20.) Plaintiffs further assert that they are unaware of any issues that would render unmanageable the adjudication of Plaintiffs' class claims. The Court finds that the superiority requirement is met here.

## C. Preliminary Fairness Determination

Plaintiffs request preliminarily approval of the settlement agreement. (ECF No. 238-2 at 30.) If a proposed settlement agreement will bind absent class members, the Court must find that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see also Bluetooth*, 654 F.3d at 946. When settlement occurs before class certification, the court must also take extra care to ensure that "the settlement is not the product of collusion among the negotiating parties." *Bluetooth*, 654 F.3d at 946. "The factors in a court's fairness assessment will naturally vary from case to case, but courts generally must weigh: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement." *Id.* (citing *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir.1993)). "This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (citing *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir.1982), *cert. denied*, 459 U.S. 1217, 103 S.Ct. 1219, 75 L.Ed.2d 456 (1983)).

Here, after balancing the relevant factors, the Court finds preliminary approval of the proposed settlement is appropriate.

*1.  Nature of Settlement Negotiations; Extent of Discovery; Stage of Proceedings; Experience and Views of Counsel*

The parties briefed and participated in four settlement conferences, in person and telephonically, with Judge McAuliffe on November 9, 2017, December 7, 2017, December 21, 2017 and January 18, 2018. (ECF Nos. 216, 219, 220, 225-26.)  Each party was represented by experienced counsel with extensive backgrounds litigating similar class actions, and class representatives were involved in all of the in-court settlement conferences.  Counsel also had the benefit of extensive discovery in this case.  Plaintiffs explain that informal and formal discovery was exchanged over several years in the form of initial disclosures and written discovery requests (interrogatories, requests for admissions, requests for production of documents) and responses, which resulted in the production of over 200,000 pages of documents. (ECF No. 238-2 at 24-25.)  The parties also engaged in extensive deposition discovery (16 by Plaintiffs and 8 by Defendants). (*Id.*)  Thus, the parties agreed to settlement after conducting extensive discovery and the filing of dispositive motions as well as a motion for class certification.  These factors permitted counsel to properly evaluate the strengths and weaknesses of the case.

Based on the facts represented by Plaintiffs, the Court concludes that the settlement was the product of serious, informed, arm's-length negotiations by the parties.  "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Riker v. Gibbons*, No. 3:08-CV-00115-LRH, 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010) (quoting 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11:42 (4th ed.2002)); *see also Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527–28 (C.D. Cal. 2004) ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." (citations omitted)).

*2.  Risks of Continued Litigation*

Plaintiffs explain in their brief that the proposed settlement represents a fair compromise, given the litigation risks and uncertainties presented by continued litigation. (ECF No. 238-2 at 21-24.)  If the action were to continue without settlement, Plaintiffs would face vigorous and lengthy challenges to class certification and the merits of their claims, which would be costly,

time-consuming and uncertain.  Plaintiffs estimate that continued litigation could last for years (including potential appellate proceedings) and would necessitate costly expert witness expenses as well as additional costs and attorney fees.  By contrast, the proposed settlement would ensure timely relief and recovery of wages and penalties to the proposed class.

Next, Plaintiffs point out this case is very complex and a majority of their claims remain in limbo. (*Id*. at 23.)  This case involves novel issues of federal law concerning a labor union's breach of its duty of fair representation as well as several state law claims against the employer. There are complicated legal issues surrounding whether or not Plaintiffs' California Labor Code claims are preempted by Section 301 of the Labor Management Relations Act (18 U.S.C. 185(a)). On September 12, 2017, the Court entered an order granting, in part, and denying, in part, Defendants' motions for summary judgment. (ECF No. 196.)  The Order addressed Counts 1 and 8 of the Third Amended Complaint. (*See id*.)  The Order disposed of a portion of Plaintiffs' case by ruling that IBEW did not breach its duty of fair representation in agreeing to limit the meaning of prior "directly related clerical job experience" to the criteria articulated in PRC 20152. (*See id*.) At the time settlement was reached, PG&E's motion for summary judgment concerning the remaining claims against it and Plaintiffs' motion for class certification were pending adjudication.  If the settlement is not approved, these motions will require adjudication, creating uncertainty as to how much of the case would proceed to trial and whether Plaintiffs would prevail at trial.

The risks and uncertainties of continued litigation weigh in favor of the proposed settlement.

### 3. The Amount Offered in Settlement

In determining whether the amount offered in settlement is fair and reasonable, the court compares the proposed settlement amount to the best possible outcome for the class. *See Rodriguez v. W. Publ'g Corp*., 563 F.3d 948, 964 (9th Cir. 2009). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego*, 213 F.3d at 459 (quoting *Officers for Justice*, 688 F.2d at 628).

Here, the proposed settlement provides $6,000,000 in total monetary relief to the class, of which approximately $3,661,200.00 will be distributed to the class as follows:

| | |
|---|---|
| Labor Code Subclass: | $250 (each) |
| Non-Qualifying Group Subclass: | $250 (each) |
| Qualifying Group Subclass: | $19,849.71 (estimated average) |

(ECF No. 238-1 at 23-24.) The determinations as to which individuals will be placed in each subclass will be made by Plaintiffs' counsel based upon responses to a survey which is subject to approval of the Court. The survey-response procedure contemplated by this settlement will provide all class members the opportunity to provide any and all information that bears on their eligibility determination. Plaintiffs' counsel anticipates that there will be only a narrow group of putative class members whose information does not conclusively place them in either the qualifying or non-qualifying group. (*Id*. at 23.) The proposed settlement offers an opt-out remedy permitting SR Is to pursue their claims individually.

The proposed recovery represents 30% of Plaintiffs' reasonable estimate of the likely recovery at trial if they were to prevail, which could range from $18 million. The Court finds this degree of recovery to be fair and reasonable in light of uncertainties Plaintiffs face in this case. *See, e.g., Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (finding a settlement amount constituting 25 to 35% of the amount of damages plaintiffs could have hoped to prove at trial fair and reasonable in light of the uncertainties involved in the case), *aff'd*, 331 F. App'x 452 (9th Cir. 2009).

### D. Fees, Costs and Representative Service Payment

#### 1. Attorney Fees and Costs

Under the terms of the proposed settlement agreement, Plaintiffs' counsel will not seek more than 33.33% of the settlement amount in attorneys' fees and a maximum of $275,000.00 in costs. (ECF No. 238-1 at 27.) Plaintiffs' counsel indicates that they will file a motion for reasonable attorneys' fees and costs prior to the opt-out/objection deadline so that class members will have an opportunity to inspect the fee application prior to the deadline for submitting objections or requests for exclusion. At this time, Plaintiffs are not seeking approval of the

fees/costs provision. Plaintiffs are requesting the Court to include the maximum potential fee request so that the class can be informed of the provision.

When a negotiated class action settlement includes an award of attorneys' fees, the fee award must be evaluated in the overall context of the settlement. *Knisley v. Network Assocs.*, 312 F.3d 1123, 1126 (9th Cir. 2002). At the same time, the court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941; *see also Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328–29 (9th Cir. 1999). Where, as here, fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). As a result, the district court must assume a fiduciary role for the class members in evaluating a request for an award of attorney fees from the common fund. *Id.*; *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009).

The Ninth Circuit has approved two methods for determining attorneys' fees in such cases where the attorneys' fee award is taken from the common fund set aside for the entire settlement: the "percentage of the fund" method and the "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citation omitted). The district court retains discretion in common fund cases to choose either method. *Id.*; *Vu*, 2016 WL 6211308, at *5. Under either approach, "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002).

Under the percentage of the fund method, the court may award class counsel a given percentage of the common fund recovered for the class. *Id.* In the Ninth Circuit, a twenty-five percent award is the "benchmark" amount of attorneys' fees, but courts may adjust this figure upwards or downwards if the record shows "special circumstances justifying a departure." *Id.* (quoting *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). Percentage awards of between twenty and thirty percent are common. *See Vizcaino*, 290 F.3d at 1047; *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("This court's review

of recent reported cases discloses that nearly all common fund awards range around 30% even after thorough application of either the lodestar or twelve-factor method.").  Nonetheless, an explanation is necessary when the district court departs from the twenty-five percent benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000).

To assess whether the percentage requested is reasonable, courts may consider a number of factors, including:

> [T]he extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015) (internal quotation marks omitted).  The Ninth Circuit has permitted courts to award attorneys' fees using this method "in lieu of the often more time-consuming task of calculating the lodestar." *Bluetooth*, 654 F.3d at 942.

Plaintiffs bring various state law claims and, under California law, "[t]he primary method for establishing the amount of reasonable attorney fees is the lodestar method." *In re Vitamin Cases*, 110 Cal. App. 4th 1041, 1053 (2003) (internal quotation marks and citations omitted). The court determines the lodestar amount by multiplying a reasonable hourly rate by the number of hours reasonably spent litigating the case. *See Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 (9th Cir. 2001).  The product of this computation, the "lodestar" amount, yields a presumptively reasonable fee. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).  The Ninth Circuit has recommended that district courts apply one method but cross-check the appropriateness of the amount by employing the other as well. *See Bluetooth*, 654 F.3d at 944.

Here, Plaintiffs will seek maximum attorneys' fees of 33.33% of the settlement amount. (ECF No. 238-1 at 27.)  This fee amount is above the benchmark for this circuit. *See Bluetooth*, 654 F.3d at 947 (setting a 25% benchmark); *Staton*, 327 F.3d at 952 (same); *Six (6) Mexican*

16

1    *Workers*, 904 F.2d at 1311 (same). However, the percentage is not unreasonable as an upper

2    bound. As such, the Court approves the attorneys' fee request on a preliminary basis.

3           When the application for attorneys' fees is submitted, Plaintiffs' counsel will be required

4    to explain the "special circumstances justifying a departure" from the benchmark. *See Bluetooth*,

5    654 F.3d at 942. In connection with the final fairness hearing, the Court will cross check the

6    requested amount with the lodestar amount based upon counsels' submission, and will determine

7    whether the award of an above-benchmark percentage in fees is reasonable here. *See Powers v.*

8    *Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000) (noting that an explanation is necessary when the

9    district court departs from the twenty-five percent benchmark).

10                          *2. Representative Service Payment*

11          A district court may award incentive payments to named plaintiffs in class action cases.

12   *Rodriguez*, 563 F.3d at 958–59. The purpose of incentive awards is to "compensate class

13   representatives for work done on behalf of the class, to make up for financial or reputational risk

14   undertaking in bringing the action, and, sometimes, to recognize their willingness to act as a

15   private attorney general." *Id.* To justify an incentive award, a class representative must present

16   "evidence demonstrating the quality of plaintiff's representative service," such as "substantial

17   efforts taken as class representative to justify the discrepancy between [his] award and those of

18   the unnamed plaintiffs." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. 2008). Such

19   incentive awards are particularly appropriate in wage-and-hour actions where a plaintiff

20   undertakes a significant reputational risk by bringing suit against their former employers.

21   *Rodriguez*, 563 F.3d at 958–59.

22          The Ninth Circuit has emphasized, however, that "district courts must be vigilant in

23   scrutinizing all incentive awards." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1165

24   (9th Cir. 2013) (internal quotation marks and citation omitted). In keeping with that admonition,

25   district courts have declined to approve incentive awards that represent an unreasonably high

26   proportion of the overall settlement amount, or that are disproportionate relative to the recovery

27   of other class members. *See Ontiveros*, 303 F.R.D. at 365–66; *see also Ko v. Natura Pet Prods.,*

28   *Inc.*, Civ. No. 09–2619 SBA, 2012 WL 3945541, at *15 (N.D. Cal. Sept. 10, 2012) (holding that

an incentive award of $20,000, comprising one percent of the approximately $2 million common fund was "excessive under the circumstances" and reducing the award to $5,000); *Wolph v. Acer Am. Corp.*, No. C 09–01314 JSW, 2013 WL 5718440, at *6 (N.D. Cal. Oct. 21, 2013) (reducing the incentive award to $2,000 where the class representatives did not demonstrate great risk to finances or reputation in bringing the class action). These courts have reasoned that overcompensation of class representatives could encourage collusion at the settlement stage of class actions by causing a divergence between the interests of the named plaintiff and the absent class members, destroying the adequacy of class representatives. *See Staton*, 327 F.3d at 977–78; *see also Radcliffe*, 715 F.3d at 1165.

Here, the proposed settlement agreement provides for a maximum class representative payment of $35,000 between all six Plaintiff class representatives. (ECF No. 238-1 at 29.) Plaintiffs' receipt of this service award is contingent upon executing a general release, not required of the other class members. The service payment is intended to compensate the class representatives for sitting for depositions, responding to discovery, submitting declarations in support of motions, and assisting in mediation/settlement. The class representatives also assumed liability for litigation costs in the event their claims were unsuccessful and a reputational risk by bringing suit against their former employers.

The Court will approve the representative service payment request on a preliminary basis. Like the attorneys' fees and costs, Plaintiffs will request award of the service payments by filing a separate motion prior to the opt-out/objection deadline and prior to final approval. (*Id.*) At the final approval hearing, the court will review Plaintiffs' evidence that the requested incentive award is warranted here—i.e., evidence of the specific amount of time Plaintiffs spent on the litigation, the particular risks and burdens carried by Plaintiffs as a result of the action, or the particular benefit that Plaintiffs provided to counsel and the class as a whole throughout the litigation. *See Goodwin*, 2017 WL 3173006, at *12 (citing *Bautista v. Harvest Mgmt. Sub LLC*, No. CV 12-10004 FMO (CWx), 2013 WL 12125768, at *15 (C.D. Cal. Oct. 16, 2013)).

\\\

\\\

## E.  Proposed Notice and Administration

### 1.  Notice Procedures

For proposed settlements under Rule 23, "the court must direct notice in a reasonable manner to all class members who would be bound by the proposal.  Fed. R. Civ. P. 23(e)(1); *see also Hanlon*, 150 F.3d at 1025 ("Adequate notice is critical to court approval of a class settlement under Rule 23(e).").  A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  *Churchill Vill., LLC v. Gen. Elec.*, 561 F.3d 566, 575 (9th Cir. 2004) (internal quotations and citations omitted).

### 2.  Disclosure Regarding Defendants' Payment and IBEW Indemnification Agreement

The most difficult part of Plaintiffs' motion has been regarding to what extent proposed class members should be notified as to how much each of the Defendants will be paying the settlement and why.  Plaintiffs are employed (or were employed) by Defendant PG&E, the central breach of contract claim is against PG&E, and the underlying employment contracts are with PG&E.  Absent information regarding who is paying the settlement, it is likely that Plaintiffs will believe that Defendant PG&E will be paying this settlement.  In fact, Defendant IBEW, who is the Union for the class members, agreed to indemnify PG&E for the costs of the lawsuit and for any damages. (ECF No. 105 at 204 ¶ 3.)   Defendant IBEW now objects to any disclosure regarding the amount it is contributing to the settlement and why.  (ECF No. 248.)

The original proposed notice ignored these issues entirely, and, by that silence, implied that PG&E was paying for the settlement.  It explained how Plaintiffs had filed a lawsuit "alleging that Pacific Gas and Electric Company ('PG&E') failed to pay them wages in accordance with the Collective Bargaining Agreement ('CBA')."  (ECF No. 238-2.)  It described the allegations against PG&E, and stated that "PG&E denies these allegations and is prepared to defend the action to the fullest extent of the law."  (*Id.*)  Regarding the terms of the settlement, the notice stated "[t]he Parties have agreed to settle the case for a total of $6,000,000.00 (Six Million Dollars)."  (*Id.*)  By using the passive voice, the notice avoided any mention of who was paying

that settlement amount.

Notably, the proposed notice also stated that accepting the settlement will "release the following claims during the Class Period, and will be barred from prosecuting any and all such claims against IBEW Local 1245: (1) Breach of the Duty of Fair Representation." (*Id*.) However, there is no information regarding the nature of that claim.

The Court addressed this issue at the hearing on preliminary approval for the class settlement held on March 23, 2018. (ECF No. 247.) The Court asked who was paying for the settlement. Counsel for the Union replied "Your Honor, the settlement agreement does not specify and the parties have not yet conclusively determined that. The defendants -- the settlement agreement requires that the defendants pay the full settlement amount without allocating the amount of that . . . ." (*Id*. at 13:22-14:1.) The Union explained that the Union would eventually need to disclose the amount they paid to its members because "fair labor law requires the union to submit annual LM-2 reports they're called indicating, you know, what the union's expenses were," but argued that the amount should not be part of the notice and not disclosed until after class members had decided whether to join the settlement and the Court had approved the settlement. (*Id*. at 14:10-22.) The Union also explained that "[t]he union has no funds other than what come from union dues." (*Id*. at 14:15-18.) The Union then suggested, but could not represent, that payment could come out of the Union's reserves. (*Id*. at 16:9-13.)

Plaintiffs' counsel then suggested that PG&E must pay for the entire amount of the wages due because "I don't think PG&E can delegate its duty to pay, as an employer, payment of wages to the union. So, I mean, I don't know what their agreement is, but it's probably -- probably just pay my attorney's fees, I'm sure, at some point. But the idea here is, is that I don't know that --to the Court's concern, I don't think the $6 million can be wholly funded by the union as a matter of law. I don't think they can delegate their duty as an employer under California law to make that change." (*Id*. at 16:23-17:6.) Plaintiffs' counsel then explained that this payment issue and the potential effect on PG&E employees, who could ultimately have to pay the costs of continued litigation, was one of the reasons that Plaintiffs agree to this settlement. (*Id*. at 17:7-20 ("But the other thing is, is that it's also the flip-side of the coin. The continued litigation -- one of the things

we considered in settlement was these folks do have to go to work tomorrow, and they work for PG&E, and they're represented by the union, and we were sensitive to this idea of continuing damage. And if litigation does continue, the concerns of the courts, in terms of the costs and expenses, to the extent we are proceeding and we would proceed against the union and PG&E, those costs only come up -- go up. And to the Court's thinking, it would only exacerbate the problem of reimbursing from the class down the road. And that's one of the things we considered heavily is I don't want to take pocket -- take money out of my clients' own pockets to fund its settlement.")).

Per the Court's request, the parties submitted supplemental briefing regarding the issue of proper disclosure of settlement payment allocation between the Defendants. Defendant IBEW agrees to include in the First Notice that "PG&E and IBEW have agreed to pay a total of $6,000,000," and that "IBEW has adequate resources to pay its contribution toward the Settlement Amount without raising members' dues or fees." (ECF No. 248.) However, IBEW objects to any further disclosure of what IBEW is paying or why. IBEW states that not allocating the settlement agreement among the defendants was material consideration for its agreement. IBEW concedes it is obligated to report its expenditures, but asks that it do so only in its annual financial report to its members in a newsletter, after purported class members have made their election to join or object to the settlement. It claims that the Union's decision to settle a lawsuit is made by the designated Business Manager/Financial Secretary of the Local and that "Members do not have veto power over such decisions." Finally, IBEW claims that the settlement agreement is fair and reasonable because "Plaintiffs' and their proposed class, seek many millions of dollars in damages (far in excess of the Settlement Amount) from their allegation that IBEW breached its duty of fair representation. If Plaintiffs received a judgment against IBEW, those damages would necessarily be paid from IBEW's treasury, sourced by members' dues or fees. Thus, the real threat to IBEW's treasury comes not from this settlement agreement, but from Plaintiffs' claim against the Union." (ECF No. 248) Notably, IBEW makes no mention of its indemnification agreement and completely ignores the fact that it has to pay for this settlement in large part, if not wholly, because of that agreement.

PG&E indicates in its submission that it does not oppose any disclosure of the amount that each defendant will pay, but states that it believed that not disclosing this allocation was material to the Union's agreement to settle the case. (ECF No. 249.)

Plaintiffs' submission states that it understands from the Court that disclosure of the amount paid by each Defendant is necessary and does not object to such disclosure. (ECF No. 250.)

Thus, it appears that only Defendant IBEW objects to disclosing how much it will pay in the agreement until after purported class members have made their choice about the settlement agreement.

### 3. Analysis Regarding Disclosure of IBEW's Amount and Reason for Payment

The Court is greatly troubled by Defendant IBEW's position to withhold its amount of its contribution to the settlement until after the settlement agreement has been approved. Notably, IBEW has never claimed that such information is privileged or confidential from purported class members. On the contrary, it has repeatedly represented the IBEW legally *must disclose* the amount of its contribution to all union members at some point in time. Nevertheless, IBEW vehemently objects to disclose of this information while purported class members decide whether to agree to the settlement and release its claims against PG&E and IBEW.

The Court cannot see a legitimate basis for delaying the disclosure of such information until after class members make their decisions regarding the settlement agreement. Worse, IBEW's vehemence in waiting to disclose the information until after class members decide their position on the settlement suggests that IBEW believes the information is in fact material to their choice. Alternatively, but no less troubling, IBEW may hope that it can hide the eventual disclosure in detailed financial reports in such a way that class members never pay attention to this information.

Moreover, IBEW's contribution and reason for it could be material to class Plaintiffs decision to enter into the settlement agreement. As described above, Plaintiffs' counsel stated that it was material to their decision to settle because further litigation costs could actually be

borne by employees, who were also union members.  (ECF No. 247 at 17:7-20 ("And that's one of the things we considered heavily is I don't want to take pocket -- take money out of my clients' own pockets to fund its settlement.".))  Although no one argued it, the Court could see on the contrary that some members may not want to participate in a settlement if it was ultimately to be paid by their union based on their dues.

Disclosure of IBEW's contribution and reason for doing so also may be material to the decision of purported class members to release their claim against the IBEW for the Breach of the Duty of Fair Representation.  Although named Plaintiffs did not claim in this lawsuit that the Union's indemnification agreement breached such a duty, a release of that cause of action likely prevents any class member from asserting such a claim against the IBEW in the future.  While the Court does not have any opinion on the validity of such a claim, the fact that IBEW entered into an indemnification agreement and paid some amount of the settlement amount appears material to the decision of class members, who are also union members, to release their claim against IBEW for Breach of the Duty of Fair Representation.

IBEW's submission to the Court elevated, rather than satisfied, the Court's concern about the lack of disclosure.  IBEW argued that not allocating the amount of IBEW's contribution was a silent implied term of the settlement agreement.  This argument misses the point.  The Court is not imposing any amount for IBEW's contribution.  The issue before the Court is one of fair notice to potential class members, which is certainly not a term of the settlement agreement. (Indeed, it would be even more troubling if IBEW only agreed to settle so long as class members were not told certain material information.).

IBEW also again confirmed that it will report the payment toward this settlement in is annual financial report to its members as well as to the Department of Labor.  (ECF No. 248 at 4.) However, IBEW argues that it should be withheld from class members until settlement because "[t]he bylaws of the Local do not allow members to reject a settlement agreement that the Business Manager/Financial Secretary determined to be in the best interest of the Local and its members."  (*Id.* at 5.)  Citation to this rule is not on point because disclosure of the information in the notice to purported class members is not the same as allowing those members to set IBEW's

settlement amount. But to the extent IBEW is using this provision to suggest that purported class members have no right to reject this settlement, they are fundamentally wrong. On the contrary, this notice at issue is meant to inform purported class members of their right to accept or opt out of this settlement. They absolutely have the right to reject this settlement and pursue their claims separately for any reason. IBEW's suggestion to the contrary makes the Court even more concerned that IBEW is withholding information in order to preclude a fully informed choice by purported class members.

Finally, IBEW argues that the contribution is not relevant because "Plaintiffs', and their proposed class, seek many millions of dollars in damages (far in excess of the Settlement Amount) from their allegation that IBEW breached its duty of fair representation." (ECF No. 248 at 5.) This statement is highly misleading. It represents that IBEW is settling because Plaintiffs are seeking damages in excess of $6,000,000 *against the Union directly* for breach of their duty of fair representation. On the contrary, the claim against the Union was added after PG&E moved to dismiss the case due to the collective bargaining process. The cause of action against IBEW is asserted in the alternative in order to ensure this Court can adjudicate the claims against PG&E. (ECF No. 105 at 47 ("In the event it is determined that the resolution of the grievance procedure precludes judicial review, Plaintiffs plead this cause of action in the alternative as a 'hybrid' claim."). It is the Court's understanding that IBEW is paying its portion of the settlement in large part, if not entirely, because of its indemnification agreement—not due to Plaintiff's asserted claims against it. By making this statement, IBEW is reinforcing the Court's concern that the omission of IBEW's contribution and reason will mislead purported class members about the basis of the claims against IBEW and its reason for contributing to the settlement in this case.

This is not to say that such information would cause purported plaintiffs to opt out of, or object to, the settlement. After all, named Plaintiffs are fully aware of the indemnification agreement and have agreed to settle with any allocation IBEW and PG&E choose. They did so after meaningful consideration and input into the mediation. It is likely that other class members will come to the same decision. But the Court believes that this information is material to the

choices facing purported class members.

The Court thus holds that the First Notice to Class Members must include the allocation of settlement contribution between Defendants IBEW and PG&E, and that it must disclose the existence of the Indemnification agreement between them.

Within 14 days, the parties shall provide the Court with a revised Notice that includes these provisions. The Court will review that disclosure and promptly either approve the notice or require changes consistent with this order.

The Court approves the remainder of the Notice Documents as amended in ECF No. 248-1.

### 4. Notice Procedure

Within five (5) calendar days of approval of the notice as described above, PG&E will provide the Settlement Claims Administrator with a list including each class member's name, last known address, phone number, social security number, and number of eligible paystubs received during the class period. (ECF No. 238-1 at 26-27.) Within ten (10) days of receipt of the class member list, the Administrator will mail the Court-approved Notices of Class Action Settlement and Questionnaires in English to all identified class members via first-class regular U.S. Mail. (*Id*.) The Notices will be sent to the mailing addresses provided by PG&E from its employment records, unless modified by any updated address information obtained by the Administrator after it consults the National Change of Address database or other available resource. (*Id*.) If a Notice is returned because of an incorrect address, the Administrator will conduct a skip trace search for a more current address and re-mail the Notice and accompanying papers to the class member. (*Id*.)

The Court finds that the proposed notices and notice procedures sufficiently provide notice in a reasonable manner to all class members who would be bound by the proposal and that the proposed mail delivery is also appropriate under the circumstances.

The Court also approves the manner of distribution.

\\\

\\\

## V. CONCLUSION AND ORDER

For the reasons stated above, Plaintiffs' unopposed motion for preliminary approval of class action settlement (ECF No. 238) is granted, and:

1. Preliminary class certification under Rule 23 is approved;

2. Plaintiffs' counsel, Fitzpatrick, Spini & Swanston and Wanger Jones Helsley PC, is appointed as class counsel;

3. The named Plaintiffs, Timothy C. Budnik, Ian Carty, Becky Greer, Haley Markwith, Maria Garcia Pesina, and Rosario Saenz, are appointed as class representatives;

4. The proposed First Notice (as amended), Questionnaire (as amended), and Second and Final Notice (as amended, ECF No. 248-1) and manner of distribution conform with Federal Rule of Civil Procedure 23 and are approved;

5. Simpluris, Inc. is approved as claims administrator;

6. The proposed settlement detailed herein is approved on a preliminary basis as fair, adequate and reasonable;

7. Plaintiffs' request for conditional certification of the settlement class is granted, and the class defined as:

> All current and former Service Representative I ("SR I") classification employees who were hired by Defendant Pacific Gas and Electric Company into a Call Center (or Contact Center) SR I position in California at any time between January 1, 2011 through June 30, 2015 (the Class Period), and whose initial wage rate was the starting rate specified in the collective bargaining agreement. The Settlement Class thus does not include any SR I's who, upon hire, started at the 18-month rate.

8. Within fourteen (14) days, the parties shall submit a revised First Notice, consistent with this order;

9. Plaintiffs' proposed settlement implementation schedule is adopted;

10. The hearing for final approval of the proposed settlement is set for October 26, 2018 at 1:30 p.m. in Courtroom 10 (EPG) before Magistrate Judge Erica P. Grosjean, with the motion for final approval of class action settlement to be filed twenty-eight (28) days

in advance of the final approval hearing, in accordance with Local Rule 230; and

11.    Not later than fourteen (14) calendar days before the deadline for objection or exclusion, Plaintiffs will file a motion for approval of their Class Counsels attorneys' fees and costs. The motion for Class Counsels attorneys' fees and costs shall be heard concurrently with the motion for final approval on **October 26, 2018**.

IT IS SO ORDERED.

Dated:    **May 3, 2018**                      /s/ Erica P. Grosjean

UNITED STATES MAGISTRATE JUDGE